1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   ED CAPITAL LLC,

4                    Plaintiff,

5            v.                            15 Civ. 9056 (VM)

6   BLOOMFIELD INVESTMENT RESOURCES
    CORP., et al.,
7                                          Argument and Decision

                 Defendants.
8
    ------------------------------x
9
                                           New York, N.Y.
10                                         December 11, 2015
                                           9:40 a.m.
11
    Before:
12
            HON. VICTOR MARRERO
13
                                           District Judge
14

15

16

17

18        APPEARANCES

19

    DRINKER BIDDLE & REATH LLP
20        Attorneys for Plaintiff
    BY:  RICHARD LOMUSCIO
21

22   REED SMITH
          Attorneys for Defendants
23   BY:  STEVEN COOPER
          PETER GOURDINE
24

25

1             (Case called)

2             THE COURT:  Good morning.  This is a proceeding in the

3    matter of the ED Capital v. Bloomfield Investment Resources

4    Corp.,  Docket number 15 Civ. 9056.  This proceeding was

5    scheduled as a hearing on the motion of the plaintiffs for

6    temporary and preliminary injunctive relief.

7             I have reviewed the material submitted by the parties

8    in favor and against the application.  There are two, three

9    actually, major issues that arise from the submissions that the

10   parties should particularly focus on.  One is whether the

11   plaintiffs have standing to bring the action on behalf of

12   another, third party, UMG, who is not a party to this action

13   but does appear in the proceeding in the Netherlands.

14            The second is, to what extent does the plaintiff's

15   case in this case satisfy the requirement of a showing of

16   irreparable harm, or is the plaintiff primarily seeking relief

17   for monetary loss, however much that may be?

18            Third, to what extent does the plaintiff's case here

19   meet the standard, the very high and rigorous standard, for

20   obtaining an antisuit injunction involving proceeding in a

21   foreign court, especially in the circumstances where the

22   underlying action in another court involves a third party who

23   is not a party in this action.

24            Why don't we focus primarily on those three issues.

25   If there is something else that the parties feel is

1    particularly compelling that I have not mentioned, feel free to

2    indicate so.  Let's first set the basic ground rules of the

3    amount of time that we will allocate for argument on both

4    sides.  Who speaks for the plaintiff?  Is that Mr. Lomuscio?

5           MR. LOMUSCIO:  Yes, your Honor.

6           THE COURT:  How much time does plaintiff propose for

7    its initial presentation?  Let me stress again I have read the

8    papers, I am familiar with the arguments and the issues.  You

9    need not go into repetition of things that you already

10   thoroughly addressed in the papers.  Just focus on the bare

11   essentials of the issues that you think are particularly

12   compelling of your case.

13          MR. LOMUSCIO:  Ten minutes should be fine, your Honor.

14          THE COURT:  Thank you.

15          And for the defendants, Mr. Cooper?

16          MR. COOPER:  Yes, your Honor.  Ten minutes would be

17   fine for me, too.

18          THE COURT:  Why don't we proceed.  Mr. Lomuscio.

19          MR. LOMUSCIO:  Thank you, your Honor.  Richard

20   Lomuscio of Drinker Biddle on behalf of the plaintiffs, ED

21   Capital entities.  What I will do, your Honor, is address the

22   issues that you have raised at the beginning here.

23          First, the issue about whether the ED Capital entities

24   have standing here:  They do.  The harm here is to the ED

25   Capital entities, and it comes from the fact that they were the

1    invest- ment manager and the investment adviser in connection

2    with Bloomfield Investment in the Synergy funds.  The Synergy

3    funds in turn have the wholly owned UMG.  But the harm here is

4    flowing to the ED Capital entities.

5         The issue really is whether or not there has been a

6    violation or Bloomfield is acting outside the scope of what it

7    agreed to in the subscription agreement and the private

8    placement memorandum that it executed with the Synergy funds

9    and by, in turn, with the ED Capital entities, who are the

10   investment manager and the investment adviser of those funds.

