U SDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC # _____
DATE FILED: 7/5/16

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X
ED CAPITAL, LLC AND                 :
ED CAPITAL MANAGEMENT, LLC,         :
                                    :     15 Civ. 9056 (VM)
                Plaintiffs,         :
                                    :     **DECISION AND ORDER**
     - against -                    :
                                    :
BLOOMFIELD INVESTMENT RESOURCES     :
CORP., REUBEN BROTHERS RESOURCES    :
GROUP, RB RESOURCES LIMITED, AND    :
REUBEN BROTHERS LIMITED,            :
                                    :
                Defendants.         :
----------------------------------X
**VICTOR MARRERO, United States District Judge.**

Plaintiffs ED Capital, LLC and ED Capital Management, LLC (collectively "ED Capital") brought this action against Bloomfield Investment Resources Corp. ("Bloomfield"), Reuben Brothers Resources Group, RB Resources Limited, and Reuben Brothers Limited (collectively "Defendants"). ED Capital's Complaint ("Complaint") seeks a declaratory judgment, injunctive relief, and damages for its claims of abuse of process, prima facie tort, and breach of contract. (Dkt. No. 1.) On the same day that ED Capital commenced suit against Defendants, ED Capital moved for temporary and preliminary injunctive relief (the "Motion") in the form of: 1) an order preventing Bloomfield from prosecuting a lawsuit pending in the Netherlands against United Meat Group ("UMG"); 2) an order requiring Bloomfield to release funds attached in the

1

Netherlands as part of that suit; and 3) prejudgment attachment of Defendants' assets in New York. (Dkt. No. 16.) ED Capital also sought an expedited hearing on its declaratory judgment action. Defendants cross-moved to dismiss ED Capital's complaint. (Dkt. No. 8.) At a hearing held on December 11, 2015 ("December 11 Hearing," see Dkt. Minute Entry for Dec. 11, 2015), the Court denied ED Capital's Motion and stated that it would issue an order embodying its ruling and encompassing ED Capital's request for a hearing on its declaratory judgment as well as Defendants' cross-motion to dismiss ED Capital's Complaint (the "Cross-Motion to Dismiss").

For the reasons discussed on the record at the December 11 Hearing and discussed in this Decision and Order, the Court DENIES the Motion and ED Capital's request for an expedited declaratory judgment hearing and GRANTS Bloomfield's Cross-Motion to Dismiss ED Capital's suit.

## I.    BACKGROUND[1]

Plaintiff ED Capital, a Delaware corporation, is the investment advisor and investment manager of Synergy Hybrid Fund, Ltd. and Synergy Hybrid Feeder Fund Ltd. (collectively "Synergy Funds"), investment funds incorporated in the Cayman Islands which invest primarily in Russian public and privately held securities. The Synergy Funds hold 100 percent of the shares of UMG, a Russian corporation and holding company for a large-scale poultry producer.

In November 2011, Defendant Bloomfield transferred $25 million to UMG. The character of that transaction is at the core of both the suit in the Netherlands (the "Netherlands Action") and the instant suit. ED Capital's version of events is that the $25 million was an investment in the Synergy Funds. In support of its Complaint, ED Capital presents the Synergy Hybrid Fund Subscription Agreement ("Subscription Agreement"), which was executed by Bloomfield on November 4, 2011 and incorporates the Confidential Private Placement Memorandum ("Memorandum") detailing the rights and

---

[1] The facts described in this Section are drawn from the submissions in this matter: ED Capital's Complaint (Dkt. No. 1); Plaintiffs' Memorandum of Law in Support of Temporary and Preliminary Injunctive Relief and Declaration of Elliot Daniloff (Dkt. No. 16); Defendants' Memorandum of Law in Opposition and in Support of Cross-Motion to Dismiss (Dkt. No. 9) and Declaration of Martijn van Dam (Dkt. No. 10); and Plaintiffs' Reply Memorandum in Support of Temporary and Preliminary Injunctive Relief (Dkt. No. 12). No further citation will be made to these documents in this Section.

obligations of investors in the Synergy Funds. ED Capital argues that the contractual terms of the Subscription Agreement, as well as subsequent e-mail correspondence between Defendants and ED Capital, make clear that Bloomfield undertook an investment rather than a loan. According to ED Capital, Bloomfield was given signatory authority on an account in UMG's name for the purpose of monitoring its investment in UMG. In 2015, $15 million was transferred from that account to an account at Demir-Halkbank ("DHB") in the Netherlands. ED Capital maintains that at all times the $25 million was an investment, and UMG had no duty to repay that amount.

