```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
ED CAPITAL, LLC AND                 :
ED CAPITAL MANAGEMENT, LLC,         :
                                    :   15 Civ. 9056 (VM)
                  Plaintiffs,       :
                                    :   DECISION AND ORDER
        - against -                 :
                                    :
BLOOMFIELD INVESTMENT RESOURCES     :
CORP., REUBEN BROTHERS RESOURCES    :
GROUP, RB RESOURCES LIMITED, AND    :
REUBEN BROTHERS LIMITED,            :
                                    :
                  Defendants.       :
------------------------------------X
```

**VICTOR MARRERO, United States District Judge.**

Plaintiffs ED Capital, LLC and ED Capital Management, LLC (collectively "ED Capital") filed a complaint against Bloomfield Investment Resources Corp. ("Bloomfield"), Reuben Brothers Resources Group, RB Resources Limited, and Reuben Brothers Limited (collectively "Defendants") alleging breach of contract, abuse of process, and prima facie tort claims. ("Complaint," Dkt. No. 1.) Prior to Bloomfield's answer, ED Capital moved for preliminary injunctive relief (the "Motion") in the form of an order preventing Bloomfield from prosecuting a lawsuit pending in the Netherlands against United Meat Group ("UMG") and requiring Bloomfield to release funds of UMG attached pursuant to an order entered by the Rotterdam District Court (the "Netherlands Court"). (Dkt. No. 16.) Bloomfield then moved to dismiss ED Capital's Complaint

1

for lack of subject matter jurisdiction. ("Cross-Motion to Dismiss," Dkt. No. 8.)

At a hearing held on December 11, 2015 (see Dkt. Minute Entry for Dec. 11, 2015), the Court denied ED Capital's Motion. On January 5, 2016, the Court issued a written Decision and Order ("January 5 Order," Dkt. No. 17) embodying the reasons for its ruling on the Motion and granting Defendants' Cross-Motion to Dismiss.

Bloomfield subsequently filed this motion for sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure ("Rule 11") ("Rule 11 Motion," Dkt. No. 19) against ED Capital, arguing that ED Capital's Complaint and Motion asserted frivolous arguments without a justifiable legal basis in an improper forum. ED Capital opposed the motion (Dkt. No. 23) and Bloomfield replied (Dkt. No. 26.)

Upon reviewing the parties' submissions in connection with Bloomfield's Rule 11 Motion, the Court finds that, for the reasons discussed below, the Rule 11 Motion is DENIED.

## I. BACKGROUND[1]

The Court presumes familiarity with the facts of this case as detailed in the January 5 Order. Plaintiff ED Capital, a Delaware corporation, is the investment advisor and investment manager of Synergy Hybrid Fund, Ltd. and Synergy Hybrid Feeder Fund Ltd. (collectively "Synergy Funds"), which in turn own UMG, a Russian corporation and holding company for a large-scale poultry producer.

In November 2011, Defendant Bloomfield transferred $25 million to UMG. Bloomfield and ED Capital dispute whether that transfer constituted an investment in the Synergy Funds or a loan by Bloomfield to UMG subject to repayment. ED Capital maintains that the $25 million was an investment; Bloomfield argues that the funds were a loan to UMG. In 2015, $15 million of the original transaction was transferred to an account in the Netherlands, according to Bloomfield, for the purpose of securing repayment of its loan.

After UMG allegedly sought to eliminate Bloomfield's control over the funds maintained in UMG's account at Demir-Halkbank ("DHB") in the Netherlands, Bloomfield initiated a

---

[1] The facts described in this Section are drawn from the January 5 Order and the parties' submissions in this matter: Bloomfield's Motion for Attorneys' Fees and Costs in Defending a Frivolous Action and accompanying Memorandum of Law (Dkt. Nos. 19 and 20); ED Capital's Memorandum of Law in Opposition to Defendants' Motion for Sanctions (Dkt. No. 23) and Bloomfield's Reply Memorandum of Law in Further Support of its Motion (Dkt. No. 26.) No further citation will be made to these documents in this Section.

3

prejudgment attachment of the funds maintained in the DHB account in the Netherlands Court in June 2015. The Netherlands Court granted Bloomfield attachment of the $15 million maintained in the DHB account. ED Capital was not a party to the action. Several weeks later, the Netherlands Court released $3.3 million of the attached funds on UMG's request that it be permitted to make an upcoming bond payment.

In August 2015, Bloomfield commenced formal proceedings in the Netherlands against UMG seeking repayment of the $25 million. Once again, ED Capital was not a party to the action. UMG wrote to Bloomfield on November 10, 2015, to request that Bloomfield lift the attachment of the remaining funds in the DHB account to allow UMG to make a bond payment in the amount of $2,944,562.07 due on December 20, 2015.

