# Exhibit 1

## SYNERGY HYBRID FUND LTD.

### INSTRUCTIONS RELATING TO
### SUBSCRIPTION AGREEMENT FOR SHARES FOR NON-U.S. PERSONS

Any person desiring to subscribe for Shares of Synergy Hybrid Fund Ltd. (the "**Fund**") is required to:

    (a) complete and execute two copies of the attached Subscription Agreement, offering to purchase a specified dollar amount of Shares on a specified date ("**Purchase Date**") at their offering price (as described in the Fund's Private Placement Memorandum, as amended from time to time);

    (b) send a completed and executed copy by facsimile to Apex Fund Services Ltd. (the "**Administrator**") at +1 441-292-1884, with a completed and executed original to follow by mail to:

        Apex Fund Services Ltd.
        3rd Floor, 31 Reid Street
        Hamilton HM12
        Bermuda

*With a copy to the "Investment Manager":*

        ED Capital Management, LLC
        825 Third Avenue, 2nd Floor
        New York, NY 10022
        USA
        Fax: 212-937-3844

    (c) have the financial institution responsible for remitting subscription monies on behalf of the person subscribing for Shares send the letter contained in Appendix A in order for the Fund to comply with applicable anti-money laundering regulations.

The Fund and the Investment Manager reserve the right to request such information as they consider necessary to verify the identity and source of funds of the subscriber in order to comply with applicable law. Failure to provide the necessary evidence may result in subscriptions being rejected or in delays in the dispatch of documents. The Fund and Investment Manager will be held harmless and will be fully indemnified by a subscriber against any loss arising as a result of a failure to process a subscription or payment if such information as has been requested by any of them has not been satisfactorily provided by the subscriber.

The Fund will advise each subscriber promptly of its acceptance of any offer to subscribe to Shares of the Fund, but the Fund reserves the right to rescind its acceptance if for any reason the Fund determines not to issue Shares.

NY-640890 v3

Payment in United States currency by bank-to-bank wire transfer of the amount of the subscription must be received by the Fund at least two (2) business days prior to the Purchase Date. Payment by wire transfer should be sent to:

Correspondent Bank:   HSBC Bank USA, N.A.
452 Fifth Avenue
New York, New York 10018, U.S.A.
SWIFT Code: MRMD US33
Fedwire ABA Code: 021001088
Beneficiary Bank: Bank of Bermuda, Hamilton
Swift Code: BBDA BMHM
Beneficiary Account No.: 010-825297-501
Beneficiary Name: Synergy Hybrid Fund Ltd.

If you are an existing Shareholder adding to your investment and, if all information previously provided remains accurate, you only have to complete the form entitled "Additional Subscription Request" attached hereto as Appendix B.

2

## SUBSCRIPTION AGREEMENT
## FOR NON-U.S. PERSONS

Synergy Hybrid Fund Ltd.
c/o Apex Fund Services Ltd.
3rd Floor, 31 Reid Street
Hamilton HM12
Bermuda

Dear Sirs:

      The undersigned (the "**Subscriber**") hereby acknowledges receipt of the Private Placement Memorandum dated June 2010, as it may be amended or supplemented ("**Memorandum**"), of Synergy Hybrid Fund Ltd., an exempted company organized under the laws of the Cayman Islands (the "**Fund**"). All capitalized terms used and not defined herein shall have the meanings set forth in the Memorandum.

      1. Having reviewed the Memorandum, the Subscriber hereby agrees with the Fund, subject to the Fund's acceptance, to subscribe to as many of the Fund's Shares as may be purchased for U.S. $ 25 m    on 4th November 20 11 (the "**Purchase Date**") at their Offering Price (as described in the Memorandum) as of the opening of business on the Purchase Date. The Subscriber acknowledges that this subscription is irrevocable, but is conditioned upon acceptance by the Fund.

      2. The Subscriber agrees that he will make payment in the amount of his subscription in time sufficient to be received by the Fund at least two business days prior to the Purchase Date.

      3. The Subscriber agrees that any Shares of the Fund hereby subscribed for will be held subject to the terms and conditions of the Memorandum and Articles of Association of the Fund, as amended from time to time, and recognizes that the Fund will protect and indemnify its Directors and other representatives against liability to the extent set forth in the Memorandum and Articles of Association.

      4. To the extent permitted by applicable law, the Subscriber agrees to indemnify and hold harmless the Fund, the Investment Manager, the Administrator and their principals, officers and Directors against any loss, liability, cost or expense (including attorneys' fees, taxes and penalties) which may result, directly or indirectly, from any misrepresentation or breach of any warranty, condition, covenant or agreement set forth herein or in any other document delivered by the Subscriber to the Fund. The foregoing indemnification obligations and any other indemnification obligations hereunder shall survive the closing relating to the purchase of Shares by the Subscriber.

