IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ED CAPITAL, LLC, ED CAPITAL MANAGEMENT, LLC<br><br>　　　　　　Plaintiffs,<br><br>vs.<br><br>BLOOMFIELD INVESTMENT RESOURCES CORP., REUBEN BROTHERS RESOURCES GROUP, RB RESOURCES LIMITED, REUBEN BROTHERS LIMITED,<br><br>　　　　　　Defendants. | Civil Action No. 15-cv-9056 (VM) |

### DECLARATION OF LAURA HATFIELD IN SUPPORT OF DEFENDANTS' <u>MOTION TO DISMISS THE COMPLAINT</u>

I, **LAURA HATFIELD**, of the law firm Solomon Harris, 3rd Floor, FirstCaribbean House, George Town, Grand Cayman, Cayman Islands, attorney at law of the Grand Court of the Cayman Islands, declare as follows:

1. I am an attorney-at-law practicing at the Cayman Islands law firm of Solomon Harris as a partner in that firm.

2. I have been asked by Bloomfield Investment Resources Corp. ("Bloomfield"), Reuben Brothers Resources Group, RB Resources Limited, and Reuben Brothers Limited (collectively, the "Defendants") to provide my opinion on those aspects of the law of the Cayman Islands relevant to certain claims made in Plaintiffs' Complaint filed in the above-captioned matter on 18 November 2015 (the "Complaint").

**Sources**

3. I have reviewed the following documents in preparing my declaration in this matter:

   3.1. The Complaint;

   3.2. Synergy Hybrid Fund Ltd. Subscription Agreement dated 3 November 2011 (the "Subscription Agreement");

   3.3. Synergy Hybrid Fund Ltd. Confidential Private Placement Memorandum effective June 2010 (the "Memorandum");

4. Capitalized terms not otherwise defined herein shall have the same meaning ascribed to them in the Complaint.

5. Save where otherwise indicated the facts and matters contained in this Declaration are derived from my own knowledge of this matter. To the extent that matters contained in this Declaration are derived from information supplied to me, they are true to the best of my knowledge, information and belief. I attach as Exhibits copies of the cases and the Contracts (Rights of Third Parties) Law, 2014 to which I refer in this Declaration and which form the basis of the opinions stated herein.

**Professional Experience and Qualifications of Laura Hatfield**

6. I obtained my Bachelor of Science degree in 1985 at Exeter University England, and was admitted as a solicitor of the Supreme Court of England and Wales in 1989. I practised as a solicitor in London until 2001 and became a partner in the firm of Glovers solicitors London in 1998.

7. In 2001, I commenced working with Solomon Harris as head of the insolvency, restructuring and dispute resolution department and was admitted as an attorney at law in the Cayman Islands in that same year. In 2007, I became a partner of Solomon Harris.

8. My main area of practice involves advising liquidators, controllers and receivers in regard to liquidations of companies registered in the Cayman Islands, most of which conduct business in the area of mutual funds, other alternative investment vehicles and structures, insurance and financial services. My experience includes conduct of commercial litigation, banking law advice, company law disputes, professional negligence claims and alternative dispute resolution including arbitration. My work as a solicitor in London and with Solomon Harris has provided me with extensive experience with commercial disputes, including those in the U.S.A., and cross border and international issues, including the types of issues arising in this case.

**The Legal System of the Cayman Islands**

9. The Cayman Islands is a British Overseas Territory. A Governor, a Cabinet of ministers and a Legislative Assembly have executive and legislative power, subject to a power of disallowance by the British Secretary of State for Foreign and Commonwealth affairs. The Cayman Islands enacts statutes and regulations, and English statutes after 1727 have no general application to the Cayman Islands unless expressly extended to the Cayman Islands.

10. The Courts of the Cayman Islands reach their decisions in cases before them on the basis of the law of the Cayman Islands. The Grand Court of the Cayman Islands is, in most cases, a Superior Court of Record of First Instance, having unlimited jurisdiction in both criminal and civil matters. Appeals from the Grand Court go to the Cayman Islands Court of Appeal, which is also a Superior Court of Record. The final level of appeal from the Cayman Islands Court of Appeal is the Judicial Committee of The Privy Council ("JCPC"), which is the court of final appeal for the Cayman Islands and generally for the UK overseas territories and Crown dependencies, and for those Commonwealth countries that have retained the appeal to Her Majesty in Council or, in the case of Republics, to the Judicial Committee. Decisions of the JCPC on cases arising in the Cayman Islands are binding on the Courts of the Cayman Islands. The cases I provide herewith were decided by the High Court of Justice and the Court of Appeal of England and Wales,

which are of persuasive authority, and the Grand Court of the Cayman Islands which decision would usually be followed by other Judges of the Grand Court of the Cayman Islands as a matter of judicial comity.

