# Exhibit 1

Neutral Citation Number: [1861] EWHC QB J57
(1861) 121 ER 762; QB

IN THE HIGH COURT OF JUSTICE
QUEEN'S BENCH DIVISION

7th June 1861

Before:

Wightman J
Crompton J
Blackburn J

_____

Between:
TWEDDLE
-v-
ATKINSON

_____

The declaration stated that the plaintiff was the son of John Tweddle, deceased, and before the making of the agreement hereafter mentioned, married the daughter of William Guy, deceased; and before the said marriage of the plaintiff the said William Guy, in consideration of the then intended marriage, promised the plaintiff to give to his said daughter a marriage portion, but the said promise was verbal, and at the time of the making of the said agreement had not been performed; and before the said marriage the said John Tweddle, in consideration of the said intended marriage, also verbally promised to give the plaintiff a marriage portion, which promise at the time of the making of the said agreement had not been performed. It then alleged that after the marriage and in the lifetime of the said William Guy, and of the said John Tweddle, they, the said William Guy and John Tweddle, entering into the agreement hereafter mentioned as a mode of giving effect to their said verbal promises; and the said William Guy also entering into the said agreement in order to provide for his said daughter a marriage portion, and to procure a further provision to be made by the said John Tweddle, by means of the said agreement, for his said daughter, and acting for the benefit of his said daughter; and the said John Tweddle also entering into the said agreement in order to provide for the plaintiff a marriage portion, and to procure a further provision to be made by the said William Guy, by means of the said agreement, for the plaintiff, and acting for the benefit of the plaintiff; they the said William Guy and John Tweddle made and entered into an agreement in writing in the words following, that is to say:

"High Coniscliffe, July 11th, 1855. "Memorandum of an agreement made this day between William Guy, of etc., of the one part, and John Tweddle, of etc., of the other part. Whereas it is mutually agreed that the said William Guy shall and will pay the sum of 200l. to William Tweddle, his son-in-law; and the said John Tweddle, father to the aforesaid William Tweddle, shall and will pay the sum of 100l. to the said William Tweddle, each and severally the said sums on or before the 21st day of August, 1855. And it is hereby further agreed by the aforesaid William Guy and the said John Tweddle that the said William

Tweddle has full power to sue the said parties in any Court of law or equity for the aforesaid sums hereby promised and specified."

"And the plaintiff says that afterwards and before this suit, he and his said wife, who is still living, ratified and assented to the said agreement, and that he is the William Tweddle therein mentioned. And the plaintiff says that the said 21st day of August, A.D. 1855, elapsed, and all things have been done and happened necessary to entitle the plaintiff to have the said sum of 200l. paid by the said William Guy or his executor; yet neither the said William Guy nor his executor has paid the same, and the same is in arrear and unpaid, contrary to the said agreement."

Demurrer and joinder therein. Edward James, for the defendant: The plaintiff is a stranger to the agreement and to the consideration as stated in the declaration, and therefore cannot sue upon the contract. It is now settled that an action for breach of contract must be brought by the person from whom the consideration moved; *Price v. Easton* (4 B. & Ad. 433). (He was then stopped.)
Mellish, for the plaintiff: Admitting the general rule as stated by the other side, there is an exception in the case of contracts made by parents for the purpose of providing for their children. In *Dutton and Wife v. Poole*[1], affirmed in the Exchequer Chamber, a tenant in fee simple being about to cut down timber to raise a portion for his daughter, the defendant his heir-at-law, in consideration of his forbearing to fell it, promised the father to pay a sum of money to the [396] daughter, and an action of assumpsit by the daughter and her husband was held to be well brought. The natural relationship between the father and the son constituted the father an agent for the son, in whose behalf and for whose benefit the contract was made, and therefore the latter may maintain an action upon it. The object of the contract, which was that the children should be provided for, will be accomplished if this action is maintainable: whereas if the right of action remains in the father it will be defeated, because the damages recovered in that action will be his assets. In *Bourne v. Mason* (1 Ventr. 6), two cases are cited which support this action. In *Sprat v. Agar*, in the King's Bench in 1658, one promised the father that, in consideration that he would give his daughter in marriage with his son, he would settle so much land; after the marriage the son brought an action, and it was held maintainable. The other was the case of a promise to a physician that if he did such a cure he would give such a sum of money to himself and another to his daughter, and it was resolved the daughter might bring assumpsit, "Which cases," says the report, "the Court agreed;" and the reason assigned as to the latter is, " the nearness of the relation gives the daughter the benefit of the consideration performed by her father." There is no modern case in which this question has been raised upon a contract between two fathers for the benefit of their children. According to the old cases he could not. When a father makes a contract for the benefit of his child, the law vests the contract in the child. In *Thomas v. -* (Sty. 461) the defendant promised to a father that in consideration that he would surrender a copyhold to the defendant, the defendant would give unto his two daughters 20l. a-piece; and after verdict in an action upon the case brought by one of the daughters for breach of that promise, on motion for arresting the judgment on the ground that the two ought to have joined, it was held that the parties had distinct interests, and so each might bring an action.

