# Exhibit 3

Case 1:15-cv-09056-VM   Document 38-3   Filed 12/01/16   Page 2 of 6

[IN THE COURT OF APPEAL.]

1879
Dec. 19.

WILLIAMS *v.* STERN.

*Bill of Sale—Payment by Instalments—Default—Giving Time—Waiver.*

The plaintiff gave the defendant a bill of sale on his goods as security for money advanced. The loan was to be repaid by instalments, and the bill of sale authorized the defendant at any time after the execution thereof to take and retain possession of all the goods comprised in it until all the money payable under it should have been satisfied. It also contained a power of sale. The plaintiff, having paid thirteen instalments, on the day when the fourteenth became due called upon the defendant and asked for time; the defendant replied that he would wait for a week, but he seized the goods upon the third day and sold them before any further default had been committed by the plaintiff. An action having been brought to recover damages for the seizure and sale, at the trial the judge asked the jury whether the defendant had so acted as to induce the plaintiff to believe that the defendant would hold his hand; the jury answered this question in favour of the plaintiff:—

*Held*, that there was no evidence of a waiver by the defendant, and that there must be a new trial.

*Quære*, whether *Albert* v. *Grosvenor Investment Co.* (Law Rep. 3 Q. B. 123) was correctly decided.

ACTION in the Court of Passage at Liverpool to recover damages for the seizure and sale of the plaintiff's goods.

By an indenture, being a bill of sale, and dated the 9th of July, 1878, and made between the plaintiff (thereinafter called the mortgagor) of the one part, and the defendant (thereinafter called the mortgagee) of the other part, after reciting that the mortgagor had applied to the mortgagee for an advance of 30*l.* and had agreed to pay the sum of 12*l.* as a consideration for the same, and that the mortgagee had consented to make the advance upon having those sums secured in manner thereinafter appearing, it was witnessed that in consideration of 30*l.* by the mortgagee paid to the mortgagor on the execution of the indenture, the mortgagor assigned to the mortgagee all the stock-in-trade, shop-fixtures, furniture, goods, chattels, and effects of the mortgagor then being in the shop, dwelling-houses, and premises of the mortgagor, situate in Liverpool, to hold the said property unto the mortgagee to and for his own use and benefit, subject to a proviso for redemption in case the mortgagor should pay to the mortgagee

QUEEN'S BENCH DIVISION.

1879

WILLIAMS
*v.*
STERN.

the sum of 42*l.* by twenty-five consecutive weekly payments of
1*l.* 5*s.* each on every Monday before noon, the first payment to be
made on the 15th day of July instant, and the balance of 10*l.* 15*s.*
on the 6th day of January, 1879. The indenture contained a
covenant by the mortgagor with the mortgagee for the repayment
of 42*l.*, and then contained the following declaration: "It is
hereby declared and agreed that notwithstanding the aforesaid
proviso for redemption it shall be lawful for the mortgagee at any
time after the execution hereof to take possession of the said
property and to retain such possession (either in and upon the
said shop, dwelling-house, and premises, or in any other place to
which the mortgagee may think fit to remove it) until all moneys
payable under these presents, together with all expenses which
may be incurred by the mortgagee in and about taking possession,
removing, and retaining possession of the said property, shall be
fully paid ; and, further, that if default be made by the mortgagor
in payment of any instalments of the sum of 42*l.* . . . on the days
on which such instalments respectively shall become payable, the
whole amount which at the time of such default shall be secured
by these presents and shall be remaining unpaid shall at once
become due and payable ; and thereupon it shall be lawful for the
mortgagee to sell the said property by public or private sale and
receive the moneys arising therefrom, and retain to himself there-
out all moneys remaining due on the security of these presents and
all expenses which he may have incurred in taking and holding
possession and removing and selling the said property, and all
costs and charges which he may have incurred in defending and
maintaining his rights, powers, and authorities under these
presents ; and that the surplus (if any) of such moneys shall be
paid to the mortgagor . . . And it is hereby agreed and declared
that it shall be lawful for the mortgagee and his agents from time
to time during the continuance of this security to enter and remain
upon the said shop, dwelling-house, and premises, or any other
premises upon which the said property or any part thereof may
be, for the purpose of taking and holding possession of the said
property, or of there selling the same by auction or of removing
the same, or for any other reasonable purpose in connection with
these presents ; and in case the mortgagee or his agents shall be

1879

WILLIAMS
v.
STERN.

unable to obtain admission in the usual manner, it shall be lawful for him to break open the outer and inner doors and the windows in order to obtain admission." The other provisions of the indenture were immaterial to this action. The plaintiff paid thirteen weekly instalments; but on the day when the fourteenth became due, he had to attend the Court of Passage as juryman; he called upon the defendant and asked for time; the defendant said that he would not look to a week. Relying upon this statement of the defendant, the plaintiff served as a juryman for three days, but on the third day the defendant seized the plaintiff's goods and sold them within the current week and before any fresh default had been committed by the plaintiff. It was alleged that the defendant had heard that the plaintiff's landlord intended to distrain upon the goods for rent in arrear. The judge asked the jury whether the defendant had so acted as to induce the plaintiff to believe that the defendant would hold his hand; the jury answered this question in favour of the plaintiff and assessed the damages at 80*l*. The judge gave leave to move on the ground that there was no evidence of a waiver by the defendant. The Queen's Bench Division made absolute a rule for a new trial, but gave the plaintiff leave to appeal.

