# Exhibit 4

[HOUSE OF LORDS.]

LES AFFRÉTEURS RÉUNIS SOCIÉTÉ ANONYME . . . . . . . . . } APPELLANTS ;

AND

LEOPOLD WALFORD (LONDON), LIMITED . . . . . . . . . } RESPONDENTS.

H. L. (E.)*
1919
May 19.

*Ship—Charterparty—Chartering Broker's Commission—Custom.*

A clause in a time charterparty provided that "a commission of three per cent. on the estimated gross amount of hire is due to Leopold Walford (London), Limited, on signing this charter (ship lost or not lost)." No hire was in fact earned under the charterparty:—

*Held* (1.), that the charterers, as trustees for the brokers, could enforce the clause against the shipowners; and (2.) that a custom by which commission was payable only if hire was earned under the charterparty could not be set up by the shipowners as an answer to the brokers' claim, inasmuch as it was inconsistent with the terms of the clause.

*Robertson* v. *Wait* (1853) 8 Ex. 299 approved and followed.

Decision of the Court of Appeal [1918] 2 K. B. 498 affirmed.

APPEAL from a decision of the Court of Appeal (1) reversing a decision of Bailhache J.

The respondents, who acted as brokers for the charterers in the charterparty next hereinafter mentioned, claimed commission from the appellants, the shipowners, for effecting a time charterparty dated September 28, 1916, between the appellants, as owners of the steamship *Flore*, and the Lubricating and Fuel Oils Company, Ld., as charterers.

Clause 29 of the charterparty was as follows:—"A commission of three per cent. on the estimated gross amount of hire is due to Leopold Walford (London), Ld., on signing this charter (ship lost or not lost)."

The respondents were not parties to the charterparty, but in answer to an application by the respondents to join the charterers as plaintiffs the appellants agreed to raise no

---

* *Present*: LORD BIRKENHEAD L.C., VISCOUNT FINLAY, LORD ATKINSON, and LORD WRENBURY.

(1) [1918] 2 K. B. 498.

H. L. (E.)
1910
---
LES
AFFRÉTEURS
RÉUNIS
SOCIÉTÉ
ANONYME
v.
LEOPOLD
WALFORD
(LONDON),
LIMITED.

point as to parties, and the action was treated as if the charterers had been added as plaintiffs. This charterparty was an extension of a previous charterparty dated December 9, 1915, which contained a clause similar to clause 29 of the later charterparty under which the rate of commission was 5 per cent. payable to H. E. Moss & Co., the owners' brokers; and by arrangement between Messrs. Moss and the respondents the latter shared in the commission, which was in fact paid to or retained by Messrs. Moss out of the monthly payments of hire made by the charterers.

The charterparty of September 28, 1916, was made in pursuance of an agreement of even date therewith made in Paris between the appellants and the charterers, whereby it was agreed that the charterparty of December 9, 1915, should be suspended for about five weeks from the termination of the discharge of the *Flore* then going on at Rouen, while the ship went a trip to Algiers and back, and that the date of expiry of the charterparty should be deferred for a corresponding period, and that from the date of expiry there should begin a new period of extension; and the agreement provided that the brokers should continue their good services to either party, but that their total brokerage fixed for the original charterparty at 5 per cent. should be reduced for the extension period to 3 per cent.

Before the expiration of the earlier charterparty, namely, in January, 1917, the *Flore* was requisitioned by the French Government, and consequently did not enter upon service under the new charterparty. The appellants refused to pay to the respondents any commission, and by their defence they pleaded a custom of the trade that chartering brokers' commission was payable only in respect of hire duly earned under the charterparty.

Bailhache J. gave judgment for the appellants, the defendants. He said that a custom was proved before him in the case of *Harley & Co. v. Nagata* (1), that in time charterparties brokers' commission was payable out of hire that was earned, and was not payable at all unless hire was earned;

(1) (1917) 23 Com. Cas. 121.

