# Exhibit 5

1951

WILLCOCK
v.
MUCKLE.

prolonging legislation initiated under different circumstances and for different purposes.

*Appeal dismissed.*

Solicitors: *Lucien Fior; Solicitor, Metropolitan Police; Treasury Solicitor.*

S. C.

---

1951
June 18, 19, 20, 21, 22;
July 6.

McNair, J.

SHANKLIN PIER LD. *v.* DETEL PRODUCTS LD.
[1949 S. 499.]

*Sale of goods—Express warranty—Warranty given by seller to plaintiff —Consideration that plaintiff should cause buyer to buy—Breach of warranty—Plaintiff's right of action against seller.*

A seller of goods is liable on an express warranty given by him to the promisee who in consideration of the warranty causes a third party to buy the goods so warranted and suffers damage by reason of the breach of the warranty.

ACTION.

The plaintiffs were the owners of a pier at Shanklin, in the Isle of Wight, which, during the war, was partly demolished and allowed to fall into disrepair. On July 22, 1946, they entered into a contract with contractors to have the necessary repairs effected and to have the whole pier repainted with two coats of bitumastic or bituminous paint. Under this contract the plaintiffs had, however, the right to vary the specification.

On July 22, 1946, the South Coast director of the defendant company, as a result of an inquiry by the plaintiffs, went to Shanklin with the object of obtaining for his company the contract for the repainting or for the materials for the repainting of the pier. He there saw the managing director of the plaintiff company, and later also the plaintiffs' architect, and told them that certain paint manufactured by the defendants and known as D.M.U. would be suitable for the work. He showed a pamphlet to the architect which stated that two coats of D.M.U. applied to a clean metal surface would keep the underwater surface, top sides, and wind and water line of a ship free from corrosion for over four years. He told the architect that the paint was not subject to creep, suggested that two coats should be used on the

**2 K. B.**        KING'S BENCH DIVISION.                                855

pier as a protective coat, and promised him that it should have a life of at least seven to ten years.

On the faith of those statements the plaintiffs caused the specification in their contract with the contractors to be amended by the substitution of two coats of D.M.U. That paint was bought by the contractors from the defendants and applied to the pier, but it proved to be unsatisfactory and lasted only about three months.

The plaintiffs, by their statement of claim, now claimed against the defendants that, in consideration of the plaintiffs' specifying that the contractors should use for repainting the pier two coats of a paint known as D.M.U., manufactured by the defendants, the defendants warranted that the D.M.U. paint would be suitable for repainting the pier, would give a surface impervious to dampness, would prevent corrosion and the creeping of rust, and would have a life of from seven to ten years. The plaintiffs further alleged that, in reliance on that warranty, they duly specified that the contractors should use D.M.U. paint for repainting the pier in lieu of the bituminous paint originally specified; that the contractors bought quantities of the paint from the defendants and used it on the pier; and that, contrary to the warranty, the paint was not suitable for repainting the pier or for the protection of the pier from damp or corrosion or rust, and its life was of a very short duration, with the result that the plaintiffs were put to extra expense amounting to 4,127*l*.

1951

SHANKLIN
PIER LD.
*v.*
DETEL PRODUCTS LD.

*Diplock*, K.C., and *J. C. Leonard* for the plaintiffs.
*K. E. Shelley*, K.C., and *Aldous* for the defendants.

*Cur. adv. vult.*

July 6.  McNAIR, J.  This case raises an interesting and comparatively novel question whether or not an enforceable warranty can arise as between parties other than parties to the main contract for the sale of the article in respect of which the warranty is alleged to have been given. [His Lordship stated the facts set out above and continued:]

The defence, stated broadly, is that no warranty such as is alleged in the statement of claim was ever given and that, if given, it would give rise to no cause of action between these parties. Accordingly, the first question which I have to determine is whether any such warranty was ever given. [His Lordship reviewed the evidence about the negotiations which led to the

1951

SHANKLIN
PIER LD.
v.
DETEL PRO-
DUCTS LD.

