# Exhibit 6

Case 1:15-cv-09056-VM Document 38-6 Filed 12/01/16 Page 2 of 17

*In re* WEBB.

BARCLAYS BANK, LIMITED *v.* WEBB.

FARWELL J.

1941
Feb. 18.

*Assurance—Infant children—Policies on lives—Premiums paid by father—Rights of father till majority of children—Children solely interested on majority—Policies to continue until majority on death of father before it having paid all premiums due—Death of father while children infants—Policies to be held in trust for children.*

Where a person takes out, for or on behalf of an infant, a policy of assurance on which he (the assured) pays the premiums, the answer to the question whether the moneys secured on the policy are the property of the assured (or, if he is dead, of his estate) or must be held in trust for the infant, depends in each case on the construction of the policy. Unless the policy shows clearly that the assured intended to constitute himself a trustee for the infant and did so, the assured or his estate is entitled to them.

A father took out on the lives of his two children policies of assurance describing him as "the grantee" and as wishing to effect assurance "on behalf and for the benefit of the person "therein named as ' the life assured,' " namely, the child. Each policy provided that, if the premiums were paid, the sum assured would be paid to the child's personal representatives on proof of the child's death at or over twenty-one years of age, and gave to the father, his personal representatives or assigns, certain powers, before the child's twenty-first birthday, to terminate, continue or surrender the policy, to agree to its being modified or varied, and to assign or charge it. On the child's twenty-first birthday, all the father's rights and powers were to cease, and the child was to become solely interested in and entitled to deal with the policy, subject to any assignment of or charge on it still subsisting. If the child died before the age of twenty-one years, whoever had paid the premiums was to be entitled to recover a part of them: and if the father, having paid all premiums due, died before the child reached that age, the policy was to remain in force until, but not including, the child's twenty-first birthday.

The father predeceased both children while they were infants, having paid all premiums due :—

*Held,* that the form of the policies established a trust in favour of the infants against the father, and showed that he was contracting wholly on their behalf and for their benefit. The policies were therefore held by him at his death, and thereafter by the trustee of his will, in trust for the respective infants.

*In re Engelbach's Estate* [1924] 2 Ch. 348, and *In re Sinclair's Life Policy* [1938] Ch. 799, considered and distinguished.

ADJOURNED SUMMONS.

This summons was issued to determine whether policies of assurance effected by a father on the lives of his two infant

FARWELL J.
1941
Webb, *In re*.
Barclays Bank, Ld.
*v.*
Webb.

children, whom he predeceased, formed part of his estate at his death, or had been held by him, and so were held by the trustee of his will, on trust for the two children.

Henry Bertram Law Webb (hereinafter called "the father") took out policies of assurance on the lives of each of his two infant children, Thomas Roderick Webb and Theresa Helen Webb (hereinafter together called "the children"). The policies described the father as "the grantee," and as wishing to effect assurance "on behalf and for the benefit of "the person herein named as 'the life assured,'" namely, the child. Each policy provided that, if the premiums had been paid, the sum assured would be paid to the personal representatives of the child on proof that the child had died at or over the age of twenty-one years: and each policy gave to the father, his personal representatives or assigns powers, before the twenty-first birthday of the child, to terminate, continue or surrender the policy, to agree to its being modified or varied, or to assign or charge it. On the twenty-first birthday of the child, the rights and powers of the father, his personal representatives or assigns were to cease, and the child was to become solely interested in and entitled to deal with the policy subject to any assignment or charge on it still subsisting. If the child died before reaching the age of twenty-one years, whoever had paid the premiums was to be entitled to recover a part of them: and if the father, having paid all premiums due, died before the child reached that age, the policy was to remain in force until, but not including, the twenty-first birthday of the child.

The father died on August 19, 1939, having paid all premiums due on the policies. At that date both the children were infants.

By this summons, Barclays Bank, Ld. (hereinafter called "the bank") which was the executor of the father's will, dated February 8, 1938, asked whether the policies formed part of his estate or were held by him at his death, and so by the bank at the date of this summons, in trust for the two children respectively.

*E. M. Winterbotham* for the bank.

