# Exhibit 7

[774] made by the Act a charge on the fund, which they clearly are not. My order will not prejudice any claim which the party may have and which he may bring forward in a proper way. If the Court has jurisdiction to entertain any question of costs, about which I say nothing, it would, on a proper case being made, put it in a course of inquiry; but there is no ground whatever for engrafting such an inquiry upon the order to be made on the present application.

The counsel for the Appellant then submitted that, as the Respondent had improperly opposed the application below, she was not entitled to the costs of it.

THE LORD CHANCELLOR [Cottenham]. A party served with a petition does not forfeit his right to costs by his counsel, at the hearing, raising a claim unsuccessfully.

### TULK v. MOXHAY. Dec. 22, 1848.

[S. C. 1 Ha. & Tw. 105; 18 L. J. Ch. 83; 12 L. T. (O. S.), 469; 13 Jur. (O. S.), 89. See *Child v. Douglas*, 1854, Kay, 570. Applied, *Wilson v. Hart*, 1866, L. R. 1 Ch. 468. Followed, *Western v. Macdermott*, 1866, L. R. 2 Ch. 74; *Morland v. Cook*, 1868, L. R. 6 Eq. 265. See *Keates v. Lyon*, 1869, L. R. 4 Ch. 222; *Catt v. Tourle*, 1869, L. R. 4 Ch. 656; *Leech v. Schweder*, 1874, L. R. 9 Ch. 465 n.; *Aspden v. Seddon*, 1876, 1 Ex. D. 502; *Fairclough v. Marshall*, 1878, 4 Ex. D. 46; *Cooke v. Chilcott*, 1876, 3 Ch. D. 700. Followed, *Richards v. Revitt*, 1877, 7 Ch. D. 226; *Bewley v. Atkinson*, 1879, 13 Ch. D. 295. See *Greaves v. Tofield*, 1880, 14 Ch. D. 573. Followed, *Patman v. Harland*, 1881, 17 Ch. D. 359. See *London & South-Western Railway Company v. Gomm*, 1882, 20 Ch. D. 562. Explained, *Haywood v. Brunswick Building Society*, 1881, 8 Q. B. D. 403. Applied, *London, Chatham, &c., Railway Company v. Bull*, 1882, 47 L. T. 415. Doctrine limited, *Austerberry v. Oldham Corporation*, 1885, 29 Ch. D. 750. Distinguished, *Hall v. Ewin*, 1887, 37 Ch. D. 78. See *Sheppard v. Gilmore*, 1887, 57 L. J. Ch. 11; *Mackenzie v. Childers*, 1889, 43 Ch. D. 278; *Stuart v. Diplock*, 1889, 43 Ch. D. 350; *Clegg v. Hands*, 1890, 44 Ch. D. 504. Followed, *John Brothers Abergarw Brewery Company v. Holmes* [1900], W. N. 196. Personal covenants outside principle, *Formby v. Barker* [1903], 2 Ch. 539. See also, 2 Wh. and T., L. C. (7th Ed.), p. 215, note (t) to *Le Neve v. Le Neve*, and cases there collected.]

A covenant between vendor and purchaser, on the sale of land, that the purchaser and his assigns shall use or abstain from using the land in a particular way, will be enforced in equity against all subsequent purchasers with notice, independently of the question whether it be one which runs with the land so as to be binding upon subsequent purchasers at law.

In the year 1808 the Plaintiff, being then the owner in fee of the vacant piece of ground in Leicester Square, as well as of several of the houses forming the Square, sold the piece of ground by the description of "Leicester [775] Square garden or pleasure ground, with the equestrian statue then standing in the centre thereof, and the iron railing and stone work round the same," to one Elms in fee: and the deed of conveyance contained a covenant by Elms, for himself, his heirs, and assigns, with the Plaintiff, his heirs, executors, and administrators, "that Elms, his heirs, and assigns should, and would from time to time, and at all times thereafter at his and their own costs and charges, keep and maintain the said piece of ground and square garden, and the iron railing round the same in its then form, and in sufficient and proper repair as a square garden and pleasure ground, in an open state, uncovered with any buildings, in neat and ornamental order; and that it should be lawful for the inhabitants of Leicester Square, tenants of the Plaintiff, on payment of a reasonable rent for the same, to have keys at their own expense and the privilege of admission therewith at any time or times into the said square garden and pleasure ground."

