# ReedSmith

**Steven Cooper**
Direct Phone: +1 212 205 6027
Email: scooper@reedsmith.com

Reed Smith LLP
599 Lexington Avenue
New York, NY 10022-7650
Tel +1 212 521 5400
Fax +1 212 521 5450
reedsmith.com





February 13, 2017

**Via Hand Delivery**

The Honorable Victor Marrero
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2/14/17

**Re: ED Capital, LLC & ED Capital Management, LLC v. Bloomfield Investment Resources Corp., et al., Index No. 15-cv-9056 (VM)**

Dear Judge Marrero:

    We write on behalf of defendants Bloomfield Investment Resources Corp. ("Bloomfield"), Reuben Brothers Resources Group, RB Resources Limited, and Reuben Brothers Limited (collectively, the "Defendants") in the above-referenced action in furtherance of the parties' telephone conference with Your Honor on January 30, 2017 to identify the deficiencies in Plaintiffs' First Amended Complaint filed on January 17, 2017.

    *First*, Plaintiffs are not parties to the Subscription Agreement and Private Placement Memorandum, but allege that they have a right to enforce those documents pursuant to the collateral contract doctrine under Cayman Islands law. *See* First Amended Complaint ¶¶ 75, 82. However, Plaintiffs have no legitimate challenge to Defendants' expert on Cayman Islands law who concluded that Plaintiffs cannot pursue claims against the Defendants, which have, at their core, reliance on any terms of the Subscription Agreement and the Private Placement Memorandum.[1] Also, for the collateral contract doctrine to apply, Plaintiffs would need to show that Bloomfield and Plaintiffs entered into a separate contract, the consideration for which was the making of the Subscription Agreement. *See Al Sadik v. Investcorp Bank BSC and Five Others* [2012 (1) CILR 451] at paragraph 18. Plaintiffs seek to have the opposite apply in alleging that Bloomfield "entered into the Subscription Agreement as consideration for the collateral contract whereby Plaintiffs promised to manage and invest the funds, *as set forth and described in the Memorandum and the documents referenced therein*."[2] That also does not constitute a collateral contract – Plaintiffs rely *only* on alleged promises in the Subscription Agreement and Private Placement Memorandum under which they have no enforcement rights. Plaintiffs do not allege any facts showing that Bloomfield intended to create *any* legal relationship with Plaintiffs, or that the fact that Plaintiffs acted as the fund manager and advisor had anything to do with Bloomfield's execution of the Subscription Agreement to which Plaintiffs are not parties. *See Al Sadik v. Investcorp*

---

[1] *See* Defendants' Memorandum of Law in Support of Defendants' Motion to Dismiss the Complaint (the "Motion") and the Declaration of Laura Hatfield (the "Hatfield Declaration") both filed on December 1, 2016. Capitalized terms herein that are not defined shall have the meaning ascribed to them in the Motion.
[2] First Amended Complaint ¶¶ 75, 82 (emphasis added).

Richard J.L. Lomuscio
February 13, 2017
Page 2

**ReedSmith**

*Bank BSC and Five Others* [2012 (1) CILR 451] at paragraph 18; *see also Heilbut, Symons & Co. v. Buckleton* ([1913] A.C. at 47). Indeed, this was the deliberate way Plaintiffs set up this arrangement to avoid privity between Bloomfield, and the fund manager and advisor.

*Second*, under Cayman Islands law, there is no stand-alone claim for promissory estoppel. *Combe v. Combe* ([1951] 2 K.B. 215 at page 220).[3] The theory of promissory estoppel is recognized only as a "shield" to defend against a claim and not a "sword" to form the basis of a cause of action. *See id.* As such, Plaintiffs' claim for promissory estoppel fails.[4]

*Third*, Plaintiffs fail to properly plead special damages in connection with their abuse of process and prima facie tort claims. Plaintiffs' allegation of damages "in an amount to be determined at trial, but in excess of $75,000, and specifically including legal fees to protect the ED Capital Entities' interests in the Dutch Action; more than $100,000 in fees and costs to respond to the harassing subpoenas; reputational harm and loss of business, including the loss of business, including the loss of at least six (6) potential investors, $3 million in investment fees and $20.6 million in performance fees" is insufficient to plead special damages. *See* First Amended Complaint ¶¶ 56, 62. These round figures without itemization containing sufficient particularity to identify actual losses do not suffice. *See Azby Brokerage, Inc. v. Allstate Ins. Co.*, 681 F. Supp. 1084, 1088 (S.D.N.Y. 1988); *Wehringer v. Helmsley-Spear, Inc.*, 457 N.Y.S.2d 78, 80 (1st Dep. 1982). Plaintiffs have also failed to plead how the alleged damages are causally related to the alleged tortious acts. *See Hall v. City of White Plains*, 185 F. Supp. 2d 293, 305 (S.D.N.Y. 2002).

*Fourth*, Plaintiffs fail to meet the other requisites for stating a claim for abuse of process. To state such a cause of action, "a claimant must demonstrate both that there has been an improper use of process" which "results in 'an unlawful interference with one's person or property under color of process'" and "that the person activating the process is moved by a purpose to do harm without economic or social excuse or justification." *Ann-Margret v. High Society Magazine, Inc.*, 498 F. Supp. 401, 407 (S.D.N.Y. 1980). Further, "'[t]he gist of the action for abuse of process lies in the improper use of process after it was issued.'" *The Savage Is Loose Co. v. United Artists Theatre Circuit, Inc.*, 413 F. Supp. 555, 562 (S.D.N.Y. 1976). Here, Plaintiffs allege no facts demonstrating an improper use of process after it was issued. Plaintiffs merely allege that Bloomfield filed the Dutch Action, and that Plaintiffs have been required to respond to subpoenas requesting lawful discovery in aid of the Dutch Action that was ordered by this Court based on evidence presented. Nor do Plaintiffs allege facts demonstrating that Bloomfield had any intention of harming Plaintiffs without justification. Allegations

---

[3] The foreign law cases discussed herein, namely, the *Al Sadik*, *Heilbut, Symons & Co.*, and *Combe* cases are enclosed herewith.