11        We are not seeking really to redress a harm to UMG.

12   We are seeking redress to that is falling to ED Capital by

13   virtue of its investments by virtue of the Synergy funds'

14   investment in UMG.  What will happen if UMG misses its bond

15   payment on December 20th is UMG will collapse, which in turn

16   will cause the collapse of the Synergy funds; the ED Capital

17   entities obtained substantially all of their management fees

18   and the like from their management of the Synergy funds, and

19   they in turn will collapse.

20        So the harm here is to the ED Capital entities.  It

21   stems from Bloomfield's basically constantly ignoring the fact

22   that they are legally obligated to deal with this as an

23   investment and not a loan.  In the Netherlands action, and also

24   in this action, Bloomfield has taken the position that they

25   have provided a loan to UMG.  That is not the case.  What

1    Bloomfield has done is they have invested in the Synergy funds,

2    which are managed by the ED Capital entities, and in turn the

3    Synergy funds have invested in UMG or wholly owned UMG.

4              THE COURT:  Let me interrupt for a moment, Mr.

5    Lomuscio.

6              MR. LOMUSCIO:  Sure.

7              THE COURT:  The question may not necessarily be who

8    has been injured or whether or not ED Capital has suffered a

9    harm but whose rights you are seeking to enforce.

10             MR. LOMUSCIO:  The rights we are seeking to enforce

11   here are ED Capital's rights, your Honor, under the

12   subscription agreement and under the private placement

13   memorandum.

14             THE COURT:  Where does the third party to that

15   transaction come in?  It appears to me that it is the third

16   party's rights that you are seeking to enforce by trying to get

17   injunctive relief against this defendant.

18             MR. LOMUSCIO:  The injunctive relief we are seeking,

19   your Honor, is the release of UMG funds so that UMG can make

20   its bond payment.  There is no reason why those funds should

21   not be attached in the Netherlands.  The only basis for that

22   attachment is the fact that Bloomfield has taken the position

23   that somehow these were a loan to UMG.

24             THE COURT:  Why isn't the Netherlands court the

25   correct forum for the argument to be made and for that relief

1  to be sought?

2         MR. LOMUSCIO:  The ED Capital entities are not parties

3  to the Dutch action, and they don't have the ability to go into

4  the Dutch action in an expedited manner whereby they would not

5  face irreparable harm of the December 20th date.

6         THE COURT:  What is to avoid the potential that the

7  Dutch action may reach one result and that result may be

8  inconsistent with what this Court may grant?

9         MR. LOMUSCIO:  Two things, your Honor.  One is, by its

10  own admission, the Dutch court won't even be hearing anything

11  on this case until at least 2016.  ED Capital is in this court.

12  ED Capital is in New York and can proceed on a expedited basis

13  and get the declaratory relief it seeks under the subscription

14  agreement and the memorandum.

15  Q.  How do you understand that can be done inside the next six

16  months?

17         MR. LOMUSCIO:  Because we think it is a very straight-

18  forward issue.  It is an interpretation of documents as to the

19  obligations of Bloomfield and the ED Capital entities under

20  those documents.  That is something I think could be done very

21  quickly, your Honor, of course on your Honor's schedule.

22         THE COURT:  Let's pursue that.  Assuming that the

23  Court granted temporary relief subject to a trial or resolution

24  of the merits later on, would you need discovery of any kind?

25         MR. LOMUSCIO:  As to the declaratory judgment overall?

1    To the extent we would need any discovery, it would be very

2    targeted.  But we don't need much discovery on the key point,

3    which is the obligations on the subscription and the

4    memorandum.

5            THE COURT:  Would that discovery, if there is any, be

6    required in the Netherlands or somewhere outside of this

7    country?

8            MR. LOMUSCIO:  We would think that Bloomfield, who has

9    taken a position in the Netherlands action, they sought

10   discovery through this court in that action, would be able to

11   do this in New York.

12           THE COURT:  If you were not, then you would need to

13   take discovery pursuant to the Hague Convention?