Defendants maintain a very different view of the $25 million transaction. They assert that the transaction was a two-year loan to UMG made in 2011 that was provided, per ED Capital's request, by way of the Synergy Funds.[2] Defendants' position that the $25 million was a loan led them to initiate the Netherlands Action in an attempt to ensure repayment.

In June 2015, Defendants initiated a prejudgment attachment of the funds maintained in UMG's account at DHB in

---

[2] Defendants claim that in lieu of interest, upon repayment Bloomfield would acquire a 25% stake in the Synergy Funds. It was to secure repayment of this loan, Defendants argue, that Bloomfield signed the Synergy Funds Subscription Agreement. When UMG had not repaid the loan by late 2014, Defendants argue, Bloomfield acquired 50% of UMG shares as security as well as the transfer of $15 million to DHB, to be held in UMG's name but with signatures required of both UMG and Bloomfield to transfer funds.

4

Rotterdam District Court (the "Netherlands Court"). On June 17, 2015, the Netherlands Court granted Bloomfield attachment of $15 million maintained in the DHB account. ED Capital was not a party to the action. Several weeks later, on July 15, 2015, the Netherlands Court released $3.3 million of the attached funds on UMG's request that it be permitted to make an upcoming bond payment.

On August 11, 2015, Bloomfield commenced formal proceedings in the Netherlands against UMG seeking repayment of the $25 million. UMG wrote to Bloomfield on November 10, 2015, to request that Bloomfield lift the attachment of the remaining funds in the DHB account to allow UMG to make a bond payment in the amount of $2,944,562.07 due on December 20, 2015. As of the December 11 Hearing, the funds were still subject to attachment in the Netherlands.

On November 18, 2015, ED Capital brought this action seeking, among other forms of relief, a declaratory judgment that Bloomfield's $25 million transfer constituted an investment, not a loan. ED Capital also seeks immediate relief in the form of a preliminary injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure ("Rule 65") preventing Defendants from prosecuting the Netherlands Action and requiring Defendants to release the funds attached in the Netherlands to permit UMG to make its upcoming bond payment.

The Court held a hearing on the matter on December 11, 2015. At the conclusion of the hearing, the Court stated that it was "not persuaded that the plaintiff has made a sufficient showing of standing . . . or that the plaintiffs have shown irreparable harm." (Dkt No. 14 at 19 ¶20-22.) Accordingly, the Court found that it would be inappropriate to issue an injunction restraining the parties from pursuing the Netherlands Action. This Order explains in greater depth the Court's decision to deny ED Capital's preliminary injunction motion. The Court further addresses ED Capital's motion for a declaratory judgment hearing and Defendants' Cross-Motion to Dismiss.

## II.  **DISCUSSION**

### A.  ED CAPITAL'S MOTION FOR A PRELIMINARY INJUNCTION

#### 1.  Preliminary Injunction Standard

The district court has wide discretion in determining whether to grant a preliminary injunction. See Grand River Enterprise Six Nations, Ltd. v. Pryor, 481 F.3d 60, 66 (2d Cir. 2007) (citing Moore v. Consolidated Edison Co. of New York, Inc., 409 F.3d 506, 511 (2d Cir. 2005)). However, a preliminary injunction is "an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." Mazurek v. Armstrong, 520 U.S. 968, 972 (1997); see also Patton v.

Dole, 806 F.2d 24, 28 (2d Cir. 1986) (recognizing that "preliminary injunctive relief is an extraordinary remedy and should not be routinely granted").

A court may issue a preliminary injunction only where the moving party demonstrates "a) irreparable harm and b) either 1) likelihood of success on the merits or 2) sufficiently serious questions going to the merits to make them a fair ground for litigation and balance of hardships tipping decidedly toward the party requesting the preliminary relief." Citigroup Global Mkts. Inc. v. VCG Special Opportunities Master Fund Ltd., 598 F.3d 30, 35 (2d Cir. 2010); see also Tom Doherty Associates, Inc. v. Saban Entertainment, Inc., 60 F.3d 27, 33 (2d Cir. 1995).