On November 18, 2015, ED Capital filed for immediate relief in the form of a preliminary injunction preventing Defendants from prosecuting the Netherlands Action and requiring Defendants to release the funds attached in the Netherlands to permit UMG to make an upcoming bond payment. Without such relief, ED Capital argued, the "collapse" of UMG and ED Capital would follow. (Dkt. No. 14 at 9 ¶ 2.) On the same day, ED Capital filed its Complaint before this Court seeking a declaratory judgment that Bloomfield's $25 million transfer constituted an investment, not a loan.

4

The Court held a hearing on the matter on December 11, 2015. At the conclusion of the hearing, the Court stated that it was "not persuaded that the plaintiff has made a sufficient showing of standing . . . or that the plaintiffs have shown irreparable harm." (Dkt No. 14 at 19 ¶ 20-22.) Accordingly, the Court found that it would be inappropriate to issue an injunction restraining the parties from pursuing the Netherlands Action. In its January 5 Order, the Court dismissed the Complaint in its entirety, finding that ED Capital lacked standing to bring claims against Bloomfield for actions taken against UMG, a separate legal entity, in the Netherlands. The Court found that Ed Capital could not enforce UMG's rights as a third party in a United States forum, "particularly where UMG is simultaneously defending its own rights in a first-filed foreign proceeding." (Dkt. No. 17 at 25.) The Court declined to enjoin Bloomfield from proceeding with the Netherlands action because ED Capital had not met the demanding standard for a foreign anti-suit injunction.

Bloomfield moves the Court to sanction ED Capital and its attorneys pursuant to Rule 11 because it contends that ED Capital filed the Complaint and Motion for urgent relief in an improper forum and without any justifiable legal basis "in bad faith and for the improper purpose of attempting to

5

frustrate the adjudication of the [Netherlands Action] and to obtain negotiating leverage." (Dkt. No. 20 at 1.)

## II. **LEGAL STANDARD**

Despite the underlying action having been dismissed for lack of subject matter jurisdiction, the Court retains the authority to decide collateral issues such as the appropriateness of sanctions. See Cooter & Gell v. Hartmarx Corp. 496 U.S. 384, 395-96 (1990) ("[A] federal court may consider collateral issues after an action is no longer pending.").

Under Rule 11, when a signed pleading is submitted to the court, an attorney certifies that:

(1) [the pleading] is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
(2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification or reversal of existing law or the establishment of new law;
(3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and
(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonable based on a lack of information or belief.

Fed. R. Civ. P. 11(b). The Second Circuit has stated that the purpose of Rule 11 is to "curb the effect of baseless

6

litigation." Pentagen Techs. Int'l Ltd. v. United States, 172 F. Supp. 2d 464, 473 (S.D.N.Y. 2001).

"[T]he standard for triggering the award of fees under Rule 11 is objective unreasonableness." Margo v. Weiss, 213 F.3d 55, 65 (2d Cir. 2000). A pleading or motion violates Rule 11 if it is "frivolous, legally unreasonable, or factually without foundation, even though not signed in subjective bad faith." Wechsler v. Hunt Health Sys., Ltd., 216 F. Supp. 2d 347 (S.D.N.Y. 2002); see also Simon DeBartolo Grp., L.P. v. The Richard E. Jacobs Grp., Inc., 186 F.3d 157, 167 (2d Cir. 1999). Whether to award sanctions pursuant to Rule 11 is subject to the Court's discretion. District courts generally have wide discretion in deciding when sanctions are appropriate, although such discretion must be "made with restraint." See Perez v. Posse Comitatus, 373 F.3d 321, 325 (2d Cir. 2004); Simon DeBartolo Grp., L.P., 186 F.3d at 166; Sanko S.S. Co. v. Galin, 835 F.2d 51, 53 (2d Cir. 1987).

A filing is frivolous if it is "clear under existing precedent that there is no reasonable argument to extend, modify or reverse the law as it stands." Simon DeBartolo Grp., L.P., 186 F.3d at 167 (citing Caisse Nationale de Credit Agricole-CNCA, New York Branch v. Valcorp, Inc., 28 F.3d 259, 264 (2d Cir. 1994)). Merely incorrect legal statements are not sanctionable under Rule 11. Storey v. Cello Holdings,

L.L.C., 347 F.3d 370, 391 (2d Cir. 2003). "The extent to which a litigant has researched the issue and found some support for its theories even in minority opinions, in law review articles, or through consultation with other attorneys should certainly be taken into account when determining whether [Rule 11(b)(2)] has been violated." Fed. R. Civ. P. 11 advisory committee's note to 1993 amendments. Once a court has determined that Rule 11(b) has been violated, it is within the court's discretion to impose sanctions limited to what is "sufficient to deter repetition of such conduct." Fed. R. Civ. P. 11(c)(2); Margo, 213 F.3d at 64.