      5. (a) In consideration of the Fund's acceptance of the aforesaid offer and recognizing its reliance thereon, the Subscriber agrees, represents and warrants to the Fund that the Subscriber:

      (i)    is not a natural person resident in, or a corporation or partnership or other entity organized or incorporated in or under the laws of, the United States of America, its territories or possessions (hereinafter collectively referred to as a "**United States person**");

      (ii)    is not an entity 50% or more of the beneficial interests in which are owned, directly or indirectly, by United States persons;

      (iii)    in the case of an entity which has less than 50% of its beneficial interest owned by U.S. persons, was not formed for the purpose of investing in the Fund (e.g., in the case of a Subscriber which is an investment fund, the investment in the Fund does not constitute more than 40% of the Subscriber's net assets);

      (iv)    in the case of a trust, does not have any beneficiaries or trustees that are United States persons;

      (v)    is not acquiring Shares for and will not hold Shares on behalf of any United States person or any entity referred to in subparagraphs (ii) or (iii);

3

(vi) will not transfer directly or indirectly any of its Shares or any interest therein (including without limitation any right to receive dividends or other distributions) to a United States person or to any other person or entity (A) unless the proposed transferee has made representations and warranties similar to those contained herein (including without limitation those relating to the U.S. Securities Act of 1933, as amended (the "**Securities Act**")) and such representations and warranties have been approved by the Fund, (B) unless such Shares are registered pursuant to the provisions of the Securities Act or an exemption from registration is available, and (C) unless the Fund has consented to such transfer;

(vii) will not if the Shares purchased under this Subscription Agreement are being acquired by the Subscriber as nominee or custodian for another person or entity permit the beneficial owners of such Shares to transfer any beneficial interest in the Shares, directly or indirectly, to any person or entity unless the representations made by the Subscriber in this Subscription Agreement will continue to be true;

(viii) did not acquire (except as specifically authorized by the Fund) and will not transfer any of its Shares within the United States of America, its territories or possessions (hereinafter collectively referred to as the "**United States**");

(ix) did not engage (except as specifically authorized by the Fund) and will not engage in any activity relating to the sale of the Shares of the Fund in the United States;

(x) is acquiring the Shares solely for its own account for investment (or, if the Subscriber is acting as a nominee or custodian for another person or entity, the Shares are being acquired for that person or entity) and not with a view to distribution or resale; and

(xi) is not a member of the general public in the Cayman Islands (which will not include an exempted or ordinary non-resident company in the Cayman Islands).

(b) The Subscriber agrees that the foregoing representations will be deemed to be reaffirmed by the Subscriber at any time the Subscriber purchases or otherwise acquires additional Shares of the Fund and such purchase or acquisition will be evidence of such reaffirmation, and if any of the foregoing representations cease to be true, the Subscriber will promptly notify the Fund of the facts pertaining to such changed circumstances.

(c) The Subscriber agrees to supply the Fund with such other facts as from time to time are deemed necessary or desirable in order to avoid the loss of a contemplated tax benefit to the Fund or any of its respective shareholders and in order to ascertain that no violation by the Fund shall occur of any securities laws of the United States or any other relevant jurisdiction, including the Securities Act, the U.S. Investment Company Act of 1940, as amended (the "1940 Act"), and the U.S. Investment Advisers Act of 1940, as amended, and the rules and regulations thereunder.

6. The undersigned Subscriber must complete this Section in order for the Fund to be able to determine the extent to which the Subscriber may participate in "new issue" securities in accordance with Rule 2790 of the Conduct Rules of the Financial Industry Regulatory Authority, Inc. If the Subscriber is a corporation, partnership, trust or any other entity or a nominee for another person, the person completing this Section with respect to the Subscriber must be the beneficial owner(s), a person authorized to represent the beneficial owner(s), or a bank, foreign bank, broker-dealer, investment adviser or other conduit acting on behalf of the beneficial owner(s).

**INSTRUCTIONS:** Each Subscriber must complete this Section by checking the box next to all applicable categories under Part (a) of Item I to determine whether the Subscriber is a restricted person (a "**Restricted Person**") or indicating under Part (b) of Item I that none of the Restricted Person categories apply to it and the Subscriber is eligible to participate in new issues. A Subscriber that is an entity and that is also a Restricted Person under Part (a) of Item I may still be able to participate in new issue investments if it indicates in Item II that it is also an exempted entity (an "**Exempted Entity**"). Accordingly, each such Subscriber should check the box next to any applicable categories under Item II to determine whether the Subscriber is an Exempted Entity. If you do not complete this Section, you may not be permitted to

4

participate in new issues to any extent, until you establish your eligibility to participate in new issues to the Fund's satisfaction.

Item I.      DETERMINATION OF RESTRICTED PERSON STATUS:

Please check all appropriate boxes.

   (a) The Subscriber is:

- [ ] (i) a broker-dealer;
- [ ] (ii) an officer, director, general partner, associated person[1] or employee of a broker-dealer (other than a limited business broker-dealer)[2];
- [ ] (iii) an agent of a broker-dealer (other than a limited business broker-dealer) that is engaged in the investment banking or securities business;
- [ ] (iv) an immediate family member[3] of a person described in (ii) or (iii) above. Under certain circumstances, a Subscriber who checks this box may be able to participate in new issue investments. The Fund may request additional information in order to determine the eligibility of a Subscriber under this Restricted Person category;
- [ ] (v) a finder or any person acting in a fiduciary capacity to a managing underwriter, including, but not limited to, attorneys, accountants and financial consultants;
- [ ] (vi) a person who has authority to buy or sell securities for a bank, savings and loan institution, insurance company, investment company, investment advisor or collective investment account[4] (including a private investment vehicle such as a hedge fund or an offshore fund);
- [ ] (vii) an immediate family member of a person described in (v) or (vi) above who materially supports[5], or receives material support from, the Subscriber;
- [ ] (viii) a person listed or required to be listed in Schedule A, B or C of a Form BD (other than with respect to a limited business broker-dealer), except persons whose listing on Schedule A, B or C is related to a person identified by an ownership code of less than 10% on Schedule A;
- [ ] (ix) a person that (A) directly or indirectly owns 10% or more of a public reporting company listed, or required to be listed, in Schedule A of a Form BD, or (B) directly or indirectly owns 25% or more of a public reporting company listed, or required to be

---

[1] A person "associated with" a broker-dealer includes any natural person engaged in the investment banking or securities business who is directly or indirectly controlling or controlled by a broker-dealer, any partner, director, officer or sole proprietor of a broker-dealer.