**Summary of Conclusion**

11. For the reasons set out below, under the laws of the Cayman Islands, the Plaintiffs cannot enforce any rights under the Subscription Agreement and the Memorandum, specifically the Plaintiffs cannot bring a claim against the Defendants to be indemnified pursuant to clause 4 of the Subscription Agreement or for any breach of any term of that contract or any term of the Memorandum.

**Claims against the Defendants**

12. I am given to understand that Counts I (Declaratory Judgment Claim) and II (Claim for Injunctive Relief) in the Complaint have been dismissed. The remaining claims pursued by the Plaintiffs are Counts III (Abuse of Process), IV (Prima Facie Tort), V (Breach of Contract), VI (Indemnification) and VII (Prejudgment Attachment).

13. Given that Cayman Islands law applies to the Subscription Agreement and also to the Memorandum, I have focused on Counts V and VI, which are respectively the contractual claim for damages (as to which Plaintiffs seek to rely on both the Subscription Agreement and the Memorandum) and the claim for indemnification (as to which Plaintiffs seek to rely on the Subscription Agreement).

**Governing Law**

14. The Subscription Agreement is stated, at paragraph 27, to be governed by and construed in accordance with the laws of the Cayman Islands.

15. The Memorandum is silent on its governing law but the Subscription Agreement states that capitalized terms used therein and not defined shall have the meaning set forth in the Memorandum and thereby imports the Memorandum into the Subscription

Agreement. As the Subscription Agreement is governed by Cayman Islands law, it follows that the Memorandum, as part of the Subscription Agreement, is also governed by Cayman Islands law. Further the Memorandum itself at page (i) states that its terms are qualified in their entirety by the Articles of Association of Synergy Hybrid Fund Ltd, which is incorporated in the Cayman Islands, such that the Articles of Association are governed by Cayman Islands law which, therefore, means the Memorandum must also be governed by Cayman Islands law.

**Privity of Contract**

16. The fact that the Plaintiffs are seeking to make claims based on a contractual document as to which only Bloomfield and Synergy Hybrid Fund Ltd. are parties, and where Plaintiffs did not provide any valuable consideration to Bloomfield means that the doctrine of "privity of contract", a legal principle applied in the Cayman Islands, must be considered.

17. In the Cayman Islands, the doctrine of "privity of contract" is that a contract cannot confer or impose enforceable obligations on persons or entities which are not parties to that contract. Thus, only a party to a contract can sue or be sued under that contract.[1] A contract between A and B cannot confer benefits on C such that C can enforce those benefits.[2] The rationale underlying this rule is that it would be unjust for a party to be able to sue under a contract when it cannot be sued under the contract.

18. The doctrine of "privity of contract" is connected to the rule that consideration, an essential ingredient of a valid contract in Cayman Islands law, must move from the promisee (receiver of performance of the contract) to the promisor (performer of the contract). Thus, a promise of performance which is made without consideration being given in return may not be sued upon in the law of contract, for it is merely a bare

---

[1] *Tweddle v. Atkinson* [1861] EWHC QB J57 attached hereto as Exhibit 1.

[2] *Unilever Plc v ABC International* [2008 CILR 87] attached hereto as Exhibit 2.

promise on which no such action will lie.[3] Put simply, unless a person provides consideration to the parties to a contract, that person is not entitled to enforce any term of that contract.

**Common Law Exceptions to the Rule of Privity of Contract**

19. English common law exceptions to the rule of privity that would be followed by Cayman Islands Courts arose due to the wish of the Courts to afford some third parties the ability in common law to circumvent the doctrine of privity of contract in certain limited circumstances, which pertain only to matters relating to trusts[4], collateral contracts[5], insurance contracts[6] and land/real estate law.[7]

**Statutory Exception to the Rule of Privity of Contract**

20. On 21 May 2014, the Cayman Islands enacted the Contracts (Rights of Third Parties) Law, 2014 (the "Statute").[8] This Statute creates a limited exception to the rule of privity of contract, which exists in addition to the common law exceptions described above.

21. The Statute only applies to contracts that pre-date 21 May 2014 if a third party can show that the contract included certain terms. Specifically, Section 3(4) states:

> *"If, prior to the date on which this Law comes into force, a contract included terms which comply with section 4, a third party may only enforce a right which accrues on or after the date on which this Law comes into force."*

---

[3] *Williams v. Stern* (1879) 5 QBD 409, CA attached hereto as Exhibit 3.

[4] *Les Affréteurs Réunis SA v Leopold Walford (London) Ltd* [1919] A.C. 801 attached hereto as Exhibit 4.

[5] *Shanklin Pier Ltd v Detel Products Ltd* [1951] 2 K.B. 854 attached hereto as Exhibit 5.

[6] *In re Webb* [1941] Ch. 225 attached hereto as Exhibit 6.