Edward James was not called upon to reply.

Wightman J: Some of the old decisions appear to support the proposition that a stranger to the consideration of a contract may maintain an action upon it, if he stands in such a near relationship to the party from whom the consideration proceeds, that he may be considered a party to the consideration. The strongest of those cases is that cited in *Bourne v. Mason* (1

---

[1] 2 Lev. 210; 1 Ventr. 318. Affirmed on error in the Exch Ch., T. Raym. 302.

Ventr. 6), in which it was held that the daughter of a physician might maintain assumpsit upon a promise to her father to give her a sum of money if he performed a certain cure. But there is no modern case in which the proposition has been supported. On the contrary, it is now established that no stranger to the consideration can take advantage of a contract, although made for his benefit.

Crompton J: It is admitted that the plaintiff cannot succeed unless this case is an exception to the modern and well established doctrine of the action of assumpsit. At the time when the cases which have been cited were decided the action of assumpsit was treated as an action of trespass upon the case, and therefore in the nature of a tort; and the law was not settled, as it now is, that natural love and affection is not a sufficient consideration for a promise upon which an action may be maintained; nor was it settled that the promisee cannot bring an action unless the consideration for the promise moved from him. The modern cases have, in effect, overruled the old decisions; they shew that the consideration must move from the party entitled to sue upon the contract. It would be a monstrous proposition to say that a person was a party to the contract for the purpose of suing upon it for his own advantage, and not a party to it for the purpose of being sued. It is said that the father in the present case was agent for the son in making the contract, but that argument ought also to make the son liable upon it. I am prepared to overrule the old decisions, and to hold that, by reason of the principles which now govern the action of assumpsit, the present action is not maintainable.

Blackburn J: The earlier part of the declaration shews a contract which might be sued on, except for the enactment in sect. 4 of the Statute of Frauds, 29 Car. 2, c. 3. The declaration then sets out a new contract, and the only point is whether, that contract being for the benefit of the children, they can sue upon it. Mr. Mellish admits that in general no action can be maintained upon a promise, unless the consideration moves from the party to whom it is made. But he says that there is an exception; namely, that when the consideration moves from a father, and the contract is for the benefit of his son, the natural love and affection between the father and son gives the son the right to sue as if the consideration had proceeded from himself. And *Dutton and Wife v. Poole*[2] was cited for this. We cannot overrule a decision of the Exchequer Chamber; but there is a distinct ground on which that case cannot be supported. The cases upon stat. 27 El. c. 4, which have decided that, by sect, 2, voluntary gifts by settlement after marriage are void against subsequent purchasers for value, and are not saved by sect. 4, shew that natural love and affection are not a sufficient consideration whereon an action of assumpsit may be founded.

Judgment for the defendant.

---

[2] 2 Lev. 210; 1 Ventr. 318. Affirmed on error in the Exch Ch., T. Raym. 302.