The plaintiff accordingly appealed.

*F. W. Raikes*, for the plaintiff. No default had been committed by the plaintiff, which justified the seizure of his goods by the defendant. *Albert* v. *Grosvenor Investment Co.* (1) is in point, and is a clear authority for the plaintiff. That which passed between the plaintiff and the defendant was tantamount to a waiver of the defendant's right to seize during a week.

*D. French*, for the defendant. The indenture of assignment in this case is different from the bill of sale in *Albert* v. *Grosvenor Investment Co.* (1), for in that case the instrument clearly contemplated that, under ordinary circumstances, the mortgagor should be allowed to remain in possession: in this case the defendant could seize at any time without any default on the part of the plaintiff. There was no evidence of any waiver by the defendant of his right to seize.

(1) Law Rep. 3 Q. B. 123.

1879

WILLIAMS
*v.*
STERN.

*F. W. Raikes*, in reply.   The promise of the defendant to wait for a week was a suspension of his right to seize: *Hughes* v. *Metropolitan Ry. Co.* (1)

BRAMWELL, L.J.   I think that this appeal must be dismissed. The plaintiff's evidence failed to shew that the defendant had no right to seize his goods.   When the plaintiff allowed the appointed time to elapse without paying the instalment, he was in default: whenever there is an omission to do an act pursuant to the terms of a contract, there is a default in the performance of it.   It has been argued for the plaintiff that after the defendant had promised to wait for a week, he could not lawfully seize the plaintiff's goods; but I do not think that his promise was sufficient to prevent him from putting in force the powers of the bill of sale: it was not an undertaking which bound him: the promise was not supported by any consideration.   The plaintiff was not induced to alter his position.   A promise to wait founded upon a good consideration would have prevented the defendant from seizing the goods comprised in the bill of sale, even though a distress by the plaintiff's landlord had been threatened.   For the plaintiff reliance has been placed upon *Albert* v. *Grosvenor Investment Co.* (2); but I cannot accede to the decision in that case, because I entertain great doubts whether it was correct.   That was a seizure upon an alleged default, and upon the facts before them the Court of Queen's Bench held that there had been no default.   But whether that decision was right or wrong, in the present case there was no evidence of a valid waiver by the defendant: no benefit accrued to him from his promise.   The appeal must be dismissed.

BRETT, L.J.   I agree with the view of the law enunciated by Bramwell, L.J.   I think that upon the true construction of the indenture the defendant was entitled at any time to take possession of the goods comprised in it.   If, however, a default was necessary in order to enable the defendant to seize, I think that such a default had occurred: for "default" means simply the non-payment of money, and the plaintiff had failed to pay one of the instalments at the time when it became due.   On behalf of the

(1) 2 App. Cas. 439.                    (2) Law Rep. 3 Q. B. 123.

1879

WILLIAMS
v.
STERN.

plaintiff reliance was placed upon the circumstance that the defendant had promised to wait for a week. This was not a misstatement as to existing facts: it was a mere naked promise not binding upon the defendant. Has there been any misconduct on the part of the defendant? I think not: it appears that a distress by the plaintiff's landlord had been threatened; and under these circumstances I do not blame the defendant for changing his mind. In my opinion the decision in *Albert v. Grosvenor Investment Co.* (1) did alter the meaning of the words used by the contracting parties. I cannot agree with that decision. In this case there was no evidence to shew that the defendant had waived any of his rights under the indenture, and the case ought to have been withdrawn from the jury. There must be a new trial.

COTTON, L.J. The only question before us is whether the indenture conferred upon the defendant a power to seize and sell the plaintiff's goods under the circumstances which actually happened. I agree that the plaintiff was in default when he failed to pay the instalment, for "default" simply means nonpayment of a sum of money which is due. Did the alleged promise of the defendant prevent him from seizing and selling the plaintiff's goods? It was not founded upon any consideration. It seems to me that nothing rendered the seizure and sale wrongful. The defendant made no representation which operated to the plaintiff's disadvantage: he simply uttered his own private intentions: he gave no promise which was enforceable in law. The plaintiff has no claim for relief in equity: before the Supreme Court of Judicature Acts, 1873, 1875, the Court of Chancery would not have interfered to set aside the seizure.

*Appeal dismissed.*

Solicitor for plaintiff: *Bartlett, Liverpool.*
Solicitors for defendant: *Ohinery & Aldridge, for Nordon & Mason, Liverpool.*

(1) Law Rep. 3 Q. B. 123.