Case 1:15-cv-09056-VM   Document 38-4   Filed 12/01/16   Page 4 of 15

and that that custom was irrespective of the form of the commission clause. That custom was proved by very satisfactory evidence in the earlier case, and had been proved again in this case, and it ought to prevail.

The Court of Appeal (Pickford, Bankes, and Scrutton L.JJ.), in reversing this decision, held that the shipowners could not lawfully set up a custom which was inconsistent with the express terms of the charterparty.

H. L. (E.)
1919
LES
AFFRÉTEURS
RÉUNIS
SOCIÉTÉ
ANONYME
v.
LEOPOLD
WALFORD
(LONDON),
LIMITED.

May 16, 19, 1919. *R. A. Wright K.C.* and *Alexander Neilson K.C.* for the appellants.

The shipowners rely upon the custom, which the judge has found to prevail in London as regards time charters, that brokerage is payable only out of the hire as earned. The commission clause in the charterparty does not represent the true contract between the shipowners and the brokers. There was here an oral contract as to the amount of commission into which the custom was imported, and the judge so found. The second charterparty is a mere continuation of the first, under which the course of business was to deduct the commission from the hire as received, and it proceeds upon the same footing except as regards the amount of commission. In other words the commission continues to be payable according to the custom. If clause 29 of the charterparty embodies the contract between the shipowners and the brokers it is conceded that it must prevail and that the custom is excluded, and this case then becomes indistinguishable from *Robertson* v. *Wait.* (1)

[They also cited *Harley & Co.* v. *Nagata* (2), *Mollett* v. *Robinson* (3); *West* v. *Houghton* (4); *The Nuova Raffaelina* (5); *In re Empress Engineering Company* (6); *Wake* v. *Harrop* (7).]

*MacKinnon K.C.* and *Raeburn K.C.* for the respondents.

For fifty years past it has been the custom to insert in charterparties a clause dealing with the broker's commission. That constitutes the charterer a trustee for the broker.

(1) 8 Ex. 299.
(2) [1917] 23 Com. Cas. 121.
(3) (1872) L. R. 7 C. P. 84; reversed (1875) L. R. 7 H. L. 802.)
(4) (1879) 4 C. P. D. 197.
(5) (1871) L. R. 3 A. & E. 483.
(6) (1880) 16 Ch. D. 125, 129.
(7) (1861) 30 L. J. (Ex.) 273, 277.

H. L. (E.)
1919
---
LES
AFFRÉTEURS
RÉUNIS
SOCIÉTÉ
ANONYME
*v.*
LEOPOLD
WALFORD
(LONDON),
LIMITED.

Formerly the clause was usually in the form in this case, but an alternative form is used in which the commission is payable on hire as earned: *White* v. *Turnbull, Martin & Co.* (1) There is here an express contract as to payment of commission signed by the shipowner, and the alleged custom affords no answer to that. *Robertson* v. *Wait* (2) has been referred to with approval in many cases, of which the latest is *Lloyd's* v. *Harper.* (3)

*R. A. Wright K.C.* replied.

LORD BIRKENHEAD L.C. My Lords, the issues under debate seem to me to be so plain that they may conveniently be disposed of at once. This is an appeal from a decision of the Court of Appeal delivered on July 9, 1918, reversing a decision of Bailhache J. delivered on April 10, whereby he directed judgment to be entered for the defendants with costs. It follows from what I have said that the defendants are the appellants before your Lordships' House.

The facts are very simple. The charterers' brokers claim commission from the shipowners under a charterparty dated September 28, 1916, which was a continuation of an earlier charterparty dated December 9, 1915, by which the s.s. *Flore* was demised. The owners were Les Affréteurs Réunis Société Anonyme and the charterers were the Lubricating and Fuel Oils, Ld. The relevant clause in the charterparty is No. 29, and is as follows: "A commission of three per cent. on the estimated gross amount of hire is due to Leopold Walford (London), Ld., on signing this charter (ship lost or not lost)."