McNair, J.

acceptance by the plaintiffs of two coats of D.M.U. in substitution for the paint originally specified, and continued:]

In the result, I am satisfied that, if a direct contract of purchase and sale of the D.M.U. had then been made between the plaintiffs and the defendants, the correct conclusion on the facts would have been that the defendants gave to the plaintiffs the warranties substantially in the form alleged in the statement of claim. In reaching this conclusion, I adopt the principles stated by Holt, C.J., in *Crosse* v. *Gardner* (1) and *Medina* v. *Stoughton* (2) that an affirmation at the time of sale is a warranty, provided it appear on evidence to have been so intended.

Counsel for the defendants submitted that in law a warranty could give rise to no enforceable cause of action except between the same parties as the parties to the main contract in relation to which the warranty was given. In principle this submission seems to me to be unsound. If, as is elementary, the consideration for the warranty in the usual case is the entering into of the main contract in relation to which the warranty is given, I see no reason why there may not be an enforceable warranty between A and B supported by the consideration that B should cause C to enter into a contract with A or that B should do some other act for the benefit of A.

Counsel for the defendants, however, relied upon the decision of the Court of Appeal in *Drury* v. *Victor Buckland Ld.* (3), and particularly upon the judgment of Scott, L.J. (4). In that case the plaintiff, who had been approached by an agent of the defendants, dealers in refrigerating machines, agreed to purchase such a machine, but, being unable or unwilling to pay forthwith the whole of the purchase price, the deal was put through by the defendants' selling the machine to a finance company, who in turn entered into a hire-purchase agreement with the plaintiff, under which she eventually, when the whole of the hire-purchase instalments had been paid, acquired title to the machine. The machine proving unsatisfactory, the plaintiff sued the defendants, claiming damages for breach of the implied warranty or condition under s. 14, sub-s. 1, of the Sale of Goods Act, 1893.

The claim failed, Scott, L.J., saying (4): "It was a sale by " the Buckland Company [the defendants] to the hire-purchase " company. The property passed to them on the terms that they " [the defendants] would get paid by the hire-purchase company.

(1) (1688) Comb. 142.
(2) (1700) 1 Salkeld 210.
(3) [1941] 1 All E. R. 269.
(4) Ibid. 273.

**2 K. B.**  KING'S BENCH DIVISION.  857

1951
———
SHANKLIN
PIER LD.
v.
DETEL PRO-
DUCTS LD.
———
McNair, J.

"Therefore, the claim against them [the defendants] for damages "for breach of warranty is a cause of action unsupported by any "contract of sale which would carry it". This judgment can readily be understood in relation to its subject-matter, namely, an implied statutory condition or warranty arising out of a contract of sale, and one can well understand it being said that, as there was no contract of sale between the plaintiff and defendants, no such implied warranty or condition could arise between them; but I do not read it as affording any support for the wider proposition for which counsel for the defendants contended.

The same view of the effect of this judgment as I have indicated was, I think, taken by Jones, J., in *Brown* v. *Sheen and Richmond Car Sales Ld.* (5), a case in which the judge entered judgment against a motor car dealer on an express oral warranty given in relation to the purchase of a car, the transaction, as in *Drury's* case (6), being carried through with the assistance of a finance company. It was here sought to distinguish *Brown's* case (5) on the ground that in the statement of facts in the report in All England Law Reports (7) it was stated that "the plaintiff agreed to buy" the motor car from the defendants, but the pleadings in *Brown's* case (5), which I have examined, lend no support for suggesting that in that case there was in any legal sense any agreement to sell between the plaintiff and the defendants. The judgment of Hilbery, J., in *Parker* v. *Oloxo Ld.* (8) also, I think, negatives the defendants' submission in the present case.

Accordingly, in my judgment the plaintiffs are entitled to recover against the defendants damages for breach of the express warranties alleged.

*Judgment for the plaintiffs.*

Solicitors: *Cripps, Harries, Hall & Co.; P. H. Brashier & Co.*

R. P. C.

(5) [1950] W. N. 316; [1950] 1 All E. R. 1102.
(6) [1941] 1 All E. R. 269.
(7) [1950] 1 All E. R. 1102, 1103.
(8) [1937] 3 All E. R. 524, 529.

———