*Lindsay M. Jopling* for the widow and others interested in residue. In this case the Court is faced with a familiar problem. The law is clear that a stranger to a contract cannot, as a rule, sue upon it. English law knows nothing of jus quaesitum tertio arising by way of contract. One exception is where one party entering into the contract is trustee for another. The policy in the present case makes no mention of a trust: the policy purported to be taken out "on behalf of" a child under one year of age. There is no real distinction between this case and cases in which a policy was taken out "for the "benefit of" a child or "for" a child.

FARWELL J.

1941

WEBB, *In re.*
BARCLAYS
BANK, LD.
*v.*
WEBB.

The cases which turn on s. 11 of the Married Women's Property Act, 1882, are of no assistance in this case. That section provides that moneys payable under a policy of assurance effected by a husband or wife on his or her life expressly for the benefit of the other party to the marriage, or of the children, or of the other party and of the children or some of them, shall not form part of the estate of the insured.

The earlier cases are discussed in *In re Sinclair's Life Policy* (1). In that case the child was called the nominee and the policy moneys were to be payable to the child. It was held that no trust was created. It was also held that the question was not affected by s. 56, sub-s. 1, of the Law of Property Act, 1925, which provides for the taking of interests in property by persons who are not parties to the instruments creating the interests. In *Cleaver v. Mutual Reserve Fund Life Association* (2) the policy was taken out for the benefit of the wife. The effect of that provision, apart from the Married Women's Property Act, 1882, was stated by Lord Esher M.R. (3) and by Fry L.J. (4).

In *In re Engelbach's Estate* (5) these statements were followed and applied by Romer J. The policy in that case was taken out "for" the child and the moneys were to be payable to the child. It was held that no trust was created. There have been two cases since *In re Sinclair's Life Policy* (1). In *In re*

(1) [1938] Ch. 799.
(2) [1892] 1 Q. B. 147.
(3) Ibid. 151, 152.
(4) [1892] 1 Q. B. 157.
(5) [1924] 2 Ch. 348.

FARWELL J.

1941

WEBB, *In re.*
BARCLAYS BANK, LD.
*v.*
WEBB.

*Foster* (1) before Crossman J. it was again held that s. 56 of the Law of Property Act, 1925, does not affect the question and also that there was no trust. *In re Gordon* (2), decided by Simonds J., turned on the rules of the friendly society and is really of no assistance in the present case.

*J. Leonard Stone* for the children. This is certainly not a familiar form of policy. It could almost be believed that the draftsman of it had in mind the form of policy considered in *In re Engelbach's Estate* (3). In the present case, not only is everything done "on behalf of" the child, but the whole scheme of the policy itself works as if it was a policy belonging to the child and not to the father. The case is distinguishable from *In re Engelbach's Estate* (3) and *In re Foster* (1). In the present case the special conditions are of supreme importance, and constitute a complete scheme which is "on behalf" as well as "for the benefit" of the child. The policy provides that the father may do certain things, but only "on behalf of" the child, and that all his rights shall cease as soon as the child attains the age of twenty-one years. The present case is like no other that has been reported. It answers the problem raised by the Court in *In re Foster* (1). The policy in the present case provides that all the things can be done only "on behalf of" the child. None of the other cases go any further than stating that the policy was taken out either "for the benefit of" or "to be paid to" the infant. There never has been a case which went to the length to which this case goes. *In re Gordon* (2), a slightly different case in which the rules of a friendly society were invoked, shows that all the circumstances of each case must be examined in order to discover whether the contracting party has really entered into the contract on his or her own behalf, or is a trustee for the benefit of someone else.

*Lindsay M. Jopling* in reply (by invitation of the Court). Romer J. in *In re Engelbach's Estate* (4) certainly says that the policy in that case was not taken out on behalf of or as agent for the child. But he must not be taken to mean that

(1) [1938] 3 All E. R. 357.
(2) [1940] Ch. 851.
(3) [1924] 2 Ch. 348.
(4) Ibid. 355.

"on behalf of" has the same effect as "in trust for" or that a policy taken out by a person purporting to be an agent affords an exception to the rule. The question is purely one of construction of this document. It would have been very easy to use the words "in trust" if that had been the intention: on the construction of this document no trust is declared.

FARWELL J.
1941
WEBB, *In re.*
BARCLAYS
BANK, LD.
*v.*
WEBB.