The piece of land so conveyed passed by divers mesne conveyances into the hands of the Defendant, whose purchase deed contained no similar covenant with his vendor: but he admitted that he had purchased with notice of the covenant in the deed of 1808.

The Defendant having manifested an intention to alter the character of the square garden, and asserted a right, if he thought fit, to build upon it, the Plaintiff, who

Case 1:15-cv-09056-VM   Document 38-7   Filed 12/01/16   Page 3 of 4

still remained owner of several houses in the square, filed this bill for an injunction; and an injunction was granted by the Master of the Rolls to restrain the Defendant from converting or using the piece of ground and square garden, and the iron railing round the same, to or for any other purpose than as a [776] square garden and pleasure ground in an open state, and uncovered with buildings.

On a motion, now made, to discharge that order,

Mr. R. Palmer, for the Defendant, contended that the covenant did not run with the land, so as to be binding at law upon a purchaser from the covenantor, and he relied on the dictum of Lord Brougham C. in *Keppell* v. *Bayley* (2 M. & K. 547), to the effect that notice of such a covenant did not give a Court of Equity jurisdiction to enforce it by injunction against such purchaser, inasmuch as "the knowledge by an assignee of an estate, that his assignor had assumed to bind others than the law authorised him to affect by his contract—had attempted to create a burthen upon property which was inconsistent with the nature of that property, and unknown to the principles of the law—could not bind such assignee by affecting his conscience." In applying that doctrine to the present case, he drew a distinction between a formal covenant as this was, and a contract existing in mere agreement, and requiring some further act to carry it into effect; contending that executory contracts of the latter description were alone such as were binding in equity upon purchasers with notice; for that where the contract between the parties was executed in the form of a covenant, their mutual rights and liabilities were determined by the legal operation of that instrument, and that if a Court of Equity were to give a more extended operation to such covenant, it would be giving the party that for which he had never contracted. He admitted, indeed, that the decisions of the Vice-Chancellor of England in [777] *Whatman* v. *Gibson* (9 Sim. 196) and *Schreiber* v. *Creed* (10 Sim. 35) were not reconcileable with that doctrine; but he referred to the present Lord Chancellor's order, on appeal, in *Mann* v. *Stephens* (15 Sim. 379), as apparently sanctioning it by the liberty there given to the Plaintiff to bring an action, from which it was to be inferred that his Lordship thought that the right of the Plaintiff to relief in equity depended upon, and was commensurate with, his right of action upon the covenant at law.

THE LORD CHANCELLOR [Cottenham], (without calling upon the other side). That this Court has jurisdiction to enforce a contract between the owner of land and his neighbour purchasing a part of it, that the latter shall either use or abstain from using the land purchased in a particular way, is what I never knew disputed. Here there is no question about the contract: the owner of certain houses in the square sells the land adjoining, with a covenant from the purchaser not to use it for any other purpose than as a square garden. And it is now contended, not that the vendee could violate that contract, but that he might sell the piece of land, and that the purchaser from him may violate it without this Court having any power to interfere. If that were so, it would be impossible for an owner of land to sell part of it without incurring the risk of rendering what he retains worthless. It is said that, the covenant being one which does not run with the land, this Court cannot enforce it; but the question is, not whether the covenant runs with the land, but whether a party shall be permitted to use the land in a manner inconsistent [778] with the contract entered into by his vendor, and with notice of which he purchased. Of course, the price would be affected by the covenant, and nothing could be more inequitable than that the original purchaser should be able to sell the property the next day for a greater price, in consideration of the assignee being allowed to escape from the liability which he had himself undertaken.