[4] Under New York choice of law principles, "promissory estoppel is an equitable doctrine that sounds in contract rather than tort" and, therefore, the "'center of gravity' test is applicable." *Allgood Entm't, Inc. v. Dileo Entm't and Touring, Inc.*, 726 F. Supp. 2d 307, 320-21 (S.D.N.Y. 2010). The "center of gravity" test requires the law of the jurisdiction with the most significant contacts to be applied. Here, the jurisdiction with the most significant contacts is the Cayman Islands because the alleged promises are contained in an agreement with a Cayman Islands Fund for "non-U.S. persons". Even if analyzed under New York law, "[b]ecause Plaintiffs lack standing to enforce or rely on [the Subscription] Agreement, and they have established no independent 'promise' on which to base their claim, their promissory estoppel claim fails." *See BNP Paribas Mortgage Corp. v. Bank of America, N.A.*, 949 F. Supp. 2d 486, 517, fn 26 (S.D.N.Y. 2013). In short, a claim for promissory estoppel is not a mechanism by which Plaintiffs may ignore the doctrine of privity of contract and sidestep the critical fact that the Subscription Agreement is between Bloomfield and the Fund.

**ReedSmith**

of a malicious motive alone without any supporting facts do not suffice to meet the pleading standard. *3H Enters., Inc. v. Dwyre*, 182 F. Supp. 2d 249, 259 (N.D.N.Y. 2001).

*Fifth*, conceding that they have no "traditional tort cause of action with which they may seek a remedy"[5], Plaintiffs assert a prima facie tort cause of action as a catch-all alternative for their other causes of action that all lack merit. Plaintiffs allege no duty other than that allegedly owed to them under the Subscription Agreement. This is, therefore, simply a restatement of Plaintiffs' breach of contract claims repackaged as a tort claim. Where a tort claim is redundant of contractual claims, it must be dismissed.[6] In addition, Plaintiffs do not state facts from which the Court can infer that Bloomfield intentionally and maliciously inflicted harm on Plaintiffs. Plaintiffs' allegations that the Dutch Action is "baseless and frivolous" and that there is "no excuse or justification" for Bloomfield to have filed the Dutch Action and issue the discovery "except for Bloomfield's malevolent desire to harm Plaintiffs…" (First Amended Complaint ¶¶ 58, 61) are not supported by any facts and are belied by the fact that Bloomfield had a legitimate economic interest in bringing suit in the Dutch Court seeking funds in a Dutch bank account over which Bloomfield previously had signatory authority. See First Amended Complaint ¶ 19. And that issue would be for the Dutch Court.

*Finally*, Plaintiffs also fail to state a claim for prejudgment attachment. "Under New York law, to obtain an order of attachment, the moving party must demonstrate that (1) it has a cause of action for a money judgment, (2) there is a probability of success on the merits, (3) one or more of the enumerated statutory grounds for attachment under N.Y. CPLR § 6201 exists, and (4) the amount demanded exceeds the amount of all counterclaims known to the party seeking the attachment."[7] Plaintiffs have not alleged *any* substantive cause of action against defendants Reuben Brothers Resources Group, RB Resources Limited, and Reuben Brothers Limited, let alone all of these factors. Accordingly, attachment is unavailable against these defendants. Also, as explained in the foregoing, Plaintiffs have not properly stated any claims against Bloomfield, and, therefore, cannot meet the required showing of a probability of success on the merits. Plaintiffs also have not offered any evidence that Bloomfield has "assigned, disposed of, encumbered or secreted property or removed it from the state, or is about to do some or all of those things". It is well settled that "[f]raud cannot be inferred; it must be proved." *Nanjing Textiles IMP/EXP Corp., Ltd.*, 2006 WL 2337186, at *5. Accordingly, attachment against Bloomfield is unavailable.

Respectfully submitted,

Steven Cooper /rm

Steven Cooper

Enclosures
cc: Plaintiffs' Counsel (Via Hand Delivery with Enclosures)

The Clerk of Court is directed to enter into the public record of this action the letter above submitted to the Court by defendants.

SO ORDERED.

2-14-17
DATE

VICTOR MARRERO, U.S.D.J.

---

[5] First Amended Complaint ¶ 63. It is noteworthy that Plaintiffs purport to also assert a claim for abuse of process, while simultaneously acknowledging that they have no traditional tort cause of action.

[6] *See Bekhor v. Josephthal Grp., Inc.*, No. 96 CIV. 4156 (LMM), 2000 WL 1521198, *8 (S.D.N.Y. Oct. 13, 2000) (dismissing prima facie tort claim that was duplicative of breach of contract claim); *see also Envirocon, Inc. v. Alcoa, Inc.*, No. 7:06-cv-0549, 2006 WL 2460640, *3 (N.D.N.Y. Aug. 23, 2006) ("a tort cause of action that is based upon the same facts underlying a contract claim will be dismissed as a mere duplication of the contract").

[7] *Nanjing Textiles IMP/EXP Corp., Ltd. v. NCC Sportswear Corp.*, No. 06-Civ. 52 (JGK), 2006 WL 2337186, *4 (S.D.N.Y. Aug. 11, 2006) (citing N.Y. CPLR §§ 6201, 6212(a)).