14           MR. LOMUSCIO:  Possibly pursuant to the Hague

15   Convention, your Honor.

16           THE COURT:  Have you ever had a case where you had

17   discovery through the Hague Convention?

18           MR. LOMUSCIO:  Yes, I have, your Honor.

19           THE COURT:  How long did that take you?

20           MR. LOMUSCIO:  It took a little while, your Honor.

21           THE COURT:  You get my drift.

22           MR. LOMUSCIO:  Yes, I understand.  But, your Honor, as

23   to the key issue which we are focused on, which is ED Capital

24   is suffering harm under the declaratory judgment and the

25   obligations on the subscription agreement and the memorandum,

1    that issue we believe could be tried within a month.  We don't

2    need substantial, if any, discovery on that point.

3              THE COURT:  All right.  Anything else?

4              MR. LOMUSCIO:  The other piece, in terms of harm -- we

5    have talked about this in our papers and I won't go into it in

6    detail -- there is obviously reputational harm which goes to

7    the irreparable nature of what the ED Capital entities will

8    suffer here.  If this is a failure of UMG, which is the primary

9    investment of the ED Capital entities through the Synergy

10   funds, if that fails, ultimately the managers of that fund will

11   be irreparably harmed and not be able to recover from that if

12   they have a reputation of not being able to properly manage

13   funds.

14             To go to your second question, your Honor, to what

15   extent have we satisfied the requirement of irreparable harm,

16   here ED Capital believes we have, your Honor, in two respects.

17   One is the threat of the failure of UMG, which is in turn the

18   threat of the failure of the ED Capital entities.  You can't

19   unscramble the egg if that happens.  There is case law we have

20   cited in our papers about that, your Honor.

21             Your third question, to get to it quickly, is the

22   antisuit injunction point.  While we recognize that it is a

23   high standard, we believe there are extraordinary circumstances

24   presented here.  What you are dealing with is a situation

25   where, if the bond payment missed by UMG, you have not only the

1   collapse of UMG, you will have the collapse of the Synergy

2   funds and in turn the collapse of the ED Capital entities.

3   Here, the real parties in interest here, even though they may

4   not be the same exact parties in the Dutch action, the real

5   parties at interest here are the ED Capital entities as a

6   result of that harm that will be suffered.

7           One final point, your Honor.

8           THE COURT:  Let me go back to the question of who are

9   the real parties in interest.  In an antisuit injunction, as

10  you know, the court is not enjoining the proceeding.

11          MR. LOMUSCIO:  I understand, your Honor.

12          THE COURT:  It is enjoining the parties.  How could

13  this court enjoin a party who is not a party to this action?

14          MR. LOMUSCIO:  You are enjoining a party who is a

15  party to this action.  The party you would be enjoining would

16  be Bloomfield.

17          THE COURT:  There is another party to the transaction

18  also, who is the party in the Netherlands.  Would they not need

19  to be enjoined as well?

20          MR. LOMUSCIO:  UMG would not need to be enjoined, your

21  Honor.  Just Bloomfield is a party.  Bloomfield would need to

22  be enjoined.  You would be instructing Bloomfield for the

23  temporary relief to release the funds which are in a UMG

24  account which has been improperly attached on the basis that

25  Bloomfield's theory that what they have engaged in with UMG is

1   a loan and not an investment through the ED Capital entities.

2            THE COURT:  Assuming that happened and Bloomfield made

3   the payment to UMG, how do you get access if UMG doesn't then

4   pay you?

5            MR. LOMUSCIO:  The payment is just the continued

6   existence of UMG.  We would eventually get paid in turn as long

7   as UMG continues as a viable entity and continues to grow and

8   is allowed to grow if it doesn't miss its bond payment.

9            THE COURT:  All right.  Can you wrap up.

10           MR. LOMUSCIO:  Your Honor, for the reasons in our

11  papers and that we discussed today, the ED Capital entities

12  here have suffered and will suffer irreparable harm if the bond

13  payment is not made by UMG on December 20th.  We have come to

14  this Court on an expedited basis for that reason.