Irreparable harm is the "single most important prerequisite for the issuance of a preliminary injunction." Freedom Holdings, Inc. v. Spitzer, 408 F.3d 112, 114 (2d Cir. 2005). To fulfill the irreparable harm requirement, the moving party "must demonstrate an injury that is neither remote nor speculative, but actual and imminent, and one that cannot be remedied by an award of monetary damages." Rodriguez ex rel Rodriguez v. DeBuono, 175 F.3d 227, 234 (2d Cir. 1998). In the absence of a showing of irreparable harm, a motion for a preliminary injunction should be denied. See JSG Trading Corp. v. Tray-Wrap, Inc., 917 F.2d 75, 80 (2d Cir. 1990)

(finding no irreparable harm where movant could be compensated by money damages); see also Freedom Holdings, 408 F.3d at 115 (loss of market share was not 'imminent harm'); Polymer Technology Corp v. Mimran, 37 F.3d 74 (2d Cir. 1994) (no imminent harm where money damages were calculable and available for contract claim).

Although threat to the continued existence of a business or loss of business reputation may in certain situations constitute irreparable harm, see Jacobson & Co. v. Armstrong Cork Co., 548 F.2d 438, 444-45 (2d Cir. 1977), absent extraordinary circumstances, generalized damage to reputation falls short of irreparable injury. See Sampson v. Murray, 415 U.S. 61, 91-92 (1974); see also Jamaica Ash & Rubbish Removal Co., Inc. v. Ferguson, 85 F. Supp. 2d 174, 181 (E.D.N.Y. 2000) (distinguishing Jacobson where claimed reputational harm was "grounded only on speculation and assumption").

2. Anti-Suit Injunction Standard

Where, as in this case, a plaintiff seeks to enjoin a foreign proceeding, an especially rigorous standard applies. Because an injunction against a party to a properly initiated foreign proceeding effectively restricts the jurisdiction of a court of a foreign sovereignty, such an anti-suit injunction implicates questions of international comity. See China Trade and Development Corp. v. M.V. Choong Yong, 837 F.2d 33, 35

8

(2d Cir. 1987). Therefore, anti-suit injunctions against foreign suits should be "used sparingly," U.S. v. Davis, 767 F.2d 1025, 1038 (2d Cir. 1985), and granted "only with care and great restraint." Laker Airways, Ltd. v. Sabena Belgian World Airlines, 731 F.2d 909, 926 (D.C. Cir. 1984). The Second Circuit takes a restrictive approach to injunctions against foreign proceedings, "rarely permitting" such injunctions. General Elec. Co. v. Deutz AG, 270 F.3d 144, 161 (3d Cir. 2001).

To determine whether an anti-suit injunction is warranted, the Second Circuit has used a multi-factor test. As a threshold matter, parties must be the same in both matters, and resolution of the first action must be dispositive of the action to be enjoined. China Trade, 837 F.2d at 35 (quoting American Home Assur. Co. v. Ins. Corp. of Ireland, 603 F. Supp. 636, 643 (S.D.N.Y. 1984)). If those threshold matters are satisfied, five additional factors determine a court's decision to enjoin: whether 1) the foreign action frustrates a policy in the enjoining forum; 2) the action would be vexatious; 3) there is a threat to the issuing court's in rem or quasi in rem jurisdiction; 4) the proceedings in the other forum prejudice other equitable considerations; 5) adjudication of the same issue in separate actions would result in delay, inconvenience, expense, or a

race to judgment. See American Home Assur. Co., 603 F. Supp. at 643; see also Garpeg, Ltd. v. U.S., 583 F. Supp. 789, 798 (S.D.N.Y. 1984). Of these factors, the Second Circuit has found two to be especially important: whether the foreign action threatens the enjoining forum's jurisdiction, and whether strong public policies of the enjoining forum are threatened by the foreign action. China Trade, 837 F.2d at 36; see also Bailey Shipping Ltd. v. Am. Bureau of Shipping, No. 12 Civ. 5959, 2013 WL 5312540, at *8 (S.D.N.Y. Sept. 23, 2013).