Courts also maintain the inherent power to award attorneys' fees when a party has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons," Revson v. Cinque & Cinque, P.C., 221 F.3d 71, 78 (2d Cir. 2000); see also Chambers V. NASCO, Inc., 501 U.S. 32, 45-46 (1991), meaning that the claims were 1) meritless and 2) made exclusively for improper purposes such as harassment or delay. See Sierra Club v. U.S. Army Corps of Eng'rs., 776 F.2d 383, 390 (2d Cir. 1985). The Supreme Court and the Second Circuit have cautioned that the inherent power to impose sanctions should be applied with "restraint and discretion." Chambers, 501 U.S. at 52.

8

## III. DISCUSSION

As an initial matter, ED Capital argues that Bloomfield's Rule 11 Motion should be denied because Bloomfield did not comply with Rule 11's safe harbor provision, which requires a party moving for Rule 11 sanctions to provide a copy of the motion to the opposing party twenty-one days before filing it with the Court. Fed. R. Civ. P. 11(c)(2)(providing that a Rule 11 motion must not be filed to the court if the challenging claim "is withdrawn or appropriately corrected within 21 days"). The purpose of the safe harbor provision is to permit the opposing party an opportunity to withdraw or correct its pleadings in response to the proposed motion. See New V & J Produce Corp. v. NYCCaterers Inc., No. 13 Civ. 4861, 2014 WL 5026157, at *4 (S.D.N.Y. Sept. 29, 2014).

Bloomfield contends that in cases such as this one where a party has filed an emergency motion for injunctive relief, "a twenty-one day waiting period is often impractical." Bowler v. U.S. I.N.S., 901 F. Supp. 597, 604 (S.D.N.Y. 1995). Here, ED Capital's Motion for a preliminary injunction was brought on an emergency basis, which Bloomfield argues renders the safe harbor period impracticable because Bloomfield would have incurred substantial expense opposing the Motion before any twenty-one-day safe harbor period

expired. The Court notes, however, that no hearing was held on ED Capital's Motion until December 11, 2015, 24 days after the Motion was filed. (See Dkt. Minute Entry for December 11, 2015.) The Court did not render a written decision on Bloomfield's Cross-Motion to Dismiss until January 5, 2016. (See Dkt. No. 17.) The Rule 11 Motion was not filed until January 14, 2016, nine days after the January 5 Order. (See Dkt. No. 19.) Therefore, ED Capital had no notice or opportunity to review Bloomfield's Rule 11 Motion until after the Court's written decision and order on both the emergency Motion and the Cross-Motion to Dismiss the Complaint.

Although the Court acknowledges the procedural difficulty of complying with Rule 11's safe harbor provision when the challenged filing is an emergency motion, in this case Bloomfield waited nearly two months before filing its Rule 11 Motion. Other courts have declined to impose Rule 11 sanctions based on ambiguity as to whether Rule 11's procedural requirements have been met. See Bowler, 901 F. Supp. at 604. The Court is not persuaded that Rule 11's safe harbor provision is inapplicable here, or that Bloomfield's failure to provide the notice required by Rule 11(c) was excused solely on the basis of the emergency nature of ED Capital's Motion. Accordingly, and because courts must "resolve all doubts in favor of the signer" of a paper

10

challenged under Rule 11, <u>Oliveri v. Thompson</u>, 803 F.2d 1265, 1275 (2d Cir. 1986), the Court declines to apply Rule 11 sanctions in this case based on Bloomfield's failure to provide notice as required by Rule 11(c).

The Court also denies ED Capital's request that the Court award ED Capital costs and fees associated with defending the Rule 11 Motion. The Court declines to find that the Rule 11 Motion was itself filed for an improper purpose or "utterly without support" such that sanctions on Bloomfield are warranted. See <u>Indus. Tech. Ventures LP v. Pleasant T. Rowland Revocable Trust</u>, No. 08 Civ. 6227, 2012 WL 777313, at *7 (W.D.N.Y. Mar. 8, 2012).