[2] A "limited business broker-dealer" is any broker-dealer whose authorization to engage in the securities business is limited solely to the purchase and sale of investment company/variable contracts securities and direct participation program securities.

[3] The term "immediate family member" includes the Subscriber's: (i) parents, (ii) mother-in-law or father-in-law, (iii) husband or wife, (iv) brother or sister, (v) brother-in-law or sister-in-law, (vi) son-in-law or daughter-in-law, (vii) children, and (viii) any other person who is supported, directly or indirectly, to a material extent by an officer, director, general partner, employee, agent of a broker-dealer or person associated with a broker-dealer.

[4] A "collective investment account" is any hedge fund, investment corporation, or any other collective investment vehicle that is engaged primarily in the purchase and/or sale of securities. Investment clubs (groups of individuals who pool their money to invest in stock or other securities and who are collectively responsible for making investment decisions) and family investment vehicles (legal entities that are beneficially owned solely by immediate family members (as defined above)) are not considered collective investment accounts.

[5] The term "material support" means directly or indirectly providing more than 25% of a person's income in the prior calendar year or living in the same household with a member of one's immediate family.

5

        listed in Schedule B of a Form BD, in each case (A) or (B), other than a reporting company that is listed on a national securities exchange or is traded on the Nasdaq National Market, or other than with respect to a limited business broker-dealer;

☐   (x) an immediate family member of a person described in (viii) or (ix) above. Under certain circumstances, a Subscriber who checks this box may be able to participate in new issue investments. The Fund may request additional information in order to determine the eligibility of a Subscriber under this Restricted Person category;

☐   (xi) any entity (including a corporation, partnership, limited liability company, trust or other entity) in which any person or persons listed in (i)-(x) above has a beneficial interest[6];

    If you checked this box (xi) and you are a collective investment account, a family investment vehicle or an investment club, please provide the aggregate percentage of direct or indirect beneficial interests owned by Restricted Persons in such entity: ___%.

    Do not check this box if you are a collective investment account, a family investment vehicle or an investment club which does not permit Restricted Persons to participate to any extent in new issue securities.

(b) ☒   None of the above categories apply and the Subscriber is eligible to participate in new issue securities. Check this box if you are a collective investment account, a family investment vehicle or an investment club which does not permit Restricted Persons to participate to any extent in new issue securities.

**Item II.**     **DETERMINATION OF EXEMPTED ENTITY STATUS:**

A Subscriber that is an entity and that is also a Restricted Person under Item I may still be able to participate in new issue investments if it indicates below that it is also an Exempted Entity. Please check all appropriate boxes.

    **The Subscriber is:**

☐   (i) a publicly-traded entity (other than a broker-dealer or an affiliate of a broker-dealer, where such broker-dealer is authorized to engage in the public offering of new issues either as a selling group member or underwriter) that is listed on a national securities exchange or traded on the Nasdaq National Market, or is a foreign issuer whose securities meet the quantitative designation criteria for listing on a national securities exchange or trading on the Nasdaq National Market;

☐   (ii) an investment company registered under the 1940 Act and the rules and regulations thereunder;

☐   (iii) a corporation, partnership, limited liability company, trust or any other entity (including a private investment vehicle such as a hedge fund or an offshore fund, or a broker-dealer organized as an investment partnership) and

    (A) the beneficial interests of Restricted Persons do not exceed in the aggregate 10% of such entity; or

    (B) such entity limits participation by Restricted Persons to not more than 10% of the profits and losses of new issues;

---

[6] The term 'beneficial interest' means any economic interest such as the right to share in gains or losses. The receipt of a management or performance based fee for operating a collective investment account, or other fee for acting in a fiduciary capacity, is not considered a beneficial interest in the account; however, if such fee is subsequently invested into the account (as a deferred fee arrangement or otherwise), it is considered a beneficial interest in that account.

            If you checked this box (iii), please be sure you have included the percentage information requested in Item I (xi).

☐    (iv) an investment company organized under the laws of a foreign jurisdiction and

        (A) the investment company is listed on a foreign exchange or authorized for sale to the public by a foreign regulatory authority; <u>and</u>

        (B) no person owning more than 5% of the shares of the investment company is a Restricted Person;

☐    (v) (A) an employee benefit plan under the Employee Retirement Income Security Act of 1974, as amended ("ERISA") that is qualified under Section 401(a) of the U.S. Internal Revenue Code of 1986, as amended (the "**Code**") and such plan is not sponsored solely by a broker-dealer, (B) a state or municipal government benefits plan that is subject to state and/or municipal regulation or (C) a church plan under Section 414(e) of the Code;

☐    (vi) a tax exempt charitable organization under Section 501(c)(3) of the Code;

☐    (vii) a common trust fund or similar fund as described in Section 3(a)(12)(A)(iii) of the U.S. Securities Exchange Act of 1934, as amended, and the fund

        (A) has investments from 1,000 or more accounts, <u>and</u>

        (B) does not limit beneficial interests in the fund principally to trust accounts of Restricted Persons; or

☐    (viii) an insurance company general, separate or investment account, and

        (A) the account is funded by premiums from 1,000 or more policyholders, or, if a general account, the insurance company has 1,000 or more policyholders, <u>and</u>

        (B) the insurance company does not limit the policyholders whose premiums are used to fund the account principally to Restricted Persons, or, if a general account, the insurance company does not limit its policyholders principally to Restricted Persons.