[7] *Tulk v Moxhay* 41 E.R. 1143 attached hereto as Exhibit 7; *Smith and Snipes Hall Farm v River Douglas Catchment Board* [1949 2 K.B. 500] attached hereto as Exhibit 8.

[8] *The Contracts (Rights of Third Parties) Law, 2014* attached hereto as Exhibit 9.

22. The criteria required to be satisfied to achieve compliance with section 4 are set out in Sections 4(1) (a) and (b), as follows:

> "Subject to section 9, a third party may in his own right enforce a term of the contract if –
>
> (a) he is expressly identified in the contract by name, as a member of a class or as answering a particular description, which includes a person nominated or otherwise identified pursuant to the terms of the contract but the third party need not be in existence when the contract is entered into; and
>
> (b) the contract expressly provides in writing that he may."[9]

**Application of Cayman Islands Law to Plaintiffs' Breach of Contract and Indemnification Claims**

23. The only parties to the Subscription Agreement are Synergy Hybrid Fund Ltd. and Bloomfield.

24. It is specifically stated in the Subscription Agreement at paragraph 25 that it shall be binding upon the "Subscriber" (Bloomfield) and its successors and assigns. Paragraph 25 also states that the Subscription Agreement inures to the benefit of the successors and assigns of the "Fund" (Synergy Hybrid Fund Ltd.). There is, however, no indication that the Subscription Agreement was intended to be binding on Plaintiffs.

25. The English common law exceptions to the rule of privity of contract that would be followed by the Cayman Islands Courts are not available to the Plaintiffs in the circumstances of these proceedings, as they pertain only to matters relating to trusts, collateral contracts, insurance contracts and land/real estate law, none of which are applicable to the Subscription Agreement or the Memorandum.

---

[9] Section 9 provides that Section 4 confers no rights on a third party in the case of (1) a contract on a bill of exchange, promissory note or other negotiable instrument; (2) any contract binding on a company and its members under sections 12 and 25 of the Companies Law (2013 Revision); (3) any term of a contract of employment against an employee, and (4)(a) a contract for the carriage of goods by sea; (4)(b) a contract for the carriage of goods by road, or for the carriage of cargo by air; or (4)(c) letters of credit.

26. The Subscription Agreement (dated 3 November 2011) and the Memorandum (effective June 2010) predate the enactment of the Statute, and do not contain all of the requisite terms to comply with Section 4 of the Statute. Accordingly, the Statute does not apply, and Plaintiffs may not rely on it as providing an exception to the rule of privity of contract.

27. With respect to the Subscription Agreement, Plaintiff ED Capital, LLC, does not meet the requirements of Sections 4(1) (a) and (b). While plaintiff ED Capital Management, LLC is identified in the Subscription Agreement as "Investment Manager," it cannot meet the second of the two requirements of the Statute, which is to show that the Subscription Agreement contains an express provision that the identified party may enforce the contract. The mere reference to the Investment Manager in paragraphs 4 and 22 of the Subscription Agreement, upon which Plaintiffs rely, is not enough under the Statute to enable the Investment Manager to enforce any terms of the Subscription Agreement, including paragraphs 4 and 22.

28. The Memorandum is not a document to which any person or entity is a named party, nor does it contain any requirements for signature by any person or entity. It is provided by the Fund to investors and contains representations and information, which as it states at page (i) is qualified in its entirety by the Fund's Articles of Association. The Subscription Agreement imports the meanings of certain terms in the Memorandum, but the Memorandum does not expressly provide that the Investment Manager or Investment Advisor can enforce any term of it (or that they can enforce any term of the Subscription Agreement) so, again, Plaintiffs do not meet the test in the Statute under section 4(1)(b).

29. It bears emphasis that the Subscription Agreement and the Memorandum do not create any relationship between Bloomfield and Plaintiffs. Cayman-incorporated funds do not usually provide for there to be any contractual relationship between investors and the fund's investment manager, only a contractual relationship between the investor and the fund and separately between the fund itself and the investment manager. Cayman-

incorporated funds also do not usually provide for any contractual relationship between investors and the fund's investment advisor. In this case, the Private Placement Memorandum on page 51 states that "[p]ursuant *to an Advisory Agreement* with the Fund and the Investment Adviser, the Investment Manager implements the Fund's investment strategy." (Emphasis added.)

## Conclusion

30.  For the reasons set out herein, Plaintiffs cannot, as a matter of Cayman Islands law, pursue claims against the Defendants which have at their core reliance on any terms of the Subscription Agreements or the Memorandum. Here, there are no applicable common law or statutory exceptions to the doctrine of privity of contract. It is my opinion that the Plaintiffs' claims under Counts V and VI will be barred by the doctrine of privity of contract under Cayman Islands law.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on December 1, 2016

*/s/ Laura Hatfield*
Laura Hatfield