Your Lordships are not troubled here with any question of amount.

My Lords, the first charterparty, that of December 9, 1915, would have ended on March 5, 1917, but its duration proved longer than the twelve months originally contemplated owing to an interruption with the details of which your Lordships are not concerned. The second charterparty would, if matters had remained normal, have commenced on March 5, but in

---

(1) (1897–8) 3 Com. Cas. 13, 183.  (2) 8 Ex. 299.
(3) (1880) 16 Ch. D. 290.

H. L. (E.)
1919

Les
Affréteurs
Réunis
Société
Anonyme
v.
Leopold
Walford
(London),
Limited.

Lord
Birkenhead L.C.

the month of January the French Government requisitioned the ship. The first charterparty came to an end and the second never became effective. The second charterparty was entered into after an agreement between the owners and the charterers dated September 28, 1916, which contained the following clause: "The brokers will continue their good services to either party, but their total brokerage fixed for the charterparty at 5 per cent. will be reduced for the extension period to 3 per cent. For all other conditions of detail the brokers of the respective parties will have to fix together the final clauses, it being understood that the question of principle expressed above will be faithfully observed according to the good faith of the parties, and in accordance with the business customs in shipping matters and the spirit of the present agreement." Clause 34 of the second charterparty incorporated clause 26 of this agreement, and indeed the whole of this agreement, and should, I think, for clearness, be read: "This charterparty is in extension of that of December 9, 1915, and will take effect at the day and hour at which the earlier charterparty will terminate. Both charterparties are for their due fulfilment subject to the conditions and stipulations contained in the special agreement signed in Paris on September 28, 1916, by the two parties exactly as if these conditions and stipulations were embodied in the present charterparty itself."

My Lords, under those circumstances, the document must be read, in my judgment, as one whole, containing the clause of the French agreement to which I have directed attention. I do not, therefore, read the agreement in this matter as if your Lordships had to deal with a clause in the charterparty on the one hand, and an independent agreement known as the French agreement on the other. Having regard to the undeniable circumstance that the French agreement is incorporated in the charterparty it is impossible to consider that an independent agreement, in relation to the second charterparty, existed at all. A charterparty is, of course, a contract between owners and charterers, and it is elementary that, so far as the brokers are concerned, it is res

H. L. (E.)
1919
LES
AFFRÉTEURS
RÉUNIS
SOCIÉTÉ
ANONYME
v.
LEOPOLD
WALFORD
(LONDON),
LIMITED.

Lord
Birkenhead L.O.

inter alios acta; but the parties in the present case, by an interlocutory and very sensible arrangement, have agreed that the matter shall be dealt with as if the charterers were co-plaintiffs. The question therefore is, can the charterers succeed in such circumstances as the present in such an action against owners?

My Lords, it was decided nearly seventy years ago in the case of *Robertson* v. *Wait* (1) that charterers can sue under an agreement of this character as trustees for the broker. I am unable to distinguish between the decision in *Robertson* v. *Wait* (1) and the conclusion which, in my view, should be reached in the present case. It was conceded by Mr. Wright that unless there was a special and independent agreement in this case he was unable to distinguish the facts in this case from those which were considered in *Robertson* v. *Wait* (1). In my opinion Mr. Wright has failed to establish the existence of an independent agreement.

My Lords, so far as I am aware, that case has not before engaged the attention of this House, and I think it right to say plainly that I agree with that decision and I agree with the reasoning, shortly as it is expressed, upon which the decision was founded. In this connection I would refer to the well-known case of *In re Empress Engineering Company*. (2) In the judgment of Sir George Jessel M.R., the principle is examined which, in my view, underlies and is the explanation of the decision in *Robertson* v. *Wait* (1). The Master of the Rolls uses this language: "So, again, it is quite possible that one of the parties to the agreement may be the nominee or trustee of the third person. As Lord Justice James suggested to me in the course of the argument, a married woman may nominate somebody to contract on her behalf, but then the person makes the contract really as trustee for somebody else, and it is because he contracts in that character that the cestui que trust can take the benefit of the contract."