FARWELL J. This summons raises a question on the true construction and effect of certain policies of assurance. The parent who effected these policies made a will dated February 8, 1938, and died on August 19, 1939. By the will he appointed Barclays Bank, Ld., his executor and trustee and he devised the whole of his residuary estate to the bank on the usual trusts for sale and conversion and directed the bank to pay out of the proceeds of sale his funeral and testamentary expenses, debts, etc., and then on trust to pay the income to his wife during her life, and from and after her death "upon "trust to pay the income thereof to all and every my children "or my child (if only one) living at my death who being sons "or a son attain the age of twenty-one or being daughters or "a daughter attain that age or marry and if more than one "in equal shares." There follow certain provisions with regard to the children's shares, and in the event of no child of the testator becoming entitled or of the trusts failing in respect of the children there is a trust in favour, as to capital and income, of the child or children of a brother of the testator. Finally the ultimate trust, if all the others fail, is in favour of the Pension Fund of the Incorporated Society of Authors, Playwrights and Composers. Nothing in the will causes any difficulty and no question of construction of the will arises.

The question which I have to determine arises in this way. The testator left him surviving his widow (who is a defendant to this summons) and two children, Thomas Roderick Webb, born on December 5, 1933, and Theresa Helen Webb, born on December 24, 1935. During his lifetime the testator took out two policies, copies of which are produced, on the lives of his said two children. He paid all the premiums on the

FARWELL J.

1941

Webb, *In re.*
Barclays Bank, Ld.
*v.*
Webb.

policies down to the time of his death: and the question now arises whether the moneys secured by the policies are the property of the respective infants, that is to say, whether the infant named in each policy is entitled to the money assured, or whether the money which is or will be payable under them is the property of the testator and forms part of his estate.

Questions of this kind have been before the Court more than once recently, and in all the cases known to me concerning a policy of this kind taken out by a father or other person on behalf of an infant it has been held that the mere fact that a person takes out a policy for or on behalf of an infant does not constitute that person a trustee for the infant, and that (apart from some special provisions in the policy pointing to the conclusion that the insurance money was to be a fund to which the infant was to be entitled and that, accordingly, the assured and the assured's estate would receive any money under it merely as trustee for the infant) the infant for whom the policy was taken out has no title to the money. I think that the foundation of those decisions was a case, in the Court of Appeal, of *Cleaver* v. *Mutual Reserve Fund Life Association* (1). That case arose out of the somewhat notorious death of Mr. James Maybrick with the resulting charge of murder against his wife. The headnote is: "The "executors of a person who has effected an insurance on his "life for the benefit of his wife can maintain an action on the "policy notwithstanding the fact that the death of the insured "was caused by the felonious act of the wife. The trust "created by the policy in favour of the wife under the Married "Women's Property Act, 1882, s. 11, having become incapable "of being performed by reason of her crime, the insurance "money forms part of the estate of the insured; and as between "his legal representatives and the insurers no question of "public policy arises to afford a defence to the action." I do not think it necessary for me to refer in any detail to this case but the result of it was that the representatives of the husband became entitled to recover the money. Subsequently a case came before Romer J. (as he then was) in which he cited the

(1) [1892] 1 Q. B. 147.

Case 1:15-cv-09056-VM Document 38-6 Filed 12/01/16 Page 8 of 17

judgment of Fry L.J. in the *Maybrick* case (1). That was In re *Engelbach's Estate* (2), which is not unlike the present case. The headnote is: "An endowment policy taken out "by a person in his own name for the benefit of his daughter, "to mature on her attaining a specified age, creates no legal "estate in the daughter, and she cannot sue on the contract, "nor does the assured thereby constitute himself a trustee for "his daughter of the policy and of the moneys payable there- "under. If, therefore, the assured dies before the policy "matures, the policy moneys belong, not to the daughter, but "to the estate of the assured, and must be paid to his "executors." Romer J. in that case begins his judgment by saying: "A very similar question to the present one arose in "*Cleaver* v. *Mutual Reserve Fund Life Association* (3)". Then he continues: "Before considering that case, however, I may "say this: the daughter could of course successfully claim "these moneys if she had at the death of the testator a legal "right to them, that is to say, a right at law to recover the "moneys from the society, because, although that legal right "might have been given to her purely voluntarily by her "father, still there would be no resulting trust in favour of "the father, seeing that there would be a presumption of "advancement. The only other ground upon which the "daughter could claim these moneys as against the executors "of her father would be that the father in some way "constituted himself a trustee for the daughter of the policy "and of the moneys payable thereunder." Then Romer J. proceeds to consider portions of the judgments of Lord Esher M.R. and of Fry L.J. in the *Maybrick* case (1) and he comes to the conclusion that in the case before him no trust was created in favour of the daughter. He says: "It follows "from that "—that is, the citation from Fry L.J.—"that in "the present case the daughter could not have enforced this "contract in her own name against the insurance company, "and that she was an absolute stranger to the contract, which "could have been put an end to by both of the contracting

FARWELL J.