That the question does not depend upon whether the covenant runs with the land is evident from this, that if there was a mere agreement and no covenant, this Court would enforce it against a party purchasing with notice of it; for if an equity is attached to the property by the owner, no one purchasing with notice of that equity can stand in a different situation from the party from whom he purchased. There are not only cases before the Vice-Chancellor of England, in which he considered that doctrine as not in dispute; but looking at the ground on which Lord Eldon disposed of the case of *The Duke of Bedford* v. *The Trustees of the British Museum* (2 My. & K. 552), it is impossible to suppose that he entertained any doubt of it. In the case of *Mann* v. *Stephens* before me, I never intended to make the injunction depend upon

the result of the action : nor does the order imply it.  The motion was, to discharge an order for the commitment of the Defendant for an alleged breach of the injunction, and also to dissolve the injunction.  I upheld the injunction, but discharged the order of commitment, on the ground that it was not clearly proved that any breach had been committed ; but there being a doubt whether part of the premises on which the Defendant was proceeding to build was locally situated within what was called the Dell, on which [779] alone he had under the covenant a right to build at all, and the Plaintiff insisting that it was not, I thought the pendency of the suit ought not to prejudice the Plaintiff in his right to bring an action if he thought he had such right, and, therefore, I give him liberty to do so.(1)

With respect to the observations of Lord Brougham in *Keppell v. Bailey,* he never could have meant to lay down that this Court would not enforce an equity attached to land by the owner, unless under such circumstances as would maintain an action at law.  If that be the result of his observations, I can only say that I cannot coincide with it.

I think the cases cited before the Vice-Chancellor and this decision of the Master of the Rolls perfectly right, and, therefore, that this motion must be refused, with costs.

(1) *Quære,* whether, if this was the object, an issue ought not to have been directed, as an action would depend not merely on the issue of fact, which was alone in dispute, but also upon whether the covenant ran with the land.  It is clear, however, from the form of the order, that the injunction was not considered to depend upon the action ; for if that had been the case, the Plaintiff would have been ordered, and not merely left at liberty, to bring an action.  See *Spottiswoode* v. *Clarke, antè,* p. 158.

[780]  STEELE *v.* PLOMER.  *Jan.* 18, 1849.

An objection of mere form, not going to the substance of the case, should be taken speedily ; for if a party, being aware of such objection, allows his adversary to take consequential proceedings without noticing it, he will not be allowed afterwards to raise it.

The bill was filed against Mr. Plomer and his wife, and two other persons who were out of the jurisdiction, for the purpose of enforcing a charge upon the separate estate of Mrs. Plomer : and a *subpœna* against Mr. and Mrs. Plomer having been duly served on Mr. Plomer, an appearance was entered for both, on the 17th of May 1848.  But at an interview which took place on the 25th of May, between the clerk of the Plaintiff, who, being a solicitor, conducted the cause in person, and the solicitor of Mr. Plomer, the latter stated that the entering of the joint appearance was a mistake on the part of his clerk, his instructions having been to enter an appearance for Mr. Plomer only : whereupon the Plaintiff's clerk consented to the appearance being altered by striking out the name of Mrs. Plomer, which was accordingly done. The terms upon which that consent was given were the subject of contradictory affidavits, the Defendant's solicitor stating that the only stipulation made by the Plaintiff's clerk was, that the transaction should be kept secret from his employer, while the Plaintiff's clerk stated that it was part of the arrangement that an appearance should be entered for Mrs. Plomer by the Plaintiff, under the 29th Order of May 1845.  In point of fact, such appearance was entered for her upon an affidavit stating that a *subpœna* against her had been served upon Mr. Plomer personally.  And the Plaintiff, by a letter of the 1st of June, informed the Defendant's solicitor that that had been done, and in a subsequent letter of the 16th of August he stated that he had issued an attachment against Mr. [781] Plomer for want of an answer from him and his wife, and that, unless the answer were filed immediately, the attachment would be put in force.  No answer, however, having been filed, the attachment was put in force ; and the return being *non est inventus,* a writ of sequestration issued on the 8th of December 1848, and was executed against Mr. Plomer's property on the 30th of December.

In addition to the affidavits, the substance of which is stated above, there was one