15           We believe that the key aspect of this case and the

16  key dispute between the ED Capital entities and the defendants

17  here depends upon an interpretation of the subscription agree-

18  ment and the memorandum, and we believe that a declaratory

19  judgment action or trial could be heard on that on an expedited

20  basis.  There would be no harm to the status quo, the status

21  quo being the destruction of ED Capital and UMG if the funds

22  were released in the Netherlands and we are allowed to proceed

23  on an expedited basis here in this court.

24           Thank you, your Honor.

25           THE COURT:  Thank you.

1              Mr. Cooper.

2              MR. COOPER:  Good morning, your Honor.  Your Honor,

3    there are really so many defects with this application.  I am

4    going to try to get them in in my ten minutes.  If I can take

5    them out of order.

6              First of all, this question of the relief that they

7    are seeking, and I'll combine that with the antisuit

8    injunction.  The relief that they are seeking is a little in

9    and of itself unusual.  Bloomfield cannot release funds.  The

10   court in the Netherlands attached the funds.  Plaintiff's

11   counsel interchanges the release of the funds and some other

12   actions that need to be taken.  But at best, all this Court

13   could order would be the that Bloomfield be compelled to make

14   some sort of application.  Ultimately, it is up to the Dutch

15   judge, what is done there.

16             The reason this doesn't belong here, among many

17   others, is because this relief could have been sought in the

18   Netherlands.  In fact, in July of this year, July 15th, and it

19   is in our papers as Exhibit 1 to Mr. van Dam's affidavit, an

20   application was made to the court to release funds for bond

21   payments by UMG.

22             In that decision the court first of all went through

23   the facts exhaustively, showing that the Court is very much

24   steeped in what's going on in this dispute, gave credibility to

25   Bloomfield's position regarding the fact that this is a loan,

1    and did not release the attachment entirely, it only released

2    enough to provide for bond payments.  That could have been done

3    in the Netherlands.  There is no explanation in the papers as

4    to why that wasn't done.

5           To make matters worse and to show that there really

6    are credibility issues here regarding the plaintiff's

7    application, this week we received two communications through

8    our Dutch co-counsel indicating that they are planning on going

9    back to the Dutch court.  I can hand one up to the Court if you

10   like.  It's a letter from UMG.  Do I have the Court's

11   permission?

12           THE COURT:  Sure.  When you say "they" are planning --

13           MR. COOPER:  UMG.  That's the party, UMG.  By the way,

14   your Honor, there shouldn't be any doubt that all of these

15   entities are controlled by one individual, Elliot Daniloff.

16   They are not separate entities.  Mr. Daniloff is running the

17   show.  Mr. Daniloff is behind what is going on in the

18   Netherlands, and now he is behind what is going on here.

19           The last paragraph, your Honor, says, "In the absence

20   of such confirmation," meaning that Bloomfield is going to

21   release the funds, "we will, as announced in the letter of

22   November 10, 2015, now finally be compelled to again initiate

23   interim injunctive proceedings forthwith seeking a lifting of

24   the attachment."

25           The second communication, I can't hand it up because

1   it originally was in Dutch and my co-counsel translated it.

2   But I can represent to the Court that there is a new counsel

3   for UMG now in the Netherlands who says, "My client has no

4   other option than once again to sue your client in summary

5   proceedings.  Please provide us ultimately 2 p.m. tomorrow with

6   your dates of unavailability until Christmas to schedule a

7   hearing."  This is dated December 9th.

8           There are very serious questions here as to why this

9   was brought here, what's behind this.  The standing issue is, I

10  think, dispositive, and it was not addressed in the reply brief

11  by the plaintiffs.

12          This is an indirect injury, there is no question about

13  it.  If you listen carefully to plaintiff's counsel's argument,

14  he kept using the terms "flowing to" or "in turn it damages."

15  That is the quintessential definition of an indirect or

16  derivative damage.  That's what this is.