### 3. Application of Preliminary Injunction Standard

ED Capital contends that it is entitled to a preliminary injunction preventing Defendants from pursuing the Netherlands Action against UMG and compelling the release of funds attached in that action because it will suffer irreparable harm if UMG cannot make an upcoming bond payment while its funds remain attached by the Netherlands Court. ED Capital describes the harm that will result from a missed bond payment in its Complaint as follows:

> If UMG is rendered insolvent by Bloomfield's and the Reuben Brothers' frivolous lawsuit in the Netherlands, the value of Synergy Funds, the majority of which is invested in UMG, will drop to zero wiping out the investors' equity and triggering a 'death spiral' for ED Capital, which makes substantially all of its money through the management fees it earns from the Synergy Funds.

(Dkt. No. 1 at 16.) ED Capital asserts that there is "no other source of funds" with which UMG will be able to make its bond payment. (Id. at 15.) Therefore, if UMG defaults and the Synergy Funds lose value, ED Capital will lose income from decreased management fees from the Synergy Funds. (Dkt. No. 1 at 16.) In addition to monetary loss, ED Capital argues that its reputation will suffer and it will risk going out of business entirely if UMG fails because ED Capital will develop "a reputation of not being able to properly manage funds." (Dkt. No. 14 at 8 ¶12.)

Essentially, the alleged irreparable harm to ED Capital – setting aside the harm to UMG, which is irrelevant to this inquiry – is a loss of management fees and business reputation. Loss of fees, however, constitutes the type of harm that is typically remedied through a damage award. See JSG Trading Corp., 917 F.2d at 80. Although ED Capital contends that it risks going out of business as a result of lost management fees, this possibility falls short of "actual and imminent" injury. Rodriguez ex rel Rodriguez, 175 F.3d at 234. Aside from ED Capital's assertion that it makes "substantially all of its money" from Synergy Fund fees, nothing in the record supports ED Capital's assertion that the missed bond payment would force it out of business.

11

ED Capital's argument that irreparable harm should be premised on its loss of business reputation also fails. ED Capital cites Coastal Distribution, LLC v. Town of Babylon, No. 05 Civ. 2032, 2006 WL 270252 (E.D.N.Y. Jan. 31, 2006), in which a court found that a loss of goodwill and injury to reputation constituted irreparable harm. That case is distinguishable. In Coastal Distribution, as in Jacobson & Co. v. Armstrong Cork Co., 548 F.2d 438 (2d Cir. 1977), another case cited by ED Capital, plaintiffs supplied specific goods or services that they would immediately lose the ability to provide to customers absent an injunction. See Jamaica Ash, 85 F. Supp. at 181 (distinguishing "imminent threats to customer base" of a supplier of unique goods in Jacobson from "tenuous" harm to non-unique product supplier in instant case). Here, ED Capital's claim of lost business reputation is merely an extension of its claim of lost profits, its reasoning being that if ED Capital's Synergy Funds lose money, investors will not want to invest their money in it. The Court finds that such prospective loss does not constitute the type of irreparable harm warranting a preliminary injunction.

In order to secure a preliminary injunction, ED Capital must also show that it is likely to succeed on the merits of this case, or that its claim raises sufficiently serious

12

questions going to the merits to make them fair grounds for litigation and the balance of equities tips decidedly in ED Capital's favor. See Tom Doherty Assoc., Inc., 60 F.3d at 33. ED Capital's claims for declaratory and injunctive relief are based on Bloomfield's attachment of assets belonging to UMG, which is not a party to this suit. Given the serious defects with ED Capital's standing to bring suit, discussed in Sections B and C, infra, there is little to support ED Capital's assertion that it will succeed in its declaratory judgment action.

### 4. Application of Anti-Suit Injunction Standard

Even if ED Capital were able to make a "clear showing" of irreparable harm and likelihood of success on the merits, Mazurek, 520 U.S. at 572, it fails to demonstrate that the circumstances of this case warrant an injunction preventing Defendants from proceeding with an action properly filed in a foreign court. Anti-suit injunctions are rare and reserved for situations where a foreign action, filed concurrently with a United States action, threatens the jurisdiction or public policies of the United States forum. See China Trade, 837 F.2d at 35-36.