Having found that Rule 11 sanctions are unwarranted in this case, the Court will consider Bloomfield's application for attorneys' fees pursuant to the Court's inherent authority to supervise and control its proceedings. Bloomfield argues that the Court should conclude that ED Capital brought the Complaint and Motion for an improper purpose based on ED Capital having asserted "frivolous legal arguments not supported by law . . . with knowledge of their deficiencies." (Dkt. No. 20 at 9.) Bloomfield sets forth five ways which it argues that ED Capital's legal arguments were not supported by law: 1) ED Capital did not have standing to assert the claims against Bloomfield in the Complaint; 2) the

11

Netherlands Court, not the United States District Court, was the proper forum for the arguments in the Complaint; 3) ED Capital sought the "extraordinary remedy" of obtaining an order attaching defendant Reuben Brothers' assets in New York despite them having no connection with the Netherlands Action; 4) the application for emergency relief was brought under false pretenses because no emergency actually existed; and 5) ED Capital asserted frivolous legal arguments unsupported by the law. (Dkt. No. 20 at 1-3.)

Because the award of attorney's fees to the prevailing party is an exception to the "American Rule" preventing the shifting of attorneys' fees to the losing party, the Court may only award attorneys' fees under its inherent authority in exceedingly limited circumstances. See Oliveri, 803 F.2d at 1272. Such an award is restricted to circumstances where there is clear evidence that a party commenced an action with the sole aim of harassment or delay or for another improper purpose. See United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., AFL-CIO, 948 F.2d 1338, 1345 (2d Cir. 1991)(citing Oliveri, 803 F.2d at 1272). The Second Circuit has observed that it will only uphold sanctions under the bad faith exception when "serious misconduct clearly appears on the record." Milltex Indux. Corp. v. Jacquard Lace Co., 55 F.3d 34, 41 (2d Cir. 1995).

12

Certain of ED Capital's arguments, although ultimately incorrect, did not wholly lack a colorable basis. For a claim to be entirely without color it must lack "any legal or factual basis." Nemeroff v. Abelson, 620 F.2d 339, 348 (2d Cir. 1980). The Court denied ED Capital's Motion because ED Capital lacked standing to pursue a preliminary injunction against Bloomfield where UMG was the true party in interest. (Dkt. No. 17 at 26.) Bloomfield argues that it would have been "impossible" to conclude that ED Capital sought to vindicate its own rights rather than ED Capital's by staying the Netherlands Action. (Dkt. No. 26 at 4.) Although the Court readily concluded that ED Capital could not assert claims on behalf of UMG, ED Capital put forth good faith, if legally incorrect, arguments as to why ED Capital itself would suffer injury as a result of the attachment of funds by the Netherlands Court. As to ED Capital's decision to pursue an anti-suit injunction in the Southern District of New York rather than through the Netherlands Court, this too was incorrect given the exceedingly high standard for such an injunction and courts' reluctance to intervene in first-filed foreign proceedings. However, it was not without any basis, as demonstrated by the fact that Bloomfield later sought discovery related to the Netherlands Action in this District. The mere fact that an argument is unsuccessful does not make

13

it "vexatious or wanton" so as to justify fee shifting. See Menashe v. V Secret Catalogue, Inc., 409 F. Supp. 2d 412, 427 (S.D.N.Y. 2006).

Even if ED Capital's legal arguments were entirely without a legal or factual basis, the Court would still be required to find that ED Capital acted in bad faith in order to impose sanctions under its inherent authority. "Neither meritlessness alone nor improper purpose alone will suffice" for a sanctions award. Sierra Club, 776 F.2d at 390. Bloomfield offers only "generalized characterizations" of ED Capital's improper behavior, largely in the form of a recitation of the Court's reasons for denying ED Capital's Motion and dismissing its Complaint. Bloomfield argues that ED Capital's claims were intended to "harass the Defendants and obtain leverage in negotiations," but relies only on ED Capital's incorrect legal arguments to suggest bad faith. (Dkt. No. 20 at 13.) The Second Circuit has stated that "[a]lthough a frivolous position will often signal an improper purpose, we have never held that a frivolous position may be equated with an improper purpose." Sierra Club, 776 F.2d at 391. Without more specific examples of bad faith or an improper course of conduct, general characterizations of groundless claims are insufficient to find that ED Capital engaged in sanctionable conduct.

That ED Capital's Complaint and Motion were unsuccessful does not demonstrate that they were filed in bad faith or with no legal basis. The Court is persuaded that ED Capital's claims in its Complaint and Motion were not so lacking in merit as to be "entirely without color." Oliveri, 803 F.2d at 1272. Further, Bloomfield has not put forth clear evidence that ED Capital's claims were made in bad faith or for improper purposes. Accordingly, the Court denies Bloomfield's Rule 11 Motion.

## IV. ORDER

For the reasons stated above, it is hereby

**ORDERED** that Defendant Bloomfield's Motion for Attorneys' Fees and Costs in Defending a Frivolous Action (Dkt. No. 20) is **DENIED**.

**SO ORDERED.**

Dated: New York, New York
18 March ~~2015~~ 2016

VICTOR MARRERO
U.S.D.J.

15