      The undersigned Subscriber acknowledges that in making representations to brokers, the Fund will be relying upon the information provided by the Subscriber in this Section and agrees to notify the Fund promptly when any representation made herein is no longer accurate. If the Subscriber is a corporation, partnership, limited liability company, trust or any other entity, the person signing this Section (I) is authorized to represent the Subscriber and (ii) has the full power and authority under the Subscriber's governing instruments to do so.

7. If the Subscriber is a corporation, partnership, trust or other entity, the person executing this Subscription Agreement for the Subscriber has the full power and authority under the Subscriber's governing instruments to do so and the Subscriber has the full power and authority under its governing instruments to acquire an interest in the Fund.

8. The Subscriber is ___ / is not _x_ (please check as appropriate) a "benefit plan investor." The term "benefit plan investor" is defined for this purpose by ERISA, to include (i) any employee benefit plan that is subject to the fiduciary responsibility standards and prohibited transaction restrictions of part 4 of Title I of ERISA, (ii) any plan to which Section 4975 of the Code, applies, and (iii) a private investment fund or other entity whose assets are treated as "plan assets" for purposes of ERISA and Section 4975 of the Code. In addition, assets of the general account of an insurance company may, in certain circumstances, be treated as "plan assets" for purposes of ERISA and Section 4975 of the Code.

9. If the Subscriber is an investment fund not registered under the 1940 Act or the beneficial interests in which are not registered under the Securities Act and has indicated above that it is not a benefit plan investor because its assets are not treated as "plan assets" for purposes of ERISA or Section 4975 of the Code, the Subscriber agrees to notify the Investment Manager promptly if at any time the foregoing statement is no longer true and to indicate in writing the percentage of Subscriber's assets that are treated as "plan assets" for purposes of ERISA or Section 4975 of the Code.

10. If the Subscriber is a benefit plan investor, it is so because it is **(please check appropriate box)**:

☐   an employee benefit plan subject to part 4 of Title I of ERISA (an "**ERISA Plan**").

☐   an individual retirement account, Keogh plan (covering only self-employed individuals and their respective spouses), or other employee benefit plan not subject to Title I of ERISA but to which Section 4975 of the Code applies (a "**4975 Plan**").

☐   a private investment fund not registered under the 1940 Act or the Securities Act whose assets are treated as "plan assets" for purposes of ERISA and Section 4975 of the Code (also an "**ERISA Plan**"). The Subscriber hereby certifies that less than ____% **(please fill in applicable percentage)** of the equity interests in the Subscriber is held by benefit plan investors as defined in Section 3(42) of ERISA. If at any time the percentage of the Subscriber's assets that are treated as "plan assets" for purposes of ERISA or Section 4975 of the Code equals or exceeds the percentage indicated in the preceding sentence, the Subscriber agrees to provide written notice to the Investment Manager of the revised percentage promptly in writing.

☐   a group trust fund exempt from U.S. federal taxation under U.S. Internal Revenue Service Revenue Ruling 81-100, a common or collective trust fund of a bank, or a separate account of an insurance company (also an "**ERISA Plan**"). The Investment Manager intends to treat all of the assets of such fund or account that are invested in the Fund as "plan assets" for purposes of ERISA and Section 4975 of the Code unless and until the Investment Manager receives satisfactory advice to the contrary from the Subscriber.

☐   an insurance company general account, some or all of the assets of which are treated as "plan assets" for purposes of ERISA and Section 4975 of the Code (also an "**ERISA Plan**"). The Subscriber hereby certifies that less than ____% **(please fill in applicable percentage)** of the assets of such account consist of the assets of "benefit plan investors," as that term is defined in Section 3(42) of ERISA. If at any time the percentage of the Subscriber's general account assets that are treated as "plan assets" for purposes of ERISA or Section 4975 of the Code equals or exceeds the percentage indicated in the preceding sentence, the Subscriber agrees to provide written notice to the Investment Manager of the revised percentage promptly in writing.

11. **If the Subscriber is an employee benefit plan of any kind**, including a benefit plan investor defined as described above or an employee benefit plan that is not a benefit plan investor (such as a plan established by a government entity, a church or entity associated with a church, or maintained outside the U.S. primarily for the benefit of nonresident aliens), such Subscriber being sometimes referred to below

8

for convenience as the "**Plan**," the individual signing this Subscription Agreement on behalf of the Plan (the "**Fiduciary**") represents, warrants, and agrees as follows:

(a) The Fiduciary is a fiduciary of the Plan who is authorized to invest Plan assets or acting at the direction of a Plan fiduciary authorized to invest Plan assets.[7] The Fiduciary (i) has determined that an investment in the Shares is consistent with the Fiduciary's responsibilities to the Plan under ERISA or other applicable law, and (ii) is qualified to make such investment decision.

(b) The execution and delivery of this Subscription Agreement, and the investment contemplated hereby: (A) has been duly authorized by all appropriate and necessary parties pursuant to the provisions of the instrument or instruments governing the Plan and any related trust; and (B) will not violate, and is not otherwise inconsistent with, the terms of such instrument or instruments.