It appears to me plain that for convenience, and under long-established practice, the broker in such cases, in effect, nominates the charterer to contract on his behalf,

(1) 8 Ex. 299.    (2) 16 Ch. D. 125, 129.

influenced probably by the circumstance that there is always a contract between charterer and owner in which this stipulation, which is to enure to the benefit of the broker, may very conveniently be inserted. In these cases the broker, on ultimate analysis, appoints the charterer to contract on his behalf. I agree therefore with the conclusion arrived at by all the learned judges in *Robertson* v. *Wait* (1), that in such cases charterers can sue as trustees on behalf of the broker.

My Lords, this conclusion makes it necessary to ask what is the answer to the plaintiffs' action. I confess that I feel some astonishment at the conclusion reached by Bailhache J., and with all respect for that learned judge I am unable to follow the mental processes by which he reached it. The learned judge has found as a fact that two customs, or as he prefers to call them, practices, which he thought relevant, and indeed decisive, were proved before him. In his view those customs, either severally or jointly, as found by him, are fatal to the plaintiffs' claim. Being very unwilling to do any injustice to the learned judge I will refer to his own language for the precise elucidation of that which he has found. As to the first custom he says (2): "A custom was proved before me in another case of *Harley & Co.* v. *Nagata* (3) to this effect: that it is the invariable practice in time charterparties that brokers' commission is payable out of hire that is earned; the charterer sends the hire money to the broker, the broker deducts his commission from the hire, and sends the balance to the shipowner. That is the way in which it is paid; and, further, that it is the invariable practice that, unless hire is earned, no commission is payable at all." I have to observe upon this, which I call the first finding, that I demur to the practice of finding facts upon evidence given in other cases, between other parties; and in the second place that the evidence in support of this alleged custom produced before the learned judge in this particular case was of the slenderest possible character. Nor does the custom gain added strength from the circumstance, apparently relied

H. L. (E.)
1919
LES
AFFRÉTEURS
RÉUNIS
SOCIÉTÉ
ANONYME
v.
LEOPOLD
WALFORD
(LONDON),
LIMITED.

Lord
Birkenhead L.C.

(1) 8 Ex. 299. (2) [1918] 2 K.B. 409.
(3) 23 Com. Cas. 121.

H. L. (E.)
1919
LES
AFFRÉTEURS
RÉUNIS
SOCIÉTÉ
ANONYME
v.
LEOPOLD
WALFORD
(LONDON),
LIMITED.

Lord
Birkenhead L.C.

upon, that many charterparties contain an express stipulation that no commission shall be payable unless hire is paid. If such a custom is so clear and so much relied upon in the City of London why, one is tempted to ask, is this stipulation necessary? I am far from deciding—I am not called upon to do so in this case—that such a custom does not exist, and that it may not be proved by proper evidence. If in another case it is proved hereafter that there exists any other than the ostensible contract between owners and brokers proper effect will no doubt be given to it in the Courts.

But, my Lords, a further finding of the learned judge is in my view very surprising. He does not number his findings, but that which I now approach is distinguishable from and goes farther than, that which I have already examined. He found that a custom which he thinks is proved is "entirely irrespective of the form in which the commission clause finds its way into the charterparty," and "that the form of the commission clause has no effect at all upon the contract between the broker and the shipowner for the payment of hire." It is necessary to inquire somewhat closely what this finding really means. We have seen that, as the result of an authority binding upon the learned judge, charterers can sue upon a commission clause, under the circumstances which I have attempted to explain, as trustees for the broker. My Lords, whom can they sue? Obviously the shipowners. Why can they sue for the amount of the commission? Obviously because the owners have contracted to pay it. But the learned judge, quite unmoved, apparently, by those considerations, finds as a fact that a custom has been proved before him that a party shall not pay that which, presumably with the full knowledge of the custom, he has explicitly contracted to pay. In contrast with the extreme sanctity which the learned judge concedes to this custom (I am speaking now of what I call his second finding) I confess that I am somewhat attracted by the tone of his reference to the deliberate contract entered into between the parties. The custom, the learned judge says, is "irrespective of the form in which the commission clause finds its