1941

WEBB, *In re.*
BARCLAYS BANK, LD.
*v.*
WEBB.

(1) [1892] 1 Q. B. 147.
(2) [1924] 2 Ch. 348, 351, 353.
(3) [1892] 1 Q. B. 147.

232 · CHANCERY DIVISION. [1941]

FARWELL J.:

1941

WEBB, *In re.*
BARCLAYS BANK, LD.
v.
WEBB.

"parties without her assent. It also follows from that "decision that the mere fact that the policy moneys are "expressed to be paid to somebody other than the assured "does not make the assured a trustee of the policy or of the "policy moneys for the person so nominated. I might mention "that that case was followed in somewhat similar circumstances "by Eve J. in *In re Burgess' Policy*" (1). Then he refers to the decision of Joyce J. in *In re a Policy No. 6402 of the Scottish Equitable Life Assurance Society* (2) and says : (3) "In "that case a policy of insurance had been taken out by A on "his own life 'for behoof of B,' and the policy provided that "B should be entitled to receive the policy moneys on A's "death. It was held that the legal personal representatives "of B, who received the moneys on the death of A, were "trustees of the policy moneys for the legal personal "representatives of A. The actual decision, therefore, is in "accordance with the two cases I have already referred to. "But the grounds on which Joyce J. based his decision were "these. He treated B as the person who had the right at "law to enforce the policy and give a receipt for the policy "moneys but held that, being a stranger to A and there "being no consideration for his so being put into possession "of this legal right to enforce the policy, B would hold the "policy moneys when received as trustee for A in accordance "with the doctrine of *Dyer v. Dyer*" (4). Then the learned judge proceeds : " Coming therefore as I do to the conclusion "that the daughter did not acquire any interest at law or in "equity to the policy or the policy moneys merely by reason "of the fact that the policy moneys are expressed to be "payable to her, I still have to consider whether the testator "ever constituted himself a trustee for the daughter in some "other way. It appears that in the proposal form which the "father had to fill up and sign he inserted opposite the words " 'Full name and description of the Proposer' the words " 'Edward Coryton Engelbach, for his daughter Mary Noel,

---

(1) (1915) 113 L. T. 443.
(2) [1902] 1 Ch. 282.
(3) [1924] 2 Ch. 348, 354.

(4) (1788) 2 Cox. 92, 93 ; 1 Watk. Copy 216.

"'aged one month,' and it is said that by that means he
"constituted himself a trustee of the moneys payable under
"the policy. But that point is also, I think, concluded by
"the authority of *Cleaver* v. *Mutual Reserve Fund Life
"Association* (1). In the passage in the judgment of Fry L.J.,
"part of which I read just now, he says: 'By the proposal
"'which was made part of the policy he' (that is Mr. Maybrick)
"'expressed the policy to be effected for the benefit of his
"'wife,' and he came to the conclusion that, apart from s. 11
"of the Married Women's Property Act, 1882, that fact would
"not have constituted Mr. Maybrick a trustee of the policy
"or the policy moneys for his wife. The only distinction that
"I can see between that case and the present one is this.
"In the proposal form Mr. Engelbach, the father, did not say
"that he was effecting this policy for the benefit of his daughter
"but said that he was making the proposal for his daughter.
"It is sought from that to draw the inference that the father
"was, by this proposal form, stating that he was entering into
"the contract on behalf of his daughter, not merely for her
"benefit, but was making the whole contract on her behalf.
"I cannot think that that is the true construction of this
"proposal form. It appears to me extraordinarily unlikely
"that a father would purport to enter into such a contract as
"this as agent for his daughter who was one month old, a
"contract which involved, if the father and the daughter were
"to get any benefit out of it, the continuous payment of a
"premium by the father. I think that the words of the
"proposal really mean no more in this case than the proposal
"made in the *Maybrick* case (1) and that the father entered
"into this contract in his own name and on his own behalf but
"for the benefit of his daughter." Then he says that he feels
constrained by the authorities to decide against the contention
of the daughter. That decision was followed by myself in the
case of *In re Sinclair's Life Policy* (2) to which I do not propose
to refer at any great length. In that case a man took out
an endowment policy in his own name for the benefit of his
godson to mature in seventeen years. The person who took

FARWELL J.