17          There are a lot of derivative injuries as a result

18  potentially of the collapse of UMG to my client and any other

19  stakeholders.  But under the law this arises as an injury

20  directly from UMG.  It's UMG's money.  The attachment is on

21  UMG's account.

22          We are not once removed.  We are twice removed.  ED

23  Capital is the plaintiff here, but they are not the funds that

24  they even allege that Bloomfield invested in.  Bloomfield

25  invested in Synergy.  These are the managers.  So it's not UMG

1    who has the injury and it's not the shareholder of UMG which

2    they say we invested in, which is Synergy.  It's a separate

3    entity, this investment manager, all of whom again are

4    controlled by Mr. Daniloff.

5            Legally, there is no question I would say to the Court

6    that this is an indirect derivative injury, and the law is

7    crystal clear that a shareholder cannot bring claims unless

8    they do it as a derivative action on behalf of an entity that

9    it invested in.

10           On the issue of irreparable harm, obviously a very

11   high standard, as is the standard on antisuit injunctions,

12   there is no financial information whatsoever presented to you

13   about ED Capital's situation.  That's the entity that they are

14   saying is going to be irreparably harmed.  No financial

15   information.  The only financial information that is provided

16   is an unaudited letter from an accountant with regard to UMG.

17   So we have no idea whether this in fact will result in even

18   what they say.

19           And they say in their papers that this is not their

20   only holding; they say this is one of their holdings.  We have

21   no idea what their other holdings are.  We don't know what

22   their capitalization is.  They are saying just accept the fact

23   that there is irreparable harm here.  They offer absolutely no

24   proof of it.  Threat of failure under the law is not a

25   definition of irreparable harm.

1          The cases they cite to satisfy it are domain names

2     being stolen and knocked off and palmed off or franchises being

3     discontinued.  This is where you find irreparable harm.  You

4     don't find it in classic situations where a shareholder is

5     going to lose money in an underlying business fails.

6          The representation that this is not going to come to

7     fruition in the Netherlands until mid 2016 is not true.  First

8     of all, they had it in their control to bring it before the

9     Dutch court any time they wanted.  In fact, you will see our

10    papers that we wrote to them I think two, three months ago

11    saying what's going to happen with the next bond payment, and

12    they never responded.  This was like in August.

13         Then in November, all of a sudden it's a hurry up,

14    hurry up, hurry up, we want you to release the money, we want

15    you to release the money.  If you look at the correspondence

16    back and forth, we are asking the very same questions that I am

17    presenting to you today.  What is the financial situation?

18    What other holdings do these companies have?  Is Razvitiye, if

19    I pronounce it right, Bank in fact unequivocally telling you

20    that they are not going to honor the CD?  The letter just says

21    it gets suggests that they might.  We don't know that.

22         These are all fact issues.  We asked these questions,

23    got no answers.  All we got repeatedly was release the money.

24    Then they run to the New York court instead of going to the

25    Dutch court.  What their motivation is in coming here I don't

 1   know, but it is the wrong party asking for extreme relief

 2   making an extreme claim of irreparable harm, and they don't

 3   satisfy any of those elements.

 4             THE COURT:  Thank you.

 5             Mr. Lomuscio, I will give you a couple of minutes.

 6             MR. LOMUSCIO:  Thank you, your Honor.  I will just

 7   address a couple of points raised by defense counsel.  One is

 8   UMG very well is taking all steps necessary to release the

 9   funds because it recognizes that if the December 20th date is

10   not met, it will be in default with its bondholders and will be

11   in a position where it might collapse, will collapse.

12             THE COURT:  Let me ask you something there.  Assuming

13   that they are taking all of those steps in good faith and that

14   they succeed before December 20th, where does that put your

15   client?

16             MR. LOMUSCIO:  It puts my client seeking the

17   declaratory relief we are seeking and asking for an expedited

18   hearing on that piece.