In China Trade, the Second Circuit considered an injunction against a proceeding that was filed in a Korean court while an action brought in the United States was

13

pending. It noted that parallel proceedings in foreign courts with concurrent jurisdiction are "ordinarily tolerable." Id. at 36-37. The Circuit Court went on to find that an injunction had been improperly granted because the proceedings in the Korean court did not pose a threat to the United States court exercising jurisdiction, nor was a party attempting to evade compliance with an important public policy of the United States forum when it brought suit in Korea. See id.

China Trade addresses the propriety of anti-suit injunctions against second-filed foreign actions. A key distinction in this case is that the pending Netherlands Action was filed in August 2015, prior to ED Capital's Complaint. ED Capital does not cite any case in which an anti-suit injunction was granted by a United States court against a first-filed foreign action. Much of the analysis in China Trade examining whether a foreign suit is vexatious or threatens the United States court's jurisdiction is strained in a case where the foreign action was filed first. Even assuming that China Trade governs where the United States case is filed second, the threshold factors for an anti-suit injunction - whether the parties are the same in both matters and whether resolution of the case before the enjoining court must be dispositive - are not met here. See China Trade, 837 F.2d at 35; American Home Assurance, 603 F. Supp. At 643.

The parties in the Netherlands Action are different from those in the instant action: UMG is a party to the Netherlands Action but not to the United States action. Further, even if the Court resolved ED Capital's declaratory judgment action, issues relating to UMG's claims would remain unresolved in the Netherlands Action. Because these threshold factors are not met, the Court need not review the five additional factors articulated in China Trade and American Home Assurance.

In light of the rigorous standard governing issuance of a preliminary injunction, particularly one enjoining a suit in a foreign jurisdiction, the Court is not persuaded that ED Capital has met its burden to demonstrate that a preliminary injunction barring Defendants from prosecuting the Netherlands Action or releasing UMG's funds attached in that action is appropriate.

B.    ED CAPITAL'S MOTION FOR DECLARATORY JUDGMENT AND EXPEDITED HEARING

1.    Legal Standard for Declaratory Judgment

The Declaratory Judgment Act, 28 U.S.C. Section 2201, provides that in a "case of actual controversy within its jurisdiction" a court of the United States may "declare the rights and other legal relations" of an interested party "whether or not further relief is or could be sought." See Beacon Const. Co. v. Matco Elec. Co., 521 F.2d 392, 397 (2d

Cir. 1975). Rule 57 of the Federal Rules of Civil Procedure ("Rule 57") provides that a court "may order a speedy hearing of a declaratory judgment action." The existence of a "definite, concrete, and substantial" controversy is necessary to sustain jurisdiction under the Declaratory Judgment Act. Muller v. Olin Mathieson Chem. Corp., 404 F.2d 501, 504 (2d Cir. 1968). This test embodies the same analysis applicable to the "case or controversy" standard embodied in Article III of the United States Constitution. See Dow Jones & Co., Inc. v. Harrods, Ltd., 237 F. Supp. 2d 394, 406 (S.D.N.Y. 2002) (citing Public Serv. Comm'n of Utah v. Wycoff Co., 344 U.S. 237, 242 (1952)).

Even where jurisdiction exists, federal courts have "unique and substantial discretion" to decline to hear a declaratory judgment action. Wilton v. Seven Falls Co., 515 U.S. 277, 282 (1995). Courts examine 1) whether the judgment will serve a useful purpose in clarifying or settling the legal issues involved and 2) whether a judgment would finalize the controversy and offer relief from uncertainty. Broadview Chem. Corp. v. Loctite Corp., 417 F.2d 998, 1001 (2d Cir. 1969). Additional factors include "whether the proposed remedy is being used for 'procedural fencing' or a 'race to res judicata'; whether the use of a declaratory judgment would increase friction between sovereign legal systems or

16

improperly encroach on the domain of a state or foreign court; and whether there is more effective remedy." <u>Dow Jones & Co. v. Harrods Ltd.</u>, 346 F.3d 357, 359-60 (2d Cir. 2003) (citations omitted). Particular discretion is warranted where there is a proceeding pending in another court - state, federal, or foreign - that will resolve the controversies between the parties. See <u>Great Am. Ins. Co. v. Houston Gen. Ins. Co.</u>, 735 F. Supp. 581, 584 (S.D.N.Y. 1990); <u>see also Dow Jones & Co.</u>, 346 F.3d at 359 (upholding dismissal of declaratory judgment action in light of a parallel foreign proceeding).