(c) The Fiduciary acknowledges that the assets of the Fund will be invested in accordance with the investment policies and objectives described in the Memorandum. The Fiduciary has determined that an investment in the Shares meets all requirements of all laws and regulations applicable to the Plan. The Fiduciary has determined that an investment in the Fund is prudent and in the interests of the Plan, considering, among other things: (i) the role that an investment in the Shares would play in the Plan's portfolio, taking into consideration whether the investment is designed reasonably to further the Plan's purposes, the risk and return factors associated with the investment, the composition of the Plan's total investment portfolio with regard to diversification, the liquidity and current return of the Plan's portfolio relative to its anticipated cash flow needs, and the projected return of the Plan's portfolio relative to its objectives, (ii) the fact that the Fund's Shareholders may consist of a diverse group of investors (possibly including taxable and tax-exempt entities) and that the Investment Manager necessarily will not take the investment objectives of any particular Shareholder that are not consistent with those of the Fund into account in managing Fund investments, (iii) limitations on the Plan's right to redeem or transfer Shares, (iv) the implications arising from whether or not the assets of the Fund are treated as "plan assets" for purposes of ERISA and Section 4975 of the Code, and (v) the tax effects of an investment in the Shares.

(d) The Plan's purchase and holding of Shares will not constitute a transaction prohibited under ERISA, Section 4975 of the Code, or applicable state law, for which no exemption applies. Neither the Investment Manager nor any of its affiliates, agents, or employees: (i) exercises any authority or control with respect to the management or disposition of assets of the Plan used to purchase the Shares, (ii) renders investment advice for a fee (pursuant to an agreement or understanding that such advice will serve as a primary basis for investment decisions and that such advice will be based on the particular investment needs of the Plan), with respect to such assets of the Plan, or has the authority to do so, or (iii) is an employer maintaining or contributing to, or any of whose employees are covered by, the Plan.

(e) The Fiduciary understands the understands the fee arrangements described in the Memorandum, including any management or performance- or incentive-based compensation or allocation arrangements, and has obtained information (and has had the opportunity to request additional information) regarding such arrangements and the risks associated with them, as necessary to enable the Fiduciary to conclude that such fee arrangements are reasonable and consistent with the interests of the Plan.

(f) The Fiduciary understands and agrees that, in order to prevent the assets of the Fund from being treated as "plan assets" for purposes of ERISA and Section 4975 of the Code, the Investment Manager may, in its discretion, prohibit an ERISA Plan or 4975 Plan from purchasing or acquiring Shares or may require such Plan to redeem Shares.

(g) The participants of the Plan do not have the power or authority to direct the investment of Plan assets in the Shares.

If at any time during which the Plan holds Shares, any of the representations set forth in this Section is or is reasonably expected to become untrue or inaccurate, the Fiduciary shall so inform the Investment Manager and provide in writing the necessary information immediately; provided that nothing in this sentence or the foregoing representations regarding the Subscriber's status and, if applicable,

---

[7] References to the "Fiduciary" in these representations shall be deemed to include the Fiduciary signing this Subscription Agreement and, where applicable, any Plan fiduciary directing the Plan's investment in the Shares and the execution of this Subscription Agreement.

9

undertakings to provide information to the Investment Manager shall be deemed to relieve the Subscriber from any liability or obligation it may have to the Investment Manager or the Fund under this Subscription Agreement or for any breach of the Subscriber's representations and warranties in this Subscription Agreement. The Fiduciary further agrees to provide such other information as the Investment Manager may reasonably request from time to time in order to avoid violations of ERISA or other laws applicable to the Fund.

12. Subject to the Subscriber's consent below, at its discretion, the Fund and/the Investment Manager may provide to the Subscriber (or its or his designated agents) statements, reports and other communications relating to the Fund and/or the Subscriber's investment in the Fund, in electronic form, such as e-mail, in lieu of or in addition to sending such communications as hard copies via fax or mail. The Subscriber acknowledges that e-mail messages are not secure and may contain computer viruses or other defects, may not be accurately replicated on other systems, or may be intercepted, deleted or interfered with without the knowledge of the sender or the intended recipient. The Fund makes no warranties in relation to these matters. The Fund reserves the right to intercept, monitor and retain e-mail messages to and from its systems as permitted by applicable law. If the Subscriber has any doubts about the authenticity of an email purportedly sent by the Fund or the Investment Manager, the Subscriber is required to contact the purported sender immediately.

Please check below to indicate the Subscriber's consent to the sending of such statements, reports and other communications regarding the Fund and the Subscriber's investment in the Fund (including NAV information, subscription and redemption activity, annual and other updates of the Fund's consumer privacy policies and procedures) in electronic format in addition to separate mailing of paper copies:

| Please send me electronic notices | x Yes | No |
|---|---|---|

13. (a) Generally, the Subscriber will (unless share certificates, if any, have not been delivered) receive at least 90% of the redemption proceeds no later than 30 calendar days following the date of redemption. The Subscriber acknowledges that promptly after the receipt by the Fund of its audited financial statements for the fiscal year, the Fund will pay to the Subscriber the balance, if any, of the amount to which it is entitled, or the Subscriber will repay to the Fund the excess, if any, of the amount previously paid over the amount to which the Subscriber is entitled, in each case with interest as set out in the Memorandum. The Subscriber agrees and acknowledges that any redemptions will be subject to a lock-up period and that Shares relating to Special Investments may not be redeemed until such investments have been liquidated or disposed of (including if, in the sole discretion of the Investment Manager, they no longer qualify as Special Investments). The Subscriber acknowledges that Special Investments may represent a substantial and material portion of the Fund's portfolio. In addition, payment of the redemption proceeds to a Subscriber upon complete redemption may be subject to the retention of a reserve in order to pay the Management Fees with respect to the Shares relating to Special Investments that remain with the Fund.