way into the charterparty." My Lords, in my experience important clauses do not "find their way" into important contracts. They are, on the contrary, the fruit of negotiation and consideration. The process is by no means so fortuitous as is supposed. The learned judge, in my judgment (and here I think the comments of the learned Lords Justices in the Court of Appeal are perfectly well-founded and in no way exaggerated), has in effect declared that a custom may be given effect to in commercial matters which is entirely inconsistent with the plain words of an agreement into which commercial men, certainly acquainted with so well known a custom, have nevertheless thought proper to enter. Much evidence would be necessary to convince me of the existence of such a custom, and, if it were forthcoming, I should nevertheless hold the custom to be bad on grounds which seem to me to be both notorious and elementary.

H. L. (E.)
1919
LES
AFFRÉTEURS
RÉUNIS
SOCIÉTÉ
ANONYME
v.
LEOPOLD
WALFORD
(LONDON),
LIMITED.

Lord
Birkenhead L.C.

My Lords, I have only one further observation to make. The learned judge finds in the passage I have already quoted that "the form of the commission clause has no effect at all upon the contract between the broker and the shipowner for the payment of hire." This observation might or might not possess relevance or value in a case in which there was a scintilla of evidence of the existence of a contract between the broker and the shipowner for the payment of hire. Nothing I say to-day prejudges such a case if and when it arises; but in this case my conclusion is that there was no such contract and there was no evidence whatever of such a contract. It became necessary to reach a conclusion both in relation to the first charterparty and in relation to the second charterparty. Mr. Wright referred your Lordships to certain evidence orally given upon which he attempted to found his contention that there was here such an independent agreement between broker and shipowner as was necessary to relieve him from the doctrine in the leading case to which your Lordships have been referred.

In my judgment the evidence upon which Mr. Wright relies is insufficient to support the burden which he attempted to place upon it. I find no evidence in the

H. L. (E.)
1919
---
LES
AFFRÉTEURS
RÉUNIS
SOCIÉTÉ
ANONYME
v.
LEOPOLD
WALFORD
(LONDON),
LIMITED.
---
Lord
Birkenhead L.C.

discussion which took place between the parties of any concluded agreement, or of any intention even to arrive at any agreement, except the provisional understanding as to the figure which should ultimately be inserted in the charterparty. For this reason I dismiss the charterparty in this connection by saying that there is no evidence which was brought before the learned judge which reasonably entitled him to arrive at the conclusion that in relation to that charterparty there was any independent agreement.

Attempting the same inquiry in relation to the second charterparty I come face to face at once with the French agreement, and I have already pointed out to your Lordships that clause 34 in the second charterparty, by incorporating the French agreement, shows that it was the intention of the parties not to treat that agreement as a substantive and independent contract, but as an instrument auxiliary and contributory to the real contract which was the second charterparty. I therefore reach the conclusion that there was no independent contract either in connection with the first charterparty or, approaching the case which is immediately relevant, with the second charterparty.

Holding this view I am bound to say with great respect that I am unable to follow the conclusions the learned Judge has reached in this case; and upon a matter which seems to me very clear, I am of opinion that this appeal must be dismissed with costs, and I move your Lordships accordingly.

VISCOUNT FINLAY. My Lords, this action is brought to recover commission said to be due under the 29th clause of the charterparty of September 28, 1916. The clause in question is this: "A commission of three per cent. on the estimated gross amount of hire is due to Leopold Walford (London), Ld., on signing this charter (ship lost or not lost)."