1941

WEBB, *In re.*
BARCLAYS
BANK, LD.
v.
WEBB.

(1) [1892] 1 Q. B. 147.    (2) [1938] Ch. 799.

FARWELL J.

1941

WEBB, *In re.*
BARCLAYS BANK, LD.
*v.*
WEBB.

out the policy died before the godson had attained the necessary age. Thereupon the question arose whether the moneys payable under the policy belonged to the person who had taken it out or to the godson. Following the decision of Romer J. in *In re Engelbach's Estate* (1), I came to the conclusion that there was nothing in the case sufficient to create a trust in favour of the godson and that, consequently, the assured, although no doubt he intended to benefit his godson, had not done sufficient to constitute himself a trustee for him, and that, accordingly, there was nothing which could entitle the godson to the benefit of the policy moneys, which belonged to the person who had effected the policy and had paid the premiums. That, I think, really was a case which entirely followed, in principle, the decision of Romer J. in the earlier case. I could not in that case, any more than Romer J. could in his case, find in the terms of the policy or elsewhere anything creating the assured a trustee for the infant. Since then there has been a case of *In re Foster* (2), before the late Crossman J., and there has been a decision by Simonds J. in *In re Gordon* (3), but the latter turned upon rather different considerations.

In my judgment, the whole question in these cases depends upon the true construction of the particular policy. I think that one must assume that, unless there is in the policy something establishing reasonably clearly that the assured was in fact constituting and intending to constitute himself a trustee for the infant of the assurance moneys, the infant is not, and the personal representatives of the deceased are, entitled to the moneys payable. Again, I think that the cases show that the mere fact that a policy is taken out for or on behalf of an infant is not alone sufficient to constitute such a trusteeship. It is for a person to make clear by the language used that he is constituting himself a trustee, and the absence of any clear words to that effect render it difficult for the infant to establish a trust on his behalf. But the policy which I have to consider is one in terms which are quite

(1) [1924] 2 Ch. 348.
(2) [1938] 3 All E. R. 357.

(3) [1940] Ch. 851.

Case 1:15-cv-09056-VM   Document 38-6   Filed 12/01/16   Page 12 of 17

different from any policy that I have seen before, and there are provisions in it which I think differentiate it from the policy which I had to consider, for instance, in *In re Sinclair's Life Policy* (1), or which Romer J. had to consider in *In re Engelbach's Estate* (2). In the proposal for the policy, under "Particulars respecting the child to be assured," the name of the child is given and the address and the place and date of birth. Then follow certain particulars with regard to the health of the father and mother, and certain questions are answered. Then under "Particulars respecting the person "making the proposal" there follow the name of the father, his address, his occupation, and the relationship to life proposed to be assured, which is stated to be "Father." Then "At "what age (21 or 25) are options to commence." Then after that is stated the annual premium, 47*l*. 11s. 8*d*. Then there is a note: "If it is desired that payment of premiums falling "due before the child attains age 21 or 25 shall cease in the "event of death of proposer, the particulars indicated overleaf "should be furnished." Then follows a declaration which I need not read. Then on the back of the proposal form there are certain facts stated with regard to the health of the father and mother and certain other questions, which I do not think I need read. Then I turn to the policy. It begins in this way: "Whereas the person named in the Schedule hereto "as ' the grantee,' being desirous of effecting with the Friends' "Provident and Century Life Office (herein called ' the Office ') "the assurance described in the said Schedule on the life on "behalf and for the benefit of the person therein named as "' the life assured,' has delivered to the Office the proposal "and declaration mentioned in the said Schedule as the basis "of the Contract of Assurance herein contained." It is to be noticed that the father is the person who is described as "the "grantee," and the grantee is stated to be desirous of effecting an assurance " on the life on behalf and for the benefit of the "person therein named as ' the life assured ' "—that is the child. Then follow the provisions of the policy: "In con- "sideration of the payment to the Office of the first premium

FARWELL J.