19             THE COURT:  All right.

20             MR. LOMUSCIO:  If the bond payment is made, we are in

21   a position where we need the expedited hearing.  Their entire

22   theory is that somehow they have provided a loan to UMG when in

23   fact what they have done, as defense counsel appears to concede

24   today, is invest in the Synergy funds, which are managed by ED

25   Capital and the ED Capital entities.

1          In terms of why it was in November, it was not until

2    November, a couple of days before we brought this action, we

3    learned that UMG learned that the funds would not be available

4    from Bank Razvitiye.  I apologize also for the pronunciation.

5    The fact is those funds are not available.

6          Back in August UMG believed those funds would be

7    available and possibly be available for the bond payment.  But

8    they are not available, and that is the reason that we have had

9    to bring this action here in New York on behalf of the ED

10   Capital entities.

11         The other question:  Why New York?  The ED Capital

12   entities are located on Third Avenue.  They are in New York.

13   Bloomfield has come to New York in connection with the Dutch

14   action seeking discovery in New York from the ED Capital

15   entities.  So we are properly here in this court bringing this

16   action.

17         Thank you, your Honor.

18         THE COURT:  Thank you.

19         MR. COOPER:  Your Honor, could I make one small point

20   that I omitted?

21         THE COURT:  Yes.

22         MR. COOPER:  Thank you.  One other serious question is

23   whether this suit is even moot.  In two places in Mr.

24   Daniloff's affidavit, paragraphs 33 and 47, he says

25   unequivocally that if the relief is not granted by December

1    7th, then he cannot get the funds released in time.  It's

2    December 11th.  There has been no follow-up information

3    provided to the Court.

4         I can read you the paragraphs but I don't know that

5    that is necessary.  He says, "Without access to the funds, the

6    Netherlands court is told us by December 7, 2015, UMG will be

7    unable to make the upcoming bond payment."  In paragraph 46 he

8    gives even more detail on that.

9         At a minimum it's a credibility issue as far as what

10   Mr. Daniloff is saying here.  What else is not a hundred

11   percent accurate in this application?  I'll leave it at that.

12        THE COURT:  Thank you.  I think I have heard enough of

13   the presentation.  And I have, as I have indicated earlier,

14   carefully reviewed the submissions in support of and in

15   opposition to the plaintiff's request.

16        Mr. Lomuscio, I am not persuaded that the plaintiff

17   has made a sufficiently compelling case for injunctive relief

18   here, essentially for the reasons that I indicated earlier that

19   I asked you to address in particular.  I am not persuaded that

20   the plaintiff has made a sufficient showing of standing under

21   the circumstances of this case or that the plaintiffs have

22   shown irreparable harm to the plaintiff from these

23   circumstances.

24        I also believe that plaintiff has not made a

25   sufficiently compelling case that injunctive relief by way of

1    an antisuit injunction is appropriate here under the relevant

2    factors: frustration of a policy in the enjoining forum, the

3    foreign action being allegedly vexatious or a threat to the

4    issuing court's interim jurisdiction, or the proceedings in the

5    other forum prejudicing equitable considerations.

6           I think these are all very rigorous standards that

7    apply for a court in this country to enjoin the proceeding in

8    another country.  Consequently, I believe that it would be

9    inappropriate for this Court to issue such relief.  I will

10   issue an order forthwith embodying the Court's ruling and

11   encompassing the transcript of this proceeding.

12          Thank you.

13          MR. COOPER:  Your Honor, there was a cross-motion to

14   dismiss.  I don't know if that is subsumed in your decision

15   that there is no standing.  Or are you taking that under

16   consideration?

17          THE COURT:  I will take that under consideration.  But

18   it is essentially subsumed.

19          Mr. Lomuscio?

20          MR. LOMUSCIO:  Your Honor, thank you.  With regard to

21   our request for a hearing on the declaratory relief, will you

22   be taking that under consideration?

23          THE COURT:  We will do the same.  Again, the issue is

24   if the Court believes that you have not made a showing of

25   irreparable harm or that you are likely to succeed on the

1    merits, that implicates the question of declaratory relief.

2    The order that I will issue will cover those questions as well.

3              MR. LOMUSCIO:  Thank you, your Honor.

4              (Adjourned)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25