2.    Standing

The standing inquiry, as one component of Article III's case or controversy requirement, is "a jurisdictional prerequisite to a federal court's deliberations." <u>Hodel v. Irving</u>, 481 U.S. 704, 711 (1987). To establish Article III standing a plaintiff must demonstrate that a "case or controversy exists." <u>Gladstone Realtors v. Vill. of Bellwood</u>, 441 U.S. 91, 99 (1979). At a minimum, the plaintiff must show 1) that he or she has suffered an "injury-in-fact" 2) which is "fairly traceable" to the defendant's action, and 3) that the injury is likely to be "redressed by a favorable decision." <u>Lujan v. Defs. of Wildlife</u>, 504 U.S. 555, 560 (1992). A primary purpose of the standing requirement is to

17

ensure that a plaintiff has a sufficiently personal stake in the outcome of a suit, as the Article III judicial power "exists only to redress or otherwise to protect against injury to the complaining party." Warth, 422 U.S. at 499. In addition to the constitutional standing requirements, courts adhere to prudential considerations of standing, including limitations on a litigant's ability to raise another person's legal rights. See Lexmark Int'l, Inc. v. Static Control Components, Inc., 134 S. Ct. 1377, 1386 (2014); Lerner v. Fleet Bank, N.A., 318 F.3d 113, 126 (2d Cir. 2013).

The Supreme Court and Second Circuit have repeatedly held that the "injury-in-fact" requirement, as well as prudential standing limitations, dictate that "a plaintiff must . . . assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." Rajamin v. Deutsche Bank Nat. Trust Co., 757 F.3d 79, 86 (2d Cir. 2014) (quoting Warth, 422 U.S. at 499). Though the binding assignment of a claim confers standing on the assignee, see Sprint Commc'ns Co., L.P. v. APCC Servs., Inc., 554 U.S. 269, 290 (2008), absent such a formal assignment no third party can claim standing on behalf of the injured entity. A shareholder in a company, for instance, has no standing to bring a claim alleging injury to the corporation on the basis of the shareholder's financial

stake in the corporation. See Jones v. Niagara Frontier Transp. Authority, 836 F.2d 731, 736 (2d Cir. 1987). Similarly, the Second Circuit has rejected standing for investment managers on the basis of their authority to make investment decisions on behalf of clients. W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP, 549 F.3d 100, 109 (2d Cir. 2008).

### 3.    Application of Declaratory Judgment Standard

ED Capital maintains that it is entitled to a declaratory judgment stating that the $25 million transaction referred to in the Subscription Agreement is an investment not subject to repayment, rather than a loan. The Court is not persuaded that ED Capital has shown the existence of an actual controversy within the Court's jurisdiction that would compel a declaratory judgment.

ED Capital argues that the "dispute between Bloomfield and ED Capital regarding whether . . . Bloomfield made a $25 million investment in the Synergy Funds" constitutes an actual controversy within the Court's jurisdiction under 28 U.S.C. Section 2201(a). (Dkt. No. 1 at 17.) A declaration of contractual rights absent imminent litigation or enforcement of a judgment within the Court's jurisdiction falls short of the "definite, concrete, and substantial" controversy

19

required under the Declaratory Judgment Act. Muller, 404 F.2d at 504.

ED Capital's lack of standing means there exists no actual controversy that would compel a declaratory judgment. ED Capital contends that its fate is so closely tied to UMG as a result of its management of the Synergy Funds that the threat posed by a claim for monetary damages to UMG causes actual and imminent injury to ED Capital. At the hearing on the Motion, ED Capital argued that it sought redress for harm "falling to ED Capital by virtue of its investments by virtue of the Synergy Funds' investment in UMG." (Dkt. No. 14 at 4 ¶12-14.) Regardless of the financial loss that ED Capital may suffer as a result of its relationship with UMG, however, ED Capital has not asserted any actual controversy involving its own rights being violated by Defendants. UMG is a separately incorporated legal entity with its own officers, shareholders, and financial obligations, and it continues to defend the Netherlands Action with its own counsel in the Netherlands.