(b) The Subscriber agrees that its obligation to make the repayment in the event of an overpayment of redemption proceeds to the Subscriber will endure notwithstanding the performance by it of all other obligations under this Subscription Agreement.

14. The Subscriber agrees that a legend reading substantially as follows may be placed on each stock certificate issued to the Subscriber pursuant to this Subscription Agreement or otherwise acquired and that the Fund may take all steps it may deem necessary or desirable to see that the restrictions contained herein are complied with:

> "The shares represented by this certificate are subject to certain restrictions which limit the transfer of these shares or any interest therein (including without limitation the right to receive dividends or other distributions) and such shares have not been registered under the Securities Act, and may be offered and sold only if an exemption from registration is available, in accordance with a Subscription Agreement dated _____, \_\_\_\_ between the shareholder and Synergy Hybrid Fund Ltd. a copy of which is on file at the principal office of Synergy Hybrid Fund Ltd."

15. The Investment Manager and the Fund are each hereby authorized and instructed to accept and execute any instructions in respect of the Shares to which this Subscription Agreement relates

10

given by the Subscriber in written form or by facsimile. If instructions are given by the Subscriber by facsimile, the Subscriber undertakes to send the original letter of instructions to the Investment Manager and the Fund and agrees to keep each of them indemnified against any loss of any nature whatsoever arising to any of them as a result of any of them acting upon facsimile instructions. The Investment Manager and the Fund may rely conclusively upon and shall incur no liability in respect of any action taken upon any notice, consent, request, instructions or other instrument believed in good faith to be genuine or to be signed by properly authorized persons.

16. The Subscriber represents that the following individual or individuals are authorized to act on behalf of the Subscriber to give and receive instructions between the Fund (and its representatives, including the Administrator) and the Subscriber. Such individuals are the only persons so authorized until further written notice, signed by one or more of such individuals, to Apex Fund Services Ltd., 3rd Floor, 31 Reid Street, Hamilton HM12, Bermuda.

| Name | Specimen Signature |
|---|---|
| Alexander Bushaev | |
| David McNeil | |

17. The Subscriber agrees that all or any funds payable to the Subscriber (including redemption proceeds) may be wire transferred to the Subscriber in accordance with the following instructions, until further written notice, signed by one or more of the individuals authorized to act on behalf of the Subscriber under Section 16 above, to Apex Fund Services Ltd., 3rd Floor, 31 Reid Street, Hamilton HM12, Bermuda.

| | |
|---|---|
| Bank Name: | HSBC Private Bank (UK) Ltd |
| Bank Address: | 78 St James St, London SW1A 1JB, UK |
| ABA or CHIPS No.: | SWIFT: SMCO GB2P |
| Account Name: | Reuben Brothers Ltd |
| Account No.: | 454223 |
| For Further Credit: | Use corr bank: HSBC Bank USA NY ABA: 021-001-088, a/c: 000-04330-3 |

18. The Fund, the Administrator and the Investment Manager reserve the right to request any additional documentation they deem necessary to verify the identity or source of funds of the Subscriber in order to comply with applicable anti-money laundering laws. Failure to provide the necessary evidence may result in subscriptions being rejected or in delays in the dispatch of documents. The Fund, the Administrator and the Investment Manager and each of their respective directors, officers, employees and agents and other representatives shall be held harmless by a Subscriber against any loss arising as a result of a failure to process the subscription if such information as has been requested by the Fund, the Administrator and/or the Investment Manager has not been provided by the Subscriber.

19. (a) The Subscriber understands and agrees that the Fund prohibits the investment of funds by any persons or entities that are acting, directly or indirectly, (i) in contravention of any U.S. or international laws and regulations, including anti-money laundering regulations or conventions, (ii) on behalf of terrorists or terrorist organizations, including those persons or entities that are included on the List of Specially Designated Nationals and Blocked Persons maintained by the U.S. Treasury Department's Office of Foreign Assets Control[8] ("**OFAC**"), as such list may be amended from time to time, (iii) for a senior foreign political figure, any member of a senior foreign political figure's immediate family or any close associate of a senior foreign political figure[9], unless the Fund, after being specifically notified by the Subscriber in writing that it is such a person, conducts further due diligence, and determines that such investment shall be

---

[8] The OFAC list may be accessed on the web at http://www.treas.gov/ofac.

[9] "Senior foreign political figure" means a senior official in the executive, legislative, administrative, military or judicial branches of a foreign government (whether elected or not), a senior official of a major foreign political party, or a senior executive of a foreign government-owned corporation. In addition, a senior foreign political figure includes any corporation, business or other entity that has been formed by, or for the benefit of, a senior foreign political figure. The immediate family of a senior foreign political figure typically includes the political figure's parents, siblings, spouse, children and in-laws. A close associate of a senior foreign political figure is a person who is widely and publicly known internationally to maintain an unusually close relationship with the senior foreign political figure, and includes a person who is in a position to conduct substantial domestic and international financial transactions on behalf of the senior foreign political figure.

permitted, or (iv) for a foreign shell bank[10] (such persons or entities in (i) – (iv) are collectively referred to as "Prohibited Persons").

(b)  The Subscriber represents, warrants and covenants that: (i) it is not, nor is any person or entity controlling, controlled by or under common control with the Subscriber, a Prohibited Person, and (ii) to the extent the Subscriber has any beneficial owners[11], (A) it has carried out thorough due diligence to establish the identities of such beneficial owners, (B) based on such due diligence, the Subscriber reasonably believes that no such beneficial owners are Prohibited Persons, (C) it holds the evidence of such identities and status and will maintain all such evidence for at least five years from the date of the Subscriber's complete redemption from the Fund, and (D) it will make available such information and any additional information that the Fund may require upon request in accordance with applicable regulations.