The case was tried before Bailhache J., and he found that there was a custom, which in his opinion was not excluded by the charter, to the effect that commission to the broker should be paid upon the hire as received from time to time. One would be very slow, of course, to differ from a conclusion on

Case 1:15-cv-09056-VM Document 38-4 Filed 12/01/16 Page 12 of 15

a point of fact such as the existence of a custom, particularly when it is a decision of Bailhache J. Mr. Neilson argued that there was evidence of an agreement, independent of anything in the charterparty itself, to which a custom might apply, supplied by the fact that this charterparty was in continuation of an earlier charterparty, and that the terms of dealing as between the broker and the shipowner must be taken to be the same except as far as they were varied, namely, with regard to the amount of the commission. I do not think it is necessary to examine that question, because whether there was such an independent agreement or not, the question really is whether such an agreement as that and such a custom as that, which would be incorporated with the agreement, can be reconciled with clause 29 of the charterparty, and, if it is not reconcilable, whether such a custom as that can be raised in face of the terms of the charter. That depends, of course, entirely upon the question whether clause 29 is in the nature of a contract between the brokers and the shipowners. If the contract in clause 29 was purely as between the shipowners and the charterers, it would not interfere with the terms of any independent contract under the terms of the custom, supposing that such an independent contract had been entered into between the plaintiffs and the shipowners. But it appears to me that it is elementary law that if clause 29 is to be taken to be a clause entered into by or on behalf of the brokers, they cannot set up a custom such as that contended for; the two are absolutely inconsistent.

H. L. (E.)
1919
LES AFFRÉTEURS RÉUNIS SOCIÉTÉ ANONYME
v.
LEOPOLD WALFORD (LONDON), LIMITED.

Viscount Finlay.

Now in order to avoid the effect of that argument, Mr. Wright contended that the broker was not really a party to clause 29 at all. The difficulty in the way of that argument to my mind is this, that clause 29 in part, at all events, must have been, I think, entered into by those who were parties to the charterparty on behalf of the broker, because the amount of brokerage is specified in clause 29, and to that extent it seems to me that we must regard the charterer as having entered into that bargain in the interests of the broker and as a trustee for the broker.

Well, my Lords, it seems to me to be impossible to dissect

H. L. (E.)
1919
LES
AFFRÉTEURS
RÉUNIS
SOCIÉTÉ
ANONYME
v.
LEOPOLD
WALFORD
(LONDON),
LIMITED.

Viscount Finlay

the clause. If the overwhelming presumption is that in part it was entered into on behalf of the broker, it appears to me to be extremely difficult to say that it was not entered into on behalf of the broker altogether, and, if so, then the words at the conclusion of clause 29 "on signing this charter (ship lost or not lost)" are words governing the conditions on which the commission is to be paid, and which are binding upon the broker. If that is so, it is obvious that, having had the contract reduced into writing on his behalf, it is not open to the broker to set up a custom which is inconsistent with the terms of the clause which through his trustee in this matter he has entered into.

On these grounds I concur in the proposal which has been made by my noble and learned friend on the Woolsack.

LORD ATKINSON. My Lords, I have very little to add. I concur in what has been said by my noble and learned friend on the Woolsack, and also by my noble and learned friend who has preceded me.

I must admit that this appears to me to be an extremely plain case. Two agents employed by their respective principals draw up a written agreement and forward it to the respective principals to be signed by them. In this agreement I find a stipulation regarding the remuneration which is to be paid to those respective agents. I should have thought that when a charterer enters into a charterparty stipulating for payment of commission, it must be assumed, as that is the remuneration of the agent, that he does so with the full consent and concurrence of the agent. He makes that contract with regard to the agent's remuneration for and on behalf of the agent.