1941

WEBB, *In re*.
BARCLAYS BANK, LD.
*v.*
WEBB.

(1) [1938] Ch. 799.          (2) [1924] 2 Ch. 348.

FARWELL J.

1941

WEBB, *In re.*
BARCLAYS BANK, LD.
*v.*
WEBB.

"and of the subsequent premiums (if any) to be paid as provided in the said Schedule the Office will pay the sum assured mentioned in the said Schedule to the person or persons to whom the same is therein expressed to be payable upon proof satisfactory to the Directors of the Office of (a) the happening of the event set forth in the said Schedule, (b) the title of the person or persons claiming payment; and (c) the age of the life assured if it has not previously been admitted. This assurance shall carry and be subject to the privileges and conditions contained in the Schedule hereto and endorsed hereon (which are to be deemed part of this policy) and is issued under and subject to the Laws and Rules of the Office." I do not think I need read the next paragraph. Then follows a Schedule: "Date of proposal and declaration—28th day of April, 1934. The grantee—"Henry Bertram Law Webb"—giving the address—"on behalf and for the benefit of the life assured." Then the life assured is stated to be, "Thomas Roderick Webb, son of the grantee." The date of birth is again stated. Then follows: "Sum assured—Amount, Six thousand and forty two pounds . . . . Event on which to become payable—The death of the life assured, provided he/she shall die on or after the fifth day of December, 1954 (being the day on which he/she attains the age of 21 years, and herein called 'the life assured's 21st birthday'). To whom payable—The personal representatives or assigns of the life assured, subject to special condition 2 below. Where payable—At the London Head Office." Then follows a statement about the premiums: there are various rates. "Period during which payable—Until the death of the life assured, subject to the special conditions below." Then follows this provision: "Options at age 21. During the thirty days immediately preceding the life assured's 21st birthday and on his/her behalf, the grantee, his personal representatives or assigns, may at his or their option exercised by notice to the Office: (1.) Terminate the assurance as on the day prior to such birthday and receive a payment in cash of 996*l.* 19s." It is to be noticed that the option which is there given is during the

thirty days immediately preceding the life assured's twenty-first birthday, and on his behalf the grantee may terminate the assurance on payment to him of a sum of 996*l*. 19*s*. I think it would be difficult to say, in face of the words " on his behalf," that if the grantee did on behalf of the infant exercise the option and receive that sum he would not receive that sum on behalf of and as trustee for the infant. Then follows this: " or (ii.) Determine that the assurance shall continue as from "such birthday in the form of either an ordinary Whole Life "or an Endowment Assurance for amounts and subject to "payment of premiums as follows." Then follow the payments of annual premiums, to which I need not refer. Then comes: " If such option be not exercised the assurance will "continue in force in accordance with the terms of this policy." Then follows this: " Notwithstanding anything hereinbefore "contained, until (but not including) the life assured's 21st "birthday and on his/her behalf the grantee, his personal "representatives or assigns shall have full power to (i.) sur-"render this policy; or (ii.) agree to any modification or "variation thereof; or (iii.) assign or charge the same by way "of mortgage or security for any sum not exceeding the "surrender value of the policy at the time of such assignment "or charge with interest on such sum, and his or their receipt "for any moneys paid upon or in respect of any such "transaction shall be a good discharge." Again it is to be noticed that the power given to the grantee or his personal representatives in that clause is a power to be exercised on behalf of the infant. " On the 21st birthday of the life "assured (if this policy is still subsisting) all rights and powers "of the grantee, his personal representatives and assigns, "in relation to this policy will cease and the life assured will "become solely interested therein and entitled to deal therewith "subject nevertheless to any such assignment or charge by "way of mortgage or security as aforesaid then affecting the "same." Then there follows a clause which I need not read. Then: " The grantee, his personal representatives or assigns, "may at his or their option on behalf of the life assured convert "this assurance into an assurance for a sum payable in annual

FARWELL J.

1941

WEBB, *In re*.
BARCLAYS
BANK, LD.
*v.*
WEBB.

FARWELL J.

1941

WEBB, *In re.*
BARCLAYS BANK, LD.
*v.*
WEBB.