Moreover, the threat ED Capital identifies in Bloomfield's continued attempts to recover the $25 million in the Netherlands Action involves substantial speculation. The Netherlands Action is in its early stages; questions remain unanswered as to whether the Netherlands Court will release

additional funds in the UMG account attached by Bloomfield, whether it will rule in Bloomfield's favor, and what form of relief it would grant. The prospect of the Netherlands Court ruling at some point that the $25 million constitutes a loan to be repaid does not raise an actual controversy within the meaning of the Declaratory Judgment Act.

Further, in looking to the factors that guide its exercise of discretion in Declaratory Judgment Act cases, the Court is not persuaded that ED Capital's requested declaratory judgment would "clarify[] or settl[e] the legal issues involved" or "finalize the controversy and offer relief from uncertainty." Broadview Chem., 417 F.2d at 1001. First, ED Capital has not presented the Court with any law stating that the Netherlands Court would honor a declaratory judgment issued by a United States court based on application of United States law. The judgment sought by ED Capital declaring the $25 million transaction an investment would contradict specific preliminary findings made by the Netherlands Court in its July 15, 2015 decision, in which it upheld the attachment of UMG funds and found that there is "support" for the view that UMG committed itself to repaying $25 million to Bloomfield. (Dkt. No. 10, Ex. 1 at 8.) Such a ruling, rather than definitively settling the rights of the parties to the Netherlands Action (in which ED Capital is not

even a party), would introduce an additional element of uncertainty into the Netherlands Action.

Largely for the same reasons, it is not clear that the declaratory judgment will serve a useful purpose because the Netherlands Action will settle the issue for which the declaratory judgment is sought: whether UMG owes the balance of the $25 million to Bloomfield. To issue a declaratory judgment in this matter would lend no additional clarification to the underlying Netherlands Action involving the rights of UMG, a non-party to this action.

As to the additional factors governing the Court's discretion to issue a declaratory judgment, that ED Capital filed its Complaint after Bloomfield's case against UMG was already pending in the Netherlands Action suggests that this declaratory judgment action is motivated by "procedural fencing," Dow Jones & Co., 346 F.3d at 359, or a desire to circumvent the proceedings in the Netherlands. With respect to whether this action would risk friction between legal systems or improperly encroach on the domain of a foreign court, a United States judgment on the character of the $25 million transaction between Bloomfield and UMG would very likely be taken as an intrusion into the exercise of the Netherlands court's jurisdiction. Finally, there is a better and more effective remedy available – namely, allowing UMG to

continue to defend the Netherlands Action. When such a fair and adequate alternative forum exists "the declaratory judgment action may not be misused as a precipitous means to obtain access to court ahead of an opponent in an alternate action." Dow Jones & Co., 237 F. Supp. 2d at 443 (citing Wycoff, 344 U.S. at 247).

Reviewing the various considerations that guide the Court's exercise of its discretion in granting relief under the Declaratory Judgment Act, the Court finds that the requested expedited hearing and declaratory judgment under Rule 57 would be inappropriate in this matter.

## C. DEFENDANTS' CROSS-MOTION TO DISMISS

### 1. Legal Standard Applicable to a 12(b)(1) Motion to Dismiss

Defendants move to dismiss the Complaint for lack of standing, in addition to moving to dismiss on grounds of international comity. A motion to dismiss a complaint for lack of standing is properly brought pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure ("Rule 12(b)(1)") because it relates to the court's subject matter jurisdiction. See Tasini v. New York Times Co., 184 F. Supp. 2d 350, 355 (S.D.N.Y. 2002) (distinguishing jurisdictional defects from failure to state a cognizable claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure);

Connecticut v. Physicians Health Servs. of Conn., Inc., 287 F.3d 110, 114 (2d Cir. 2002). The Second Circuit has stated that where a defendant moves for dismissal for lack of subject matter jurisdiction as well as on other grounds, the court should consider the jurisdictional challenge first. Rhulen Agency, Inc. v. Ala. Insurance Guaranty Assn., 896 F.2d 674, 678 (2d Cir. 1990); see also U.S. ex rel. Kreindler & Kreindler v. United Techs. Corp., 985 F.2d 1148, 1155 (2d Cir. 1993); 5 C. Wright and A. Miller, Federal Practice and Procedure § 1350 (1969).

The inquiry on a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) concerns whether the district court has the statutory or constitutional power to adjudicate the case. See Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). A court deciding a motion to dismiss for lack of subject matter jurisdiction must accept all material allegations in the complaint as true and construe any doubts or ambiguities in the complaint in favor of the complaining party. Warth v. Seldin, 422 U.S. 490, 501 (1975); Jaghory v. New York State Dep't of Educ., 131 F.3d 326, 329 (2d Cir. 1997). The party asserting subject matter jurisdiction bears the burden of establishing it by a preponderance of the evidence. See Makarova, 201 F.3d at 113; see also Luckett v. Bure, 290 F.3d 493, 496-97 (2d Cir. 2002).

"[J]urisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." Shipping Fin. Servs. Corp. v. Drakos, 140 F.3d 129, 131 (2d Cir. 1998).

### 2. Defendants' Motion to Dismiss

The basis of ED Capital's claim is injury "flowing to" it as a result of Defendants' legal action against UMG in the Netherlands. (Dkt. No. 14 at 4 ¶4). Indirect injury suffered as a result of the violation of a third party's rights is an insufficient basis on which to establish standing, and therefore ED Capital cannot establish subject matter jurisdiction as required to survive a motion to dismiss under Rule 12(b)(1).

ED Capital argues that it seeks to redress harm to ED Capital that is created by Bloomfield's attachment of UMG funds and the Netherlands Action. But as the Court made clear in the December 11 hearing, the issue is not merely "whether or not ED Capital has suffered a harm but whose rights [ED Capital is] seeking to enforce." (Dkt. No. 14 at 5 ¶8-9.) The true party to this action is UMG, whose rights to the funds in the Netherlands account are at issue. ED Capital cannot enforce UMG's rights as a third party in this forum, particularly where UMG is simultaneously defending its own rights in a first-filed foreign proceeding. As discussed

25

above in the context of the Declaratory Judgement Act's 'actual controversy' requirement, supra, Section II(B)(3), ED Capital has not alleged any way in which its own rights have been violated by Bloomfield. Derivative or indirect injuries of the type alleged by ED Capital are not cognizable as grounds for standing, see Rajamin, 757 F.3d at 86, and ED Capital holds no special standing as a shareholder in UMG that would permit it to bring claims on its behalf. See Jones, 836 F.2d at 736; W.R. Huff, 549 F.3d at 109.

Because ED Capital lacks standing to bring its claims for declaratory relief, injunctive relief, and other causes of action in its Complaint, the Court does not have subject matter jurisdiction over ED Capital's claims and must dismiss its complaint under Rule 12(b)(1).

### III. **ORDER**

For the reasons stated above, it is hereby

**ORDERED** that the motion of plaintiffs ED Capital, LLC and ED Capital Management, LLC ("ED Capital") for a preliminary injunction restraining defendants Bloomfield Investment Resources Corp., Reuben Brothers Resources Group, RB Resources Limited and Reuben Brothers Limited (collectively "Defendants") from prosecuting their action in the Netherlands against United Meat Group ("UMG") and

26

compelling Defendants to release funds attached in the Netherlands is **DENIED**; and it is further

**ORDERED** that ED Capital's motion for an expedited hearing of their declaratory judgment action under Rule 57 of the Federal Rules of Civil Procedure (Dkt. No. 1) is **DENIED**; and it is further

**ORDERED** that Defendants' Cross-Motion to Dismiss the complaint under Rule 12(b)(1) of the Federal Rules of Civil Procedure (Dkt. No. 8) is **GRANTED**.

**SO ORDERED.**

Dated: New York, New York
5 January 2015
2016

VICTOR MARRERO
U.S.D.J.