(c)  If any of the foregoing representations, warranties or covenants ceases to be true or if the Fund no longer reasonably believes that it has satisfactory evidence as to their truth, notwithstanding any other agreement to the contrary, the Fund may, in accordance with applicable regulations, be obligated to freeze the Subscriber's investment, either by prohibiting additional investments, declining or suspending any redemption requests and/or segregating the assets constituting the investment, or the Subscriber's investment may immediately be involuntarily redeemed by the Fund, and the Fund may also be required to report such action and to disclose the Subscriber's identity to OFAC or other authority. In the event that the Fund is required to take any of the foregoing actions, the Subscriber understands and agrees that it shall have no claim against the Fund, the Investment Manager, the Administrator and their respective affiliates, directors, members, partners, shareholders, officers, employees and agents for any form of damages as a result of any of the aforementioned actions.

(d)  The Subscriber understands and agrees that any redemption proceeds paid to it will be paid to the same account from which the Subscriber's investment in the Fund was originally remitted, unless the Fund, in its sole discretion, agrees otherwise.

20. The Subscriber acknowledges and understands that if as a result of any information or other matter which comes to his attention, any person resident in the Cayman Islands (including the Fund, its Directors and the Administrator) knows or suspects that another person is engaged in money laundering, such person is required to report such information or other matter pursuant to the Proceeds of Criminal Conduct Law (Revised) of the Cayman Islands, and such report will not be treated as a breach of any restriction upon the disclosure of information imposed by law or otherwise.

21. (a) By executing this Subscription Agreement and until such authorization is revoked by the Subscriber in writing to the Fund, the Subscriber hereby authorizes the Fund to provide information regarding the Subscriber's account to the Fund's Investment Manager and legal counsel.

(b) The executed copy of this Subscription Agreement is being sent to the Fund at its address set forth above. The name and address set forth below will be used for the purpose of recording the Subscriber as a Shareholder of the Fund.

22. The Subscriber agrees that this Subscription Agreement, the Memorandum, the Memorandum and Articles of Association of the Fund and all financial statements, tax reports, portfolio valuations, reviews or analyses of potential or actual investments, reports or other materials prepared or produced by the Fund, the Administrator or the Investment Manager and all other documents and information concerning the affairs of the Fund and its investments (collectively, the "**Confidential Information**") that the Subscriber may receive pursuant to or in accordance with this Subscription Agreement, or otherwise as a result of its ownership of Shares in the Fund, constitute proprietary and confidential information about the Fund, the Administrator and/or the Investment Manager (the "**Affected Parties**"). The Subscriber acknowledges that the Affected Parties derive independent economic value from the Confidential Information not being generally known and that the Confidential Information is the subject of reasonable efforts to maintain its secrecy. The Subscriber

---

[10]  "Foreign shell bank" means a foreign bank without a physical presence in any country, but does not include a regulated affiliate. A post office box or electronic address would not be considered a physical presence. A regulated affiliate means a foreign shell bank that: (1) is an affiliate of a depository institution, credit union, or foreign bank that maintains a physical presence in the United States or a foreign country, as applicable; and (2) is subject to supervision by a banking authority in the country regulating such affiliated depository institution, credit union, or foreign bank.

[11]  For a description of beneficial owners, please see footnote 1.

13

further acknowledges that the Confidential Information is a trade secret, the disclosure of which is likely to cause substantial and irreparable competitive harm to the Affected Parties and their respective businesses. The Subscriber shall not reproduce any of the Confidential Information or portion thereof or make the contents thereof available to any third party other than a disclosure on a need-to-know basis to the Subscriber's legal, accounting or investment advisers, auditors and representatives (collectively, "Advisers") without the prior consent of the Fund and the Investment Manager, except to the extent compelled to do so in accordance with applicable law (in which case the Subscriber shall promptly notify the Fund and the Investment Manager of the Subscriber's obligation to disclose any Confidential Information) or with respect to Confidential Information that otherwise becomes publicly available other than through breach of this provision by the Subscriber. The Subscriber agrees to notify the Subscriber's Advisers about their obligations in connection with Confidential Information and will further cause such Advisers to abide by the aforesaid provisions relating to Confidential Information.

23. The Subscriber acknowledges and agrees that the Investment Manager will attempt to correct trading errors as soon as they are discovered, but that it may not be responsible for poor executions or trading errors committed by the brokers with which it transacts or the Investment Manager itself, unless, in the case of the Investment Manager, such errors resulted from the Investment Manager's gross negligence or willful misconduct.

24. The Subscriber acknowledges and agrees to the use of the research products and services by the Investment Manager or its affiliates, as discussed in the Memorandum.

25. (a) This Subscription Agreement shall be binding upon the Subscriber and its successors and permitted assigns and shall inure to the benefit of the Fund's successors and assigns. This Subscription Agreement shall survive the acceptance of the subscription and if the Subscriber consists of more than one person, shall be the joint and several obligation of each person. If the Subscriber is more than one person, the obligations hereunder of the Subscriber shall be joint and several and the representations, warranties and covenants herein contained shall be deemed to be made by and be binding upon each such person and such person's heirs, executors, administrators, legatees, devisees, assigns, legal representatives and successors.

(b) If any provision hereof shall be found invalid or unenforceable under any applicable law, it shall be deemed inoperable to that extent and its invalidity or in-operability shall not affect any other provisions hereof.

26. This Subscription Agreement may be executed in counterparts, all of which when taken together shall be deemed one original.

27. This Subscription Agreement shall be governed by and construed in accordance with the laws of the Cayman Islands.

Dated: 3 November 2011

Very truly yours,

Bloomfield Investment Resources Corp
_____
Print Subscriber's Name

_[signature]_
_____
Signature of Subscriber
or Authorized Signatory

Alexander Bushaev, Director
_____
Print Name and Title of
Authorized Signatory

Address of Subscriber:

c/o Reuben Brothers SA
9 Place du Molard
1204 Geneva, Switzerland

Telephone and Facsimile Number of Subscriber:

Phone: +41 22 787 5020

Fax: +41 22 787 5029

Email Address of Subscriber:

Email: abushaev@reubros.com

Subscription Amount:

US$ 25,000,000.00 (25 million USD)

Name and Address of Bank
Wiring Subscription:

HSBC Private Bank (UK) Ltd
78 St James st
London SW1A 1JB, UK

The foregoing offer is hereby accepted, subject to the conditions set forth herein and the decision of the Directors of the Fund to issue the Shares.

Additional copies of correspondence from the Fund should be sent to:

Ben Webb, Patrick O'Driscoll
Motcomb Estates Ltd, 21-24 Millbank,
London, SW1P 4QP, United Kingdom

SYNERGY HYBRID FUND LTD.

By:_____
    Name:
    Title:

15

**ADDITIONAL REPRESENTATION WITH RESPECT TO
INVESTMENT FROM AN IRA OR SELF-DIRECTED PENSION PLAN**

If the Subscriber is an IRA or self-directed pension plan, the individual who established the IRA or the individual who directed the pension plan's investment in the Fund, as the case may be, the "Fiduciary": (i) has directed the custodian or trustee of the Subscriber to execute this Subscription Agreement on the line set forth above for Authorized Signatory; and (ii) has signed below to indicate that he or she has reviewed, directed and certifies to the accuracy of the representations and warranties made by the Subscriber herein.

_____
Type in name

_____
Signature

## APPENDIX A

PLEASE GIVE THIS LETTER TO YOUR FINANCIAL INSTITUTION AND HAVE THEM RETURN IT TO THE FUND AT THE SAME TIME THAT THE SUBSCRIPTION MONIES ARE REMITTED.

### SAMPLE LETTER

[to be placed on letterhead of the Regulated Institution remitting payment]

Date

**Via mail and facsimile**

Synergy Hybrid Fund Ltd.
c/o Apex Fund Services Ltd.
3rd Floor, 31 Reid Street
Hamilton HM12
Bermuda
Facsimile: +1 441-292-1884

Dear Sirs:

Re: Synergy Hybrid Fund Ltd.

Name of Remitting Institution:
Address of Remitting Institution:

Name of Subscriber:
Address of Subscriber:

Name of Subscriber Account Being Debited:
Account Number Being Debited:

We have credited your account at:     Correspondent Bank: HSBC Bank USA, N.A.
                                      452 Fifth Avenue
                                      New York, New York 10018, U.S.A.
                                      SWIFT Code: MRMD US33
                                      Fedwire ABA Code: 021001088
                                      Beneficiary Bank: Bank of Bermuda, Hamilton
                                      Swift Code: BBDA BMHM
                                      Beneficiary Account No.: 010-825297-501
                                      Beneficiary Name: Synergy Hybrid Fund Ltd.

Amount of Funds Transferred:
Date of Funds Transferred

The above information is given in strictest confidence for your own use only and without any guarantee, responsibility or liability on the part of the Institution or its officials.

Yours sincerely,

Signed:        _____
Full Name:     _____
Position:      _____

## APPENDIX B

### ADDITIONAL SUBSCRIPTION REQUEST

Synergy Hybrid Fund Ltd.
c/o Apex Fund Services Ltd.
3rd Floor, 31 Reid Street
Hamilton HM12
Bermuda
Facsimile: +1 441-292-1884

Dear Sir or Madam:

The undersigned shareholder of Synergy Hybrid Fund Ltd. (the "**Fund**") hereby subscribes for the additional amount set forth below upon the terms and conditions described in the Memorandum. The undersigned restates all of the declarations in the undersigned's original Subscription Agreement as if they were made on the date hereof and certifies that all of the information set forth in the undersigned's original Subscription Agreement remains accurate and complete on the date hereof.

Additional Investment US$:_____

Date of Additional Investment: _____

Correspondent Bank:   HSBC Bank USA, N.A.
                      452 Fifth Avenue
                      New York, New York 10018, U.S.A.
SWIFT Code: MRMD US33
Fedwire ABA Code: 021001088
Beneficiary Bank: Bank of Bermuda, Hamilton
Swift Code: BBDA BMHM
Beneficiary Account No.: 010-825297-501
Beneficiary Name: Synergy Hybrid Fund Ltd.

THE UNDERSIGNED AGREES TO NOTIFY THE FUND PROMPTLY SHOULD THERE BE ANY CHANGE IN ANY OF THE FOREGOING INFORMATION.

Dated:_____, _____

| For Corporations, Partnerships, Trusts, Limited Liability Companies, Pension Plans or IRAS, Other Entity (s): | For Individuals: |
|---|---|
| _____ (Print Name of Entity) | _____ (Signature) |
| By:_____ (Signature) | Print:_____ |
| Print Name:_____ | _____ |
| Title:_____ | _____ |
| Phone #:_____ | Phone #:_____ |
| Fax #:_____ | Fax #:_____ |
| E-Mail:_____ | E-Mail:_____ |