Now that being so, the principal in this case, the charterer, is added as a co-plaintiff, and what is the course of the proceeding? The two plaintiffs come into Court and they put down the written agreement, the charterparty. It contains a clause providing that commission is to be paid to the broker in certain events. He stands upon their written document. What is the answer? The answer is, "Oh, that is not the agreement at all—our agreement is a wholly independent

Case 1:15-cv-09056-VM Document 38-4 Filed 12/01/16 Page 14 of 15

thing—it was made by parole; it was made in reference to, and practically embodied a certain custom." Well, my Lords, I concur with every one of the Lords Justices, that there is not a shadow of evidence of that collateral and independent agreement; and, if there were, there is this misfortune about it, that being directly in conflict with the written agreement it cannot be taken advantage of to vary the written agreement. I therefore think there is no answer to the suit instituted upon the written agreement; there is nothing to show that there was any collateral independent agreement; and the independent agreement relied upon, even if proved, could not be acted upon inasmuch as it is, as I have already said, directly in conflict with the letter of the written document into which the parties have entered. I cannot conceive that there should be in any line of business a custom which would provide that no matter what written agreement was to be entered into, the custom is not to be excluded, but is to prevail over the terms of the written document.

H. L. (E.)
1919
~
LES
AFFRÉTEURS
RÉUNIS
SOCIÉTÉ
ANONYME
v.
LEOPOLD
WALFORD
(LONDON)
LIMITED.

Lord Atkinson.

LORD WRENBURY. My Lords, I find myself in entire agreement with all that has been said by your Lordships who have preceded me.

We have here to do with a contract between two parties reserving a benefit to a third. The two parties are the shipowners and the charterers, the third party is the broker of one of them, who is to be remunerated in respect of a contract which is being made for the hire of a ship. The particular form of contract in question is of course prepared by, or is under the eyes of the broker who is negotiating the matter. It is sent to the principals for signature, and they sign it, and there is contained in it a clause which reserves a benefit to the broker. Under those circumstances an action is brought by the broker against the shipowner for the commission which is expressed to be payable to him under the contract between the shipowner and the charterer—a contract to which he himself, I agree, was not a party. By agreement between the parties the record is to be treated as if the charterer were joined as a plaintiff in the action.

H. L. (E.)
1919
---
LES
AFFRÉTEURS
RÉUNIS
SOCIÉTÉ
ANONYME
v.
LEOPOLD
WALFORD
(LONDON),
LIMITED.
---
Lord Wrenbury.

The case is one in which an action can be brought on behalf of a person to whom a benefit is reserved, although he is not a party to it. That is the subject of the decision in *Robertson* v. *Wait.* (1) Under those circumstances the shipowners, the defendants in the action, defend the action and in effect are here saying: "It is perfectly true that we attached our signature to this document; it is perfectly true that it contains in Article 29 this stipulation in favour of a third party; but that means nothing at all—that is not the bargain at all to which we were parties. The matter is governed by a certain custom."

My Lords, I feel myself in great difficulty in understanding a contention of that sort. It is said that in this particular business there exists a custom (and I will take it for the moment that the custom is proved) that in time charterparties broker's commission is payable out of hire earned and is not payable unless hire is earned. In this contract, however, there is a stipulation that the commission shall be on the estimated gross amount of hire on signing the charter ship lost or not lost. I find myself quite unable to understand how it can be set up that into a contract expressed in those terms there can be introduced a custom to an exactly contrary effect. Directly it is conceded that the broker, although not a party to the contract, can sue on the contract, inasmuch as he can sue by the charterer as trustee for him, it appears to me that the case really is over. I have only to read Article 29 and I find there an express stipulation—a stipulation which is accepted by the signature of the defendants, that this payment shall be made, and for that payment it appears to me that the defendants are liable.

My Lords, I agree that the appeal fails and should be dismissed with costs.

*Order of the Court of Appeal affirmed and appeal dismissed with costs.*

*Lords' Journals,* May 19, 1919.

Solicitors for the appellants: *Thomas Cooper & Co.*
Solicitors for the respondents: *Lawrence Jones & Co.*

(1) 8 Ex. 299.