"instalments as follows"—then follow the instalments. So that, again, the grantee has a power which he can only exercise on behalf of the life assured. Then in clause 6 there is the provision: "If the life assured shall die before his/her 21st "birthday there shall be paid to the grantee, his personal "representatives or assigns, the sum of 40*l*. 5*s*. 8*d*. on account "of each year's premium paid in respect of this policy with "compound interest thereon." In other words, if the infant dies under the age of twenty-one the person who has paid the premiums during that period is entitled to recover a part of those premiums. Clause 7 provides: "If the grantee "shall die before the life assured's 21st birthday and all "premiums becoming due on or before the date of the grantee's "death shall be duly paid, then this policy shall remain in "force until (but not including) the life assured's 21st birthday "without payment of any further premiums for the period "up to (but not including) that day." Then there are certain privileges and conditions, which I do not think it necessary for me to refer to except that in (III.) there is a provision that "If it is desired to discontinue the payment of premiums after "at least two years' premiums have been paid the assurance "will, on application before the expiration of the month of "grace, be exchanged for a fully paid-up assurance provided "the value is sufficient to secure a paid-up assurance for at "least 20*l*." I cannot help feeling that the person who was responsible for the form and language of that policy must have had somewhere at the back of his mind some recollection of the effect of the case before Romer J. It seems to me that the author of this document—whether he succeeded in doing it or not is a different matter—did certainly design a form of policy which he thought would constitute the man who effected the policy a trustee for the infant in question. Of course, I must bear in mind what Romer J. said, that it is unlikely that a person would enter into a contract which bound him to pay premiums on behalf of and as agent for an infant of very tender years, and that observation no doubt applies in the present case; but I cannot help feeling that in this case the form of the policy is intended to do exactly what the policy

in the case before Romer J. and in the other case before myself did not do, that is to say, create a trust in favour of the infant whose life was assured. It is a pity, I think, that, if that was the intention of the parties, it was not quite clearly stated, as it might have been by using the words " as trustee," or similar words. But on the whole I think there is enough in this case to disclose the intention to create a trust. Throughout the policy the grantee is said to be acting on behalf of the infant; the grantee before the infant attains twenty-one is given certain powers to surrender or to agree to modification, etc.; but, again, those powers have to be exercised on behalf of the infant, and, if they are so exercised by, for instance, surrendering the policy, any money so acquired would, it seems to me, belong to the infant and not to the grantee, because that would be a term of the bargain between him and the insurance company on behalf of the infant and, as such, would give the infant, rather than the grantee, the right to the money which resulted. But most striking of all, I think, is the provision that, if the life assured attains the age of twenty-one, then any interest which the grantee had in the policy or the moneys secured under it completely disappears. That the grantee had an interest up to that date I think is plain from this, that should the infant die under twenty-one, the grantee was entitled to recover a portion of the premiums which he had paid, and any money representing the surrender value would, I think, belong to the grantee because he parted with the money required to keep the policy on foot. As soon, however, as the infant attained twenty-one the grantee's interest under the policy, whatever it may have been, ceased and determined once and for all. The future terms then became a matter wholely between the Insurance company and the life assured. I think that the life assured was the person entitled in that event to the money payable under the policy: and if there were any further payments to be made the life assured was the person to make them. It seems to me, when I consider the whole of the terms of this policy, that there is in this case sufficient to do that which I thought the policy

FARWELL J.

1941

WEBB, *In re.*
BARCLAYS BANK, LD.
*v.*
WEBB.

(1) [1938] Ch. 799.

240                     CHANCERY DIVISION.                [1941]

FARWELL J.
1941
WEBB, *In re*.
BARCLAYS BANK, LD.
*v.*
WEBB.

did not do in the case before me of *In re Sinclair's Life Policy* (1), namely, to establish a trust in favour of the infant as against the father, who no doubt effected the policy but did so on behalf of the infant and on the special terms to which I have referred, which I think show that the father was contracting, not on his own behalf or for his own benefit, but wholly on behalf of and for the benefit of the infant. In those circumstances, this case is, in my judgment, distinguishable from the case before Romer J. and the earlier decision of my own; and I think that in this case it is right to make a declaration that the two policies were held by the testator at his death and are now held by the plaintiff bank in trust for the two infant defendants respectively.

The costs will be taxed as between solicitor and client and paid out of the estate.

Solicitors: *Field, Roscoe & Co.